**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**KEVIN MICHAEL BROPHY, JR.,**

**Plaintiff,**

**v.**

**BELCALIS ALMANZAR aka CARDI B; KSR GROUP, LLC; WASHPOPPIN, INC.; and DOES 1 – 20,**

**Defendants.**

**Case No.: SACV 17-01885-CJC(JPRx)**

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY [21]**

## I. INTRODUCTION

Plaintiff Kevin Michael Brophy, Jr. brings this diversity action asserting various state law claims for privacy and publicity rights against Defendants Belcalis Almanzar, aka Cardi B, KSR Group LLC, Washpoppin, Inc., and Does 1 through 20. (Dkt. 1

[Complaint, hereinafter "Compl."].) Defendant Cardi B is an entertainer whose popularity and notoriety are "ever-increasing." (*Id.* ¶¶ 19, 26.) Plaintiff's core allegation is that Defendants misappropriated his likeness by placing an image on the cover of one of Cardi B's albums that "explicitly misrepresents [P]laintiff having sex with Cardi B." (*Id.* ¶ 21.)

Before the Court is Defendants' motion to dismiss the Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. (Dkts. 21 [Notice of Motion and Motion], 24 [Corrected Motion, hereinafter "Mot."].) Plaintiff opposes Defendants' motion on various grounds and requests an opportunity to conduct jurisdictional discovery. (Dkt. 28 [Opposition, hereinafter "Opp."] at 21.) For the following reasons, the Court finds that jurisdictional discovery should be allowed to resolve the issues of personal jurisdiction and subject matter jurisdiction in this case. As a result, Defendants' motion is **DENIED WITHOUT PREJUDICE** and Plaintiff's request for jurisdictional discovery is **GRANTED**.[1]

## II. FACTUAL BACKGROUND

Plaintiff alleges the following facts in his Complaint. Plaintiff is a resident of Los Angeles who is employed by a "surfing and lifestyle company." (Compl. ¶ 1.) Plaintiff also formerly worked in the entertainment industry. (*Id.*) Defendant Cardi B is a resident of New Jersey, a "former stripper," and an "entertainer from the Bronx who dabbled in reality television." (*Id.* ¶¶ 9, 19.) Cardi B is also the principal of Defendant Washpoppin, Inc. (*Id.* ¶ 9.) Defendant KSR Group, LLC is Cardi B's agent, and is a

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 14, 2018, at 1:30 p.m. is hereby vacated and off calendar.

New York limited liability company with its principal place of business in New York City, New York. (*Id*. ¶¶ 2, 10.)

For over ten years, Plaintiff has "had a unique tattoo across his entire back depicting a tiger battling a snake." (*Id*. ¶ 1) Plaintiff includes the following picture of the tattoo on his back in his Complaint:



(*Id*. ¶ 17.) "Plaintiff has never seen his tattoo on another person, and he is informed and believes that the artist who inked it has not given it to any other person." (*Id*. ¶ 18.) Plaintiff also claims that because his work requires him to "wear board shorts but no shirt regularly, his back and tattoos are frequently exposed." (*Id*.) So, his back tattoo has become a unique feature recognized by his friends, his business, and the surfing community. (*Id*.) Plaintiff claims that "[p]eople can instantly recognize him by his tiger snake tattoo," (*id*.), and that his Instagram profile has nearly 10,000 followers, (*id*. ¶ 1).

//

According to Plaintiff, Defendants have misappropriated Plaintiff's back tattoo in "a misleading, offensive, humiliating and provocatively sexual way to launch [Cardi B's] career in music and entertainment." (*Id.* ¶ 2.) Specifically, without Plaintiff's knowledge or consent, Defendants used an image of Plaintiff's back tattoo on the cover of Cardi B's "career launching mixtape Gangsta Bitch Music Vol. 1 ('Gangsta Bitch')." (*Id.*) This mixtape was released in March 2016. (*Id.* ¶ 19.) Plaintiff describes the cover as depicting "Cardi B forcing [P]laintiff to perform cunnilingus on her, holding him face-down between her legs—his unique back tattoo and likeness features conspicuously at the center of the image—while she drains a 24-counce bottle of Corona Extra beer and stares lustfully into the camera." (*Id.* ¶ 2.) Plaintiff includes the following copy of the Gangsta Bitch cover in his Complaint:




(*Id.* ¶ 21.)

Plaintiff claims that Gangsta Bitch was Cardi B's first mixtape, which launched her career as a rapper and a social media personality. (*Id.* ¶ 19.) Plaintiff further claims that the image of Plaintiff on the cover of Gangsta Bitch boosted the popularity of the mixtape, and promotes Cardi B's "no filter attitude." (*Id.*) Plaintiff also claims that image depicting "[P]laintiff as her sex toy" is "designed to attract consumers to the [sic] Cardi B edgy persona, and to promote her music and her image as a hard, dominant and aggressive rapper." (*Id.* ¶ 22.)

Plaintiff alleges that he has never met Cardi B or any other Defendant, and did not consent to the use of his image. (*Id.* ¶ 21.) Plaintiff only became aware of the Gangsta Bitch cover approximately eight months ago when his friend asked him about it. (*Id.* ¶ 20.) Plaintiff claims that when he saw the cover he was "shocked, outraged, humiliated, and appalled." (*Id.*) Plaintiff further claims that since he learned about the cover, he has had to face persistent uncomfortable questions and comments about the cover, and he has felt "ridiculed, disgusted, and humiliated." (*Id.* ¶ 24.) Plaintiff also alleges that his family life has been negatively affected, that his wife and children have experienced trauma. (*Id.* ¶ 25.) Plaintiff claims that his son, who is attending a Christian pre-kindergarten school, saw the Gangsta Bitch cover when Plaintiff and his wife were looking at it, and that his son refers to the cover periodically, "to [P]laintiff's chagrin." (*Id.*) Plaintiff alleges that while he is suffering from the use of his image on the Gangsta Bitch cover, Cardi B's popularity is increasing and the cover is being widely displayed across the internet and other media. (*Id.* ¶¶ 26–28.) Plaintiff further believes that the use of his image "was fundamental to launching her popularity and notoriety, including sales of Gangsta Bitch and all of her later music and commercial value." (*Id.* ¶ 26.)

Based on these allegations, Plaintiff brings claims for misappropriation of likeness or identity, violation of California Civil Code § 3344, and false light. (*Id.* ¶¶ 32–55.)

Defendants move to dismiss these claims for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. (*See generally* Mot.)

## III. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

"Federal courts may only decide cases over which they have both constitutional and statutory jurisdiction." *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011). Where, as here, a federal statute does not govern personal jurisdiction, district courts apply the law of the state in which the court sits. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09 (9th Cir. 2010). "California's long-arm jurisdictional statute is coextensive with federal due process requirements." *Id.* at 609. Accordingly, personal jurisdiction depends on whether the defendant has certain minimum contacts with California and whether the maintenance of the suit would offend traditional notions of fair play and substantial justice. *Id.*

"The plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* at 608. "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Id.* "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (per curiam).

"Personal jurisdiction may be either general or specific." *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 445 (1996). "A nonresident defendant may be

subject to the general jurisdiction of the forum if his or her contacts in the forum state are substantial, continuous and systematic." *Id.* (citations and quotations omitted). When there is general jurisdiction, any cause of action arising from a defendant's dealings, regardless of whether those dealings are tied to the forum state, may be heard in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (describing general jurisdiction as a situation where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities") (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)).

Specific jurisdiction, in contrast, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. . . . [S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). Specific jurisdiction comports with due process only if the non-resident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (quoting *Int'l Shoe*, 326 U.S. at 316). The inquiry "'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The plaintiff "cannot be the only link between the defendant and the forum." *Id.* at 1122.

Here, Plaintiff asserts that the Court has both general and specific personal jurisdiction over Defendants. In support of this assertion, Plaintiff includes two factual allegations in his Complaint. First, Plaintiff claims the Gangsta Bitch cover is widely displayed across the internet, in print, and in other commercial media. (Compl. ¶¶ 27–

28.) Second, Plaintiff alleges that Cardi B has "appeared in person for engagements in California in the last two years, and reached out to California audiences to promote her image and sell herself and her commercial product." (*Id*. ¶ 29.) Defendants argue that these allegations alone are not sufficient to establish a prima facie case for personal jurisdiction, (Mot. at 6–11), and the Court agrees that these allegations are not sufficient.

In his Opposition, Plaintiff claims that there is ample support beyond the allegations in his Complaint for this Court's exercise of personal jurisdiction over Defendants. Plaintiff claims there is specific jurisdiction over Defendants because they actively promoted Gangsta Bitch to California consumers by holding a release party for the mixtape in Los Angeles and promoting the mixtape during a tour in the cities of Oakland and Los Angeles. (Opp. at 16.) Plaintiff also claims that Defendants sent copies of the Gangsta Bitch cover to California companies. (*Id*.) Plaintiff also claims that the Court should exercise general jurisdiction over Defendants based on "the litany of Cardi B's contacts with and regular and routine appearances in California, and [D]efendants' revenue streams flowing from California consumers whom they target directly." (*Id*. at 15–16.) Plaintiff claims that Cardi B and KSR Group, LLC target California audiences via several California business, including the social media companies Instagram and Twitter, the ticket sale company Ticketmaster, and music streaming services such as iTunes and Google Play. (*Id*.) Plaintiff also claims that "Cardi B continues to tour and to attend award ceremonies, television shows, and other events in this State, including, most recently, Coachella." (*Id*. at 17.) In support of these assertions, Plaintiff submits 45 snapshots from the social media accounts of Cardi B, KSR Group, LLC, and third parties. (Dkt. 29 [Declaration of Lawrence Conlan] at Exs. 1–45.)[2] Plaintiff also submits pages

---

[2] The Court will GRANT Plaintiff's request for judicial notice, (Dkt. 31), as all of the exhibits were retrieved from websites available to the public. But the Court takes judicial notice of these exhibits only insofar as they represent what was in the public realm when the exhibits were retrieved. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (citations and quotations omitted).

from music streaming websites, like iTunes and Google Play, listing Gangsta Bitch as available for streaming or downloading. (*Id*. at Exs. 46–52.)

Plaintiff's evidence does not constitute a satisfactory showing of personal jurisdiction. The evidence that Defendants utilized the services of California-headquartered internet companies—e.g., Instagram, Twitter, Ticketmaster, iTunes—is not sufficient to confer personal jurisdiction. *NuboNau, Inc. v. NB Labs, Ltd*, No. 10-cv-2631-LAB (BGS), 2012 WL 843503, at *6 (S.D. Cal. Mar. 9, 2012) ("the Court doesn't find that merely engaging Twitter and Facebook to promote one's business constitutes purposeful direction at California, simply because Twitter and Facebook happen to be based there"); *DFSB Collective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 884 (N.D. Cal. 2012) (the defendant did not purposefully direct activities at California by "utiliz[ing] accounts on California-headquartered Internet companies Facebook, hi5.com, DeviantArt, and 4Shared to direct traffic to his Websites"). Holding otherwise would subject any of the millions of people around the world, who maintain Facebook or other social media accounts, to personal jurisdiction in California. *DFSB Kollective Co*., 897 F. Supp. 2d at 883. Such a result would contravene the due process restrictions of personal jurisdiction.

As to Plaintiff's other arguments, the Court finds that more evidence is necessary to demonstrate a basis for personal jurisdiction. "Requests for [jurisdictional] discovery should ordinarily be granted 'where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.' " *Wine Bottle Recycling v. Niagara Sys. LLC*, No. 12-1924 SC, 2013 U.S. Dist. LEXIS 37273, at *25 (N.D. Cal. Mar. 18, 2013) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co*., 556 F.2d 406, 430 n.24 (9th Cir. 1977)). In fact, denial of jurisdictional discovery constitutes an abuse of discretion when further discovery "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Services, Inc. v.*

*Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Accordingly, the Court GRANTS Plaintiff's request to conduct jurisdictional discovery to clarify: (1) the extent of Defendants' business and presence in California, and (2) any relationship between the Gangsta Bitch cover and California.

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A federal court has diversity jurisdiction over a civil action between citizens of different states, so long as the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Plaintiff alleges in his Complaint that his damages, which include injury to reputation, humiliation, embarrassment, mental distress, unauthorized use of his likeness, and loss of commercial value of his likeness, exceed $5,000,000. (Compl. ¶ 30.) Defendants argue that Plaintiff has failed to allege sufficient facts supporting this estimation of his damages. (Mot. at 11.) In his opposition, Plaintiff argues that the amount in controversy requirement is met because it is appropriately pleaded on the face of his Complaint. (Opp. at 22.)

"[I]f the complaint alleges damages in excess of the federal amount-in-controversy requirement, then the amount-in-controversy requirement is presumptively satisfied unless it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (citation and quotations omitted). "Nonetheless, the Court must not blindly accept conclusory jurisdictional allegations." *Smith v. Kraft Foods, Inc.*, 2008 WL 11337485, at *2 (S.D. Cal. Sept. 12, 2008).

There is nothing in the record to support Plaintiff's allegation that the amount in controversy exceeds $5,000,000. In other words, there is nothing in the record from which the Court can determine whether the amount in controversy requirement has been

met. Plaintiff's mere, unsupported allegation is not enough. *See id*. at 3 ("bare-bone, conclusory jurisdictional allegations that the amount in controversy 'in the aggregate' is 'well in excess of $5,000,000' are insufficient to confer CAFA jurisdiction). As a result, the Court *sua sponte* orders the parties to conduct jurisdictional discovery to clarify whether the amount-in-controversy requirement has been met. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary") (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED WITHOUT PREJUDICE**. Plaintiff's request for jurisdictional discovery is **GRANTED**. The parties are **DIRECTED** to engage in good faith in limited jurisdictional discovery on the issues identified in this Order. The parties shall have **NINETY DAYS** from the date of this Order to complete the jurisdictional discovery. Defendants may renew their motion, including their motion for failure to state a claim, following the ninety-day period.

DATED: May 3, 2018

__________________________________

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE