**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| **KEVIN MICHAEL BROPHY, JR.,** | ) ) ) Case No.: SACV 17-01885-CJC(JPRx) ) ) ) |
| **Plaintiff,** | ) ) **ORDER DENYING DEFENDANTS'** |
| **v.** | ) **MOTION TO DISMISS CASE [Dkt. 55]** ) ) |
| **BELCALIS ALMANZAR aka CARDI B; KSR GROUP, LLC; WASHPOPPIN, INC.; and DOES 1 – 20,** | ) ) ) ) ) |
| **Defendants.** | ) ) ) ) ) |

## I.  INTRODUCTION

Plaintiff Kevin Michael Brophy, Jr. brings this diversity action asserting various state law claims for privacy and publicity rights against Defendants Belcalis Almanzar, also known as Cardi B, KSR Group LLC, Washpoppin, Inc., and Does 1 through 20.

(Dkt. 1 [Complaint, hereinafter "Compl."].)  Defendant Cardi B is an entertainer whose popularity and notoriety are "ever-increasing."  (*Id.* ¶¶ 19, 26.)  Plaintiff's core allegation is that Defendants misappropriated his likeness by placing an image on the cover of one of Cardi B's albums that "explicitly misrepresents [P]laintiff having sex with Cardi B." (*Id.* ¶ 21.)

Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.  (Dkt. 55 [hereinafter "Mot."].)  Defendants have renewed their motion after completing jurisdictional discovery.  For the following reasons, the motion is **DENIED**.[1]

## II.  BACKGROUND

Plaintiff alleges the following facts in his Complaint.  Plaintiff resides near Los Angeles and is employed by a "surfing and lifestyle company."  (Compl. ¶ 1.)  Plaintiff also formerly worked in the entertainment industry.  (*Id.*)  Defendant Cardi B is a resident of New Jersey and an "entertainer from the Bronx who dabbled in reality television."  (*Id.* ¶¶ 9, 19.)  Cardi B is also the principal of Defendant Washpoppin, Inc., a New York corporation with its principal place of business in New York.  (*Id.* ¶¶ 9, 11.)  Defendant KSR Group, LLC is Cardi B's agent, and is a New York limited liability company with its principal place of business in New York.  (*Id.* ¶¶ 2, 10.)

For over ten years, Plaintiff has "had a unique tattoo across his entire back depicting a tiger battling a snake."  (*Id.* ¶ 1)  Plaintiff includes the following picture of the tattoo in his Complaint:

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set August 26, 2019, at 1:30 p.m. is hereby vacated and off calendar.



(*Id.* ¶ 17.)  "Plaintiff has never seen his tattoo on another person, and he is informed and believes that the artist who inked it has not given it to any other person."  (*Id.* ¶ 18.)  Plaintiff also claims that because his work requires him to "wear board shorts but no shirt regularly, his back and tattoos are frequently exposed."  (*Id.*)  So, his back tattoo has become a unique feature recognized by his friends, his business, and the surfing community.  (*Id.*)  Plaintiff claims that "[p]eople can instantly recognize him by his tiger snake tattoo," (*id.*), and that his Instagram profile has nearly 10,000 followers, (*id.* ¶ 1).

According to Plaintiff, Defendants have misappropriated Plaintiff's likeness in "a misleading, offensive, humiliating and provocatively sexual way to launch [Cardi B's] career in music and entertainment."  (*Id.* ¶ 2.)  Specifically, without Plaintiff's knowledge or consent, Defendants used an image of Plaintiff's back tattoo on the cover of Cardi B's "career launching mixtape *Gangsta Bitch Music Vol. 1* ('*Gangsta Bitch*')."  (*Id.*)  This mixtape was released in March 2016.  (*Id.* ¶ 19.)  Plaintiff describes the cover as depicting "Cardi B forcing [P]laintiff to perform cunnilingus on her, holding him face-

down between her legs—his unique back tattoo and likeness featured conspicuously at the center of the image—while she drains a 24-counce bottle of Corona Extra beer and stares lustfully into the camera."  (*Id*. ¶ 2.)  Plaintiff includes the following copy of the *Gangsta Bitch* cover in his Complaint:



(*Id*. ¶ 21.)

Plaintiff claims that *Gangsta Bitch* was Cardi B's first mixtape, which launched her career as a rapper and a social media personality.  (*Id*. ¶ 19.)  Plaintiff further claims that the image of Plaintiff on the cover of *Gangsta Bitch* boosted the popularity of the mixtape, and promotes Cardi B's "no filter attitude."  (*Id*.)  Plaintiff also claims that image depicting "[P]laintiff as her sex toy" is "designed to attract consumers to the [sic]

Cardi B edgy persona, and to promote her music and her image as a hard, dominant and aggressive rapper." (*Id*. ¶ 22.)

Plaintiff alleges that he has never met Cardi B or any other Defendant, and did not consent to the use of his image. (*Id*. ¶ 21.) Plaintiff only became aware of the *Gangsta Bitch* cover approximately eight months before filing his lawsuit when his friend asked him about it. (*Id*. ¶ 20.) Plaintiff claims that when he saw the cover he was "shocked, outraged, humiliated, and appalled." (*Id*.) Plaintiff further claims that since he learned about the cover, he has had to face persistent uncomfortable questions and comments about the cover, and he has felt "ridiculed, disgusted, and humiliated." (*Id*. ¶ 24.) Plaintiff also alleges that his family life has been negatively affected, and that his wife and children have experienced trauma. (*Id*. ¶ 25.) Plaintiff claims that his son, who is attending a Christian pre-kindergarten school, saw the *Gangsta Bitch* cover when Plaintiff and his wife were looking at it, and that his son refers to the cover periodically, "to [P]laintiff's chagrin." (*Id*.) Plaintiff alleges that while he is suffering from the use of his image on the *Gangsta Bitch* cover, Cardi B's popularity is increasing and the cover is being widely displayed across the internet and other media. (*Id*. ¶¶ 26–28.) Plaintiff further believes that the use of his image "was fundamental to launching her popularity and notoriety, including sales of *Gangsta Bitch* and all of her later music and commercial value." (*Id*. ¶ 26.)

Based on these allegations, Plaintiff asserts claims for (1) misappropriation of likeness or identity, (2) violation of California Civil Code § 3344, and (3) invasion of privacy (false light). (*Id*. ¶¶ 32–55.) On April 2, 2018, Defendants moved to dismiss these claims for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. (*See generally* Dkt. 21.) The Court denied without prejudice Defendants' motion and granted Plaintiff's request to conduct jurisdictional discovery to clarify the extent of Defendants' business and presence in California and any relationship

between the *Gangsta Bitch* cover and California.  (*See* Dkt. 36.)  The Court also *sua sponte* ordered the parties to conduct jurisdictional discovery to clarify whether the amount-in-controversy requirement is met.  (*Id.*)

Since then, the parties have conducted additional jurisdictional discovery.  The parties have exchanged documents related to Defendants' California contacts and conducted the depositions of Cardi B and Klenord "Shaft" Raphael, the designated person most knowledgeable for KSR Group, LLC.  Now that jurisdictional discovery is complete, Defendants have renewed their motion to dismiss.  (*See generally* Mot.)

## III.  PERSONAL JURISDICTION

Defendants argue the Court must dismiss this action because it lacks personal jurisdiction.  A party may move to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Federal courts may only decide cases over which they have statutory jurisdiction and where the exercise of jurisdiction comports with due process.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  When subject matter jurisdiction is based on diversity, the district court applies the law of the state in which the court sits.  Fed. R. Civ. P. 4(k)(1)(A); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  Because California's long-arm statute, California Civil Procedure Code § 410.10, extends jurisdiction to the limit of federal due process, the Court need only consider due process.  *See id.*; *Glencore*, 284 F.3d at 1123.  Constitutional due process is satisfied when a nonresident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two recognized bases for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises when a defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997). Plaintiff contends that both bases apply. The Court addresses each in turn.

### A. General Jurisdiction

A court may exercise general jurisdiction over a defendant in the state in which a defendant is "at home." *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 137. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In the "exceptional case," a court may also assert general jurisdiction over a foreign corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127, 139 n.19 (quoting *Goodyear*, 564 U.S. at 919). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Although none of the paradigm bases for general jurisdiction apply, Plaintiff asserts that the corporate Defendants' contacts with California are so extensive that they are subject to general jurisdiction. He points to the following contacts: Defendants have

"contracted with California businesses[,] promoted their presence and business in California via the use of California-based promoters and venues, and continuously targeted California consumers and businesses via the use of location-specific hashtags on social media."  (Dkt. 62 [Opposition] at 18.)  Plaintiff also highlights the fact that Defendants used California counsel to negotiate and enter into agreements with California-based media entities to distribute *Gangsta Bitch*.  (*Id.*)

Plaintiff fails to establish that any Defendant has affiliations with California that are so "continuous and systematic" as to render the Defendant "essentially at home" in California.  *Cf. Daimler*, 571 U.S. at 127.  At most, these contacts indicate that Defendants do business in California.  And looking closer, these connections are far from "continuous or systematic."  Plaintiff fails to offer any evidence about how Defendants' California contacts compare to those in other states.  *See id.* at 139 n.20 ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide or worldwide.").  A handful of appearances in California, the use of California-related hashtags, and a couple of contracts with California businesses does not make an out-of-state defendant "essentially at home" in California.  *Cf. Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069–70 (9th Cir. 2015) (finding a Netherland employer's contacts were insufficient to make it at home in Oregon where the employer had numerous employees and entered into various contracts in Oregon); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1069–70 (9th Cir. 2014) (finding there was no general jurisdiction where a French company entered into a series of contracts with California businesses, sent representatives to California to attend industry conferences, and advertised in trade publications in California).  There is no general jurisdiction over Defendants.

//

## B.      Specific Jurisdiction

The Court next analyzes whether there is specific jurisdiction.  The Ninth Circuit employs a three-part test for assessing whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction: (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).  The plaintiff has the burden of proving the first two prongs.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If a plaintiff can successfully do so, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable."  *Picot*, 780 F.3d at 1212.

## 1.      Purposeful Direction

Under the first prong of the Ninth Circuit's specific jurisdiction test, Plaintiff must establish that each Defendant either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California.  *Schwarzenegger*, 374 F.3d at 802.  Where, as here, the lawsuit sounds in tort, courts apply a purposeful direction analysis.  *Id.*  The Ninth Circuit evaluates purposeful direction under the three-part "effects" test, derived from *Calder v. Jones*, 465 U.S. 783 (1984).  *Id.* at 803.  The "effects" test requires that the defendant allegedly have "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).  Specific personal jurisdiction must stem from "the defendant's 'own contacts' with the forum, not [from] the

defendant's knowledge of a plaintiff's connection to a forum." *Id.* at 1070. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

The case here is similar to *Calder* and *Mavrix Photo*. *Calder* involved a libel action brought after two nonresident defendants published an article in the *National Enquirer* about a California actress. 465 U.S. at 788. The *Calder* defendants contacted California sources, wrote the piece about the actress's activities in California, and eventually sold roughly 600,000 copies in California. *Id.* at 785, 788–89. The Supreme Court concluded that "the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 789. Since "California [was] the focal point both of the story and of the harm suffered," specific jurisdiction was proper. *Id.* Similarly, the Ninth Circuit found specific jurisdiction when an Ohio-based corporation allegedly published copyrighted photos of a celebrity in the Bahamas. *See Mavrix Photo v. Brand Techs., Inc.*, 647 F.3d 1218, 1221–22 (9th Cir. 2011). *Mavrix Photo* recognized California as the epicenter of celebrity and entertainment and concluded that the defendant "used [the plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229–30.

The Court concludes that Plaintiff has established a *prima facie* case that Defendants "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that [Defendants know] is likely to be suffered in the forum state." *See Axiom Foods*, 874 F.3d at 1069. Here, Defendants Cardi B, KSR Group, LLC, and Washpoppin, Inc. committed an intentional act: they allegedly used Plaintiff's likeness on the *Gangsta Bitch* cover without Plaintiff's permission.

The Court also finds that Defendants expressly aimed the alleged misconduct at California.  As in *Calder* and *Mavrix Photo*, Defendants targeted not only Plaintiff, in his individual capacity, but also the forum in which he lives.  Defendants promoted the mixtape in California through distribution deals, industry events, live performances, and advertising specifically targeting California.  Before the mixtape's release, Defendant KSR Group, LLC entered into a distribution agreement with a California corporation to distribute the forthcoming mixtape.  (Dkt. 62-1 [Supplemental Declaration of Lawrence J. Conlan, hereinafter "Conlan Decl."] Ex. C [Digital Distribution Agreement Between KSR Group, LLC and EMPIRE Distribution].[2])  Defendants expressly targeted California in promoting the mixtape and Cardi B's upcoming shows leading up to the mixtape release.  Specifically, KSR Group, LLC posted a series of Instagram posts with location-specific hashtags such as #losangeles, #oakland, #hollywood, #corona, and #california. (*See* Conlan Decl. Ex. K.[3])  And after the March 2016 release, Cardi B, KSR Group, LLC, and Washpoppin, Inc. promoted the mixtape by arranging performances in California and a release party in Los Angeles.  (Conlan Decl. Ex. A [Deposition of Klenord "Shaft" Raphael, hereinafter "Raphael Dep."] at 143:9–21; Conlan Decl. Ex. B [Deposition of Belcalis Almanzar, hereinafter "Almanzar Dep."] at 51:21–52:3, 53:8–54:9, 90:15–92:6.)  Cardi B also appeared in Torrance and Corona in March 2016 to promote the mixtape.  (*Id.* at 88:16–90:6; Raphael Dep. at 138:20–140:10.)  She then promoted *Gangsta Bitch* by headlining the Underestimated Tour, performing in Fresno, Oakland, and Hollywood.  (*Id.* at 150:10–19, 151:18–25, 160: 9–18, 162:7–12, 169:18–20, 173:4–25.)

---

[2] Defendants object to the relevance of the distribution agreement because Plaintiff is not a party to this agreement.  Defendants' objection is OVERRULED.  The distribution agreement is relevant for the purpose of establishing Defendants' contacts with California in promoting the mixtape.

[3] Defendants object to the social media posts on hearsay grounds.  Defendants' objection is OVERRULED.  These social media posts are not offered for the truth of the matter asserted, but for the fact that Defendants targeted cities in California.

The importance of California to Defendants' promotion efforts further supports the Court's finding that Defendants expressly aimed their conduct at California.  With the mixtape, Defendants sought to launch Cardi B's career as a rapper and build her name in the entertainment industry.  (*See* Compl. ¶ 2; Almanzar Dep. at 91:24–93:7, 121:10–20.)  California is a hub for the entertainment industry and a key market for the *Gangsta Bitch* mixtape.  Using a provocative and edgy mixtape cover—one allegedly featuring Plaintiff's distinctive tattoo—would help Cardi B gain notoriety and sell more records in California.  Defendants therefore used Plaintiff's likeness "as part of its exploitation of the California market for its own commercial gain." *Mavrix Photo*, 647 F.3d at 1229.  This illustrates that Defendants' "conduct connects [them] to the forum in a meaningful way," *Walden*, 571 U.S. at 290, and establishes that Defendants' alleged misconduct was expressly aimed at the forum district.

Defendants raise two major contentions.  First, they argue their conduct was not expressly aimed at California because the mixtape artwork was created entirely in New York and Toronto.  (Mot. at 10.)  Second, they argue that, for purposes of determining specific jurisdiction, the Court should not consider any of Defendants' conduct postdating the mixtape's March 6, 2016 release because the litigation arises only from mixtape's creation.  (Dkt. 58 [Reply] at 12–13.)  But Defendants define their alleged misconduct too narrowly.  The alleged wrong is not just that they created a mixtape with Plaintiff's likeness; it is that they used that likeness to promote and advertise the mixtape in California.  The events that caused this litigation include Defendants' California contacts after the March 6, 2016 release date.  Although the Court does not consider events after the alleged misappropriation, it may properly consider Defendants' efforts to promote the mixtape after its release.[4]  *Cf. Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,

---

[4]  Accordingly, Defendants' relevance objections on this ground are OVERRULED.

907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered.").

The Court further finds that Defendants allegedly caused harm that they knew was likely to be suffered in California.  Plaintiff has nearly 10,000 Instagram followers and has formerly worked in the entertainment industry.  (Compl. ¶ 1.)  He now works for a surfing and lifestyle company in Newport Beach, California, and he frequently wears board shorts without a shirt.  (*Id.* ¶¶ 1, 15, 18.)  Plaintiff's tiger snake tattoo is allegedly readily recognizable by his family, friends, and the California surfing community.  (*Id.* ¶ 18.)  Based on Plaintiff's connections to the entertainment and surfing industry in California, Defendants ostensibly knew that misappropriating Plaintiff's likeness would cause Plaintiff to suffer harm in California.  *Cf. Mavrix Photo*, 647 F.3d at 1231–32 (finding the defendant caused harm that it knew was likely to be suffered in California where the defendant intentionally infringed copyrighted photos and a "substantial part of the photos' value was based on the fact that a significant number of Californians would have bought publications" to see the photos).  Plaintiff allegedly has faced ongoing and uncomfortable questions and comments about the *Gangsta Bitch* cover, causing him injury to his reputation, humiliation, and embarrassment and mental distress.   (Compl. ¶¶ 25, 30.)  Like *Calder*, "California is the focal point" both of the misappropriation and the harm suffered.  *Cf.* 465 U.S. at 789.

## 2.   Arising Out of Defendant's Forum Conduct

Under the second prong, a lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activities in the forum.  *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996).  The Ninth Circuit has adopted a "but for" test when assessing whether an action arises out of a defendant's contacts with the forum state.

*See, e.g.*, *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("We must determine if the plaintiff . . . would not have been injured 'but for' the defendant['s] . . . conduct . . . .").

This requirement is met.  Defendants' contacts with this venue stem from their promotion of the mixtape.  To promote *Gangsta Bitch*, Defendants created a provocative and edgy mixtape cover.  Plaintiff's claim arises from Defendants' alleged misappropriation of his likeness on that mixtape cover and promotion of that mixtape throughout California.  Defendants' use of Plaintiff's likeness allegedly injured Plaintiff, humiliating him and harming his reputation.  (Compl. ¶ 30.)  But for Defendants' misconduct, this injury would not have occurred.

### 3. Fair Play, Substantial Justice, and Reasonableness

Since Plaintiff has met his burden on the first two prongs, the burden shifts to Defendants to demonstrate that the exercise of jurisdiction would not be reasonable. *Picot*, 780 F.3d at 1212.  In evaluating reasonableness, the Ninth Circuit considers: "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995).

Defendants have not established that the Court's exercise of jurisdiction would be unreasonable.  Defendants purposefully injected themselves into California by extensively advertising and promoting the mixtape in California.  Although New York would provide an alternative forum, Defendants would not suffer a significant burden

from litigating in California.  Indeed, Cardi B testified that she continues to frequently travel to California.  (*See* Almanzar Dep. at 106:6–113:20, 115:1–117:17.)  There appears to be no conflict with another state's sovereignty, and California has an interest in protecting its residents from the unlawful misappropriation of their likeness for commercial benefit, an interest expressed through the legislature's enactment of California Civil Code § 3344.  Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

## IV.  SUBJECT MATTER JURISDICTION

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Federal district courts have diversity jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant.  28 U.S.C. § 1332(a).  The parties agree there is complete diversity, but disagree whether the amount in controversy exceeds $75,000.  Plaintiff alleges the amount in controversy exceeds $5,000,000.  (Compl. ¶ 30.)

Generally, the amount in controversy is determined from the face of the pleadings, and the sum claimed by the plaintiff controls so long as the claim is made in good faith. *See Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000).  "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  *Id.* (quoting *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997)).  The Court previously ordered jurisdictional discovery to clarify whether the amount-in-controversy requirement is met.  (*See* Dkt. 36.)

It does not appear to a legal certainty that Plaintiff's claim is really for less than the jurisdictional amount.  Plaintiff alleges that he has suffered injury to his reputation, humiliation, and embarrassment and mental distress.  (Compl. ¶ 30.)  He seeks

compensatory damages, statutory damages, punitive damages, disgorgement of profits, and attorney's fees and costs.  (*See generally id.*)  For a violation of California Civil Code § 3344, a plaintiff may recover the greater of statutory damages of $750 or actual damages, plus "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages."  Cal. Civ. Code § 3344(a).  California Civil Code § 3344 also enables a prevailing plaintiff to recover punitive damages and attorneys' fees and costs.  *Id.*  Here, Defendants received revenues of at least $400,000 from the 2016 and 2017 sales and streams of *Gangsta Bitch*, (*see* Conlan Decl. Ex. F[5]), and Defendants continue to advertise *Gangsta Bitch* by displaying Plaintiff's likeness on the cover, (*see* Almanzar Dep. at 138:13–139:17).  Based on this, disgorgement of profits alone could conceivably exceed $75,000.  And adding Plaintiff's possible recovery for emotional distress and attorneys' fees, the Court cannot say to a legal certainty that the amount in controversy is below $75,000.01.  Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## V.  FAILURE TO STATE A CLAIM

Defendants move to the dismiss Plaintiff's three causes of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain

---

[5] Defendants object to the sales records on the basis of hearsay, lack of authentication, lack of foundation, and lack of personal knowledge.  Defendants' objections are OVERRULED.  The sales records are admissible business records.  *See* Fed. R. Evid. 803(6).  Plaintiff established the authenticity of and foundation for these sales records in the deposition of Klenord Raphael, KSR Group, LLC's person most knowledgeable.  (*See* Raphael Dep. at 65:9–71:8.)

statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### A.    Misappropriation of Likeness or Identity

Plaintiff's first cause of action is a common law claim for misappropriation of likeness or identity.  California recognizes a common law right of privacy for protection of a person's name and likeness against appropriation by others for their advantage.

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).  To state a claim for commercial misappropriation, a plaintiff must allege: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."  *Id.*

Plaintiff adequately alleges a claim for misappropriation of his likeness or identity. Plaintiff alleges that Defendants used his body art and image for the cover of the *Gangsta Bitch* mixtape.  (Compl. ¶ 2.)  He alleges that Defendants have appropriated his likeness to their commercial advantage, as the *Gangsta Bitch* cover "is designed to attract consumers to the [sic] Cardi B edgy persona, and to promote her music and her image as a hard, dominant and aggressive rapper."  (*Id.* ¶¶ 22, 34.)  He further alleges that he did not consent to the use of his likeness on the *Gangsta Bitch* cover and that he has suffered injury as a result.  (*Id.* ¶¶ 23, 30, 33, 35.)

Defendants argue that Plaintiff's claim fails because he fails to allege that his face was visible or his name was used.  (Mot. at 20.)  Defendants, however, cite no authority for the proposition that a commercial misappropriation claim requires the use of the plaintiff's face or name.  Plaintiff here alleges that his tattoo is part of his likeness because it is unique and distinctive.  (*Id.* ¶ 18.)  People, in fact, purportedly instantly recognize Plaintiff by his tiger snake tattoo.  (*Id.*)  Plaintiff has alleged a plausible claim for misappropriation of his likeness.

## B.    California Civil Code § 3344

Plaintiff's second cause of action is for violation of California Civil Code § 3344. California Civil Code § 3344 provides a statutory remedy for commercial misappropriation, complementing the remedies available in the common law.  *Downing*, 265 F.3d at 1001.  Section 3344 provides that "[a]ny person who knowingly uses

another's name, voice, signature, photograph, or likeness, in any manner . . . for purposes of advertising or selling . . . without such person's prior consent . . . shall be liable any damages sustained by the person." Cal. Civ. Code § 3344(a). To state a claim under this section, a plaintiff must allege all the elements of the common law cause of action. *Downing*, 265 F.3d at 1001. In addition, the plaintiff must allege a knowing use of the plaintiff's likeness and a direct connection between the use and the commercial purpose. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017).

Plaintiff adequately alleges a claim for violation of California Civil Code § 3344. As discussed above, Plaintiff alleges all the elements of the common law cause of action. To satisfy the two additional elements of the statutory cause of action, Plaintiff alleges that Defendants knowingly used plaintiff's likeness to advertise or sell the *Gangsta Bitch* mixtape and that there is a direct connection between this use and the commercial purpose. (Compl. ¶¶ 40, 43.)

Defendants raise two challenges. First, Defendants argue that they did not knowingly use any likeness of Plaintiff because a third party created the mixtape artwork. (Mot. at 21.) Second, Defendants assert their use of the Plaintiff's image was transformative, entitling them to the transformative use defense from *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001). (*Id.* at 20.) Neither issue is amenable for resolution on a motion to dismiss. Under Rule 12(b)(6), the Court must accept all allegations as true and view the Complaint in the light most favorable to Plaintiff. *Moyo*, 32 F.3d at 1384. The Court cannot consider extrinsic evidence, such as who actually created the mixtape cover. Nor can the Court determine if Defendants are entitled to a transformative use defense. Whether the *Gangsta Bitch* cover is sufficiently transformative to obtain First Amendment protection is a question of fact. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir.

2013) ("[T]he application of the [transformative use] defense [is] a question of fact."). Plaintiff states a plausible claim for violation of California Civil Code § 3344.

## C.    Invasion of Privacy (False Light)

Plaintiff's third cause of action is for invasion of privacy or false light.  To state a claim for false light, the plaintiff must allege that: (1) the defendant disclosed to one or more persons information about or concerning the plaintiff that was presented as factual but was actually false or created a false impression about him, (2) the information was understood by one or more persons to whom it was disclosed as stating or implying something highly offensive that would have a tendency to injure the plaintiff's reputation, (3) the defendant acted with constitutional malice, and (4) the plaintiff was damaged by the disclosure.  *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1082 (9th Cir. 2002).

Plaintiff states a plausible claim for false light.  Plaintiff alleges that Defendants publicized material that showed Plaintiff in a false light.  (Compl. ¶ 49.)  Namely, Defendants falsely misrepresented Plaintiff having sex with Cardi B on the cover of *Gangsta Bitch*.  (*Id.* ¶ 21.)  Plaintiff alleges that the false light created by this image would be highly offensive to a reasonable person in his position, as Defendants portrayed Plaintiff in a "misleading, offensive, humiliating and provocatively sexual way."  (*Id.* ¶¶ 2, 40.)  He further alleges that Defendants acted maliciously and that he was damaged by the disclosure.  (*Id.* ¶¶ 52–54.)  Plaintiff states a plausible claim for false light.

## D.    Copyright Act Preemption

Defendants argue that all of Plaintiff's claims are preempted by the Copyright Act. The Copyright Act affords copyright owners the "exclusive rights" to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those

things, and to prepare derivative works based upon the copyrighted work.  17 U.S.C. § 106.  The copyright gives the owners "the right to control the work," including the decision whether or not to make the work available to the public.  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

Section 301 of the Copyright Act seeks "to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works," so long as the rights fall "within the scope of the Federal copyright law."  H.R. Rep. No. 94–1476, at 130 (1976); *see also* 17 U.S.C. § 301.  The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act.  *See Maloney*, 853 F.3d at 1010.  Courts first consider "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103."  *Id.* (quoting *Laws*, 448 F.3d at 1137).  If it does, courts then determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders."  *Id.* (quoting *Laws*, 448 F.3d at 1138).

The subject matter of Plaintiff's claims does not fall within the subject matter of copyright.  Plaintiff's claims revolve around the use of his likeness.  "A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102."  *Downing*, 265 F.3d at 1004; *see also No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1145 (C.D. Cal. 2010) ("Name, likeness, and persona are not copyrightable subject matter . . . because a name, likeness, or persona is not a work of 'authorship' entitled to copyright protection.").  This is true notwithstanding the fact that Plaintiff's likeness may be embodied in a copyrightable photograph or the tattoo design itself might be a copyrightable work.  *Cf. Downing*, 265 F.3d at 1004–05 (finding right of publicity claims were not preempted even though the plaintiffs' likenesses were embodied in a copyrightable photograph).  Plaintiff here does not seek to vindicate an unauthorized use

of a photograph or tattoo design, but the unauthorized use of his likeness.  *Cf. Maloney*, 853 F.3d at 1011 ("[A] publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness . . . in advertising.  But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder . . . .").  In other words, Plaintiff is not seeking to use the right of publicity simply to prevent "publication" of an artistic, visual work.  *See id.* (citing *Downing*, 265 F.3d at 1003).

The second requirement is also not met.  The rights asserted by Plaintiff in this lawsuit are not equivalent to the rights contained in 17 U.S.C. § 106.  Because the subject matter of Plaintiff's publicity-right claims is his likeness, which is not copyrightable, his claims are not equivalent to the exclusive rights contained in § 106.  *Cf. Downing*, 265 F.3d at 1005.  Similarly, Plaintiff's false light claim seeks to vindicate his right against the publication of false and highly offensive material about him.  This right is distinct from the rights of ownership under copyright law.  Accordingly, the Copyright Act does not preempt Plaintiff's claims.  *See id.* at 1004 (finding the plaintiffs' statutory and common law right of publicity claims were not preempted by the Copyright Act where a retailer published a photograph of the plaintiffs, without permission, in a catalog).  Plaintiff's motion to dismiss for failure to state a claim is **DENIED**.

//

## VI.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**.


DATED:      August 22, 2019

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE