Peter Anderson, Esq. (Cal. Bar No. 88891)
        peteranderson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Non-Party
ATLANTIC RECORDING
CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| KEVIN MICHAEL BROPHY, *etc.*, | ) Case No. 8:17-cv-01885-CJC (JPRx) |
| Plaintiff, | )<br>) |
| vs. | ) NON-PARTY ATLANTIC RECORDING<br>) CORPORATION'S MEMORANDUM<br>) OF POINTS AND AUTHORITIES IN |
| BELCALIS ALMANZAR, *etc.*, *et al.*, | ) OPPOSITION TO PLAINTIFF'S<br>) MOTION TO COMPEL |
| Defendants. | )<br>) |

Date: April 9, 2020
Time: 10:00 a.m.

Courtroom of the Honorable
Jean P. Rosenbluth
United States Magistrate Judge

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

1.   INTRODUCTION ................................................................................ 1

2.   PLAINTIFF'S MOTION SHOULD BE DENIED ......................................... 2

    (a)   Plaintiff Failed to Provide Non-Party Atlantic with the Required Notice of Plaintiff's Motion ................................................................. 2

    (b)   Plaintiff Knowingly Failed to Comply with LR 37-2.1, Despite Being Cautioned by the Court that Strict Compliance Is Required ....... 3

    (c)   Plaintiff Also Disregards His Duty Under FRCP 45(d)(1) to Avoid Imposing Undue Burden on Non-Parties ............................................. 5

    (d)   Plaintiff's Refusal to Agree to a Reasonable Compromise Also Justifies Denial of His Motion ............................................................. 7

    (e)   Non-Party Atlantic's Contentions as to Each of Plaintiff's Requests.... 9

        (1)   Request No. 10 ................................................................. 10

        (2)   Request No. 12 ................................................................. 12

        (3)   Request No. 16 ................................................................. 12

        (4)   Request No. 20 ................................................................. 13

        (5)   Request No. 24 ................................................................. 13

        (6)   Request No. 27 ................................................................. 14

    (f)   Plaintiff or His Counsel Should Be Required to Reimburse Atlantic its Attorneys' Fees and Costs of Opposing Plaintiff's Motion ............ 15

3.   CONCLUSION ................................................................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Master Lease LLC v. Idanta Partners, Ltd.*,
  225 Cal. App. 4th 1451, 171 Cal. Rptr. 3d 548 (2014) ........................................ 10

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  No. C 10-3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ..................... 11

*Bryant v. Armstrong*,
  285 F.R.D. 596 (S.D. Cal. 2012) ................................................................. 6

*Calleros v. Rural Metro of San Diego, Inc.*,
  No. 17CV686-CAB(BLM), 2018 WL 1744599 (S.D. Cal. Apr. 11,
  2018) ............................................................................................. 13

*Columbia Broad. Sys., Inc. v. Superior Court for Los Angeles Cty.*,
  263 Cal. App. 2d 12, 69 Cal. Rptr. 348 (Ct. App. 1968) ............................. 10

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006) .................................................................................. 13

*Dole v. Steelworkers*,
  494 U.S. 26 (1990) ................................................................................... 13

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) ..................................................................... 11

*Noble v. Gonzalez*,
  No. 1:07-CV-01111-LJO, 2011 WL 2118746 (E.D. Cal. May 27,
  2011) .................................................................................................. 6

*Orthopedic Sys., Inc. v. Schlein*,
  202 Cal. App. 4th 529, 135 Cal. Rptr. 3d 200 (2011) ............................... 10

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ..................................................................... 11

*Regan–Touhy v. Walgreen Co.*,
  526 F.3d 641 (10th Cir. 2008) .................................................................. 13

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ............................................................. 13

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078 (9th Cir. 2002) ............................................................... 10

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ........................................................... 5, 7

**Statutes**

Civil Code § 3344 .................................................................................. 10

**Rules**

Federal Rules of Civil Procedure
   26(b)(1) ........................................................................................... 14, 15
   37(a)(5)(b), & 45(d)(1) ......................................................................... 15
   45(d)(1) ........................................................................................... *passim*

Local Rule
   6-1 ........................................................................................... 1, 2, 3, 4
   37 .................................................................................................... 2, 3
   37-1 ...................................................................................................... 7
   37-2 .................................................................................................. 1, 9
   37-2.1 ......................................................................................... 2, 3, 4, 5
   37-2.4 .............................................................................................. 2, 3
   37-3 ...................................................................................................... 4
   37-4 ......................................................................................... 1, 9, 15
   45-1 ...................................................................................................... 2
   45(d)(1) ................................................................................................ 7

**Other Authorities**

JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ......................................... 6

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

Non-party Atlantic Recording Corporation ("Atlantic") respectfully submits this Memorandum and the accompanying Declarations in opposition to plaintiff Kevin Michael Brophy's procedurally and substantively defective Motion to compel.

Plaintiff contends that the cover art of a mixtape released by defendant Belcalis Almanzar, professionally known as Cardi B ("Cardi B"), in 2016 (the "2016 Mixtape") appropriates plaintiff's likeness, or, actually, a tattoo on his back.  He also contends that his potential award under California law of defendants' profits attributable to that cover art – which, he contends, helped advance Cardi B's career – extends to all monies the defendants receive from any and all other endeavors.

While there is serious doubt as to plaintiff's legal theory that he is entitled to defendants' profits from activities that do not include the 2016 Mixtape or its cover art, plaintiff has had ample time and opportunity to direct discovery to defendants asking for their earnings.  And plaintiff advises he has done just that, but defendants refused to comply with that discovery.  Plaintiff, rather than filing a motion as to defendants, has served multiple Subpoenas on non-parties, including Atlantic.  Now, plaintiff moves to compel Atlantic's compliance with six of the twenty-seven categories in his Subpoena.  For multiple, independent reasons, his Motion should be denied.

In the course of counsel's meet-and-confer, plaintiff's counsel admitted that plaintiff only needs from Atlantic the amounts it paid defendants relating to Cardi B.  And Atlantic offered to provide that information, only to have plaintiff renege and demand more and then file this Motion.  However, plaintiff failed to provide Atlantic the thirty-one days' notice required by Local Rules 37-4 and 6-1.  In addition, plaintiff knowingly failed to comply with Local Rule 37-2.  He also has violated Federal Rule of Civil Procedure 45(d)(1), by misusing a subpoena to obtain from a non-party information and documents in the defendants' possession, custody, or control.

1

Plaintiff also failed to accept compromises that would have provided what he claims to need and avoid undue burden on a non-party.  And, in addition, plaintiff's Requests, are, among other things, generally limited to information as to "music released by DEFENDANTS," not released by Atlantic.  Since Atlantic does not have that information, those Requests are moot.  And plaintiff's Request for Atlantic's bank records having any conceivable relationship to the Cardi B recordings that Atlantic has released, is overbroad, seeks documents that are not relevant to plaintiff's claimed right to know what defendants received, and the burden it would impose on this non-party is not proportional to the needs of the case.

Atlantic respectfully submits that plaintiff's Motion should be denied and Atlantic should recover its attorneys' fees and costs in opposing that Motion.

## 2.     **PLAINTIFF'S MOTION SHOULD BE DENIED**

### (a)     **Plaintiff Failed to Provide Non-Party Atlantic with the Required Notice of Plaintiff's Motion**

Plaintiff filed his Motion without a signed Joint Stipulation because Atlantic raised, and plaintiff disputed, that plaintiff's Joint Stipulation fails to comply with this Court's Local Rule 37-2.1, and plaintiff declined to revise the Joint Stipulation.[1]  An initial defect in plaintiff's Motion is that, having decided to proceed without a signed Joint Stipulation, plaintiff was required to serve his Motion on Atlantic at least thirty-one days before the April 9, 2020, hearing date and he failed to do so.

Local Rule 37-2.4 is clear that if a party filing a discovery motion fails to include a signed joint stipulation "then L.Rs. 6-1, 7-9 and 7-10 apply."  Local Rule 6-1 also is clear that:

"The notice of motion shall be filed with the Clerk not later than twenty-eight (28) days before the date set for hearing, and shall be served on

---

[1]     Local Rule 45-1 provides that Local Rule 37 applies to motions relating to discovery subpoenas served on non-parties represented by counsel.

each of the parties electronically or, if excepted from electronic filing, either by deposit in the mail or by personal service.  If mailed, the notice of motion shall be served not later than thirty-one (31) days before the Motion Day designated in the notice.   If served personally, or electronically, the notice of motion shall be served not later than twenty-eight (28) days before the Motion Day designated in the notice."

Plaintiff failed to provide the required notice to Atlantic.

Plaintiff does not contend that he personally served his Motion on Atlantic's counsel.  Instead, plaintiff includes with his filing a proof of service claiming that Atlantic's counsel was served by mail and also by e-mail "to the person(s) at the e-mail addresses listed below."  But he lists an e-mail address only for defendant's counsel.[2]  Plaintiff omits an e-mail address for Atlantic's counsel because plaintiff did not in fact e-mail a copy of his Motion to Atlantic's counsel.  Since Atlantic is a non-party that had not appeared in the case, Atlantic's counsel did not receive a copy of the Motion via the Court's ECF system.  Anderson Decl. at 1, ¶ 3.  And plaintiff's claimed service by regular mail on March 11, 2020, failed to provide Atlantic the thirty-one days' notice that Local Rules 6-1 and 37-2.4 require.

Plaintiff brought his Motion on inadequate notice and, for that reason alone, his Motion is properly denied.

**(b)**   **Plaintiff Knowingly Failed to Comply with LR 37-2.1, Despite Being Cautioned by the Court that Strict Compliance Is Required**

Although the Court requires strict compliance with Local Rule 37, plaintiff has treated that Local Rule with cavalier disregard.

///

---

[2]    Plft's "[Joint] Stipulation" (Doc. 70) at 21:12 & at 22:2-8; Conlan Decl. (Doc. 70-1) at 89:11-12 & at 90:2-8; Conlan Supp. Decl. (Doc. 70-2) at 13:13-14 & at 14:2-8 (all page citations are to the ECF filings' respective pages).

3

Local Rule 37-2.1 could not be clearer that plaintiff is required to prepare a Joint Stipulation that sets out separately for each of his Subpoena's requests that are in dispute, the request, Atlantic's response, his contentions, and a blank for Atlantic's contentions. Atlantic promptly pointed out that plaintiff's draft Joint Stipulation failed to do so and, instead, stated all the requests and responses at issue, followed by plaintiff's contentions. Plaintiff's counsel first argued that was only a technical defect and then that there was no defect at all, and refused to revise his Joint Stipulation to comply with Local Rule 37-2.1. Anderson Decl. at 1-2, ¶ 4, & Exh. 1.

Plaintiff's failure to comply with the Local Rule places Atlantic – and the Court – at a substantial disadvantage. That is so because plaintiff's single statement of his contentions following all of the requests and responses focuses on only one issue: whether he can obtain discovery of the amounts that Atlantic paid defendants with respect to recordings and merchandise that do not include the 2016 Mixtape or its cover art. As a result, plaintiff fails to disclose or discuss in the Joint Stipulation he filed, issues such as, for example, whether Atlantic is required to produce agreements unrelated to Cardi B, whether the repeated references in plaintiff's requests to recordings "released by DEFENDANTS" somehow includes recordings released by Atlantic, and whether plaintiff is entitled to Atlantic's bank records. Many of those and other issues were resolved in counsel's meet-and-confer, yet plaintiff fails to mention those resolutions and now moves for compliance in full.[3]

Neither did plaintiff lack time to fix his draft Joint Stipulation to comply with Local Rule 37-2.1. Atlantic first raised the issue on March 6, 2020, and, had plaintiff fixed the Joint Stipulation, he would have had until March 19, 2020, to file his Motion for hearing twenty-one days later, on April 9, 2020. L.R. 37-3. Instead, he declined

---

[3]   Atlantic notes that plaintiff also failed to file and serve the required notice of motion. L.R. 6-1 ("Unless otherwise provided by rule or order of the Court, . . . every motion shall be presented by written notice of motion") & 37-2.2 (the joint stipulation is to "be filed with the notice of motion").

to fix his draft Joint Stipulation and filed it on March 11, 2020, for hearing twenty-nine days later, also April 9, 2020. That is, faced with a hearing on April 9, 2020, whether or not he complied with Local Rule 37-2.1 and fixed his Joint Stipulation, plaintiff chose to violate that Local Rule.

Plaintiff's knowing and unnecessary failure to comply with Local Rule 37-2.1 prejudices non-party Atlantic and makes the Court's task more difficult. Atlantic respectfully submits that, for that independent reason, plaintiff's Motion should be denied.

> **(c)** **Plaintiff Also Disregards His Duty Under FRCP 45(d)(1) to Avoid Imposing Undue Burden on Non-Parties**

Federal Rule of Civil Procedure 45(d)(1) provides that:

> "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."

*See, also Theofel v. Farey-Jones*, 359 F.3d 1066, 1074–75 (9th Cir. 2004) ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused.").

Plaintiff claims an entitlement to know how much defendants received from third parties, including Atlantic, a company that had nothing to do with the 2016 Mixtape or its cover art. Plaintiff's claim to that information is dubious and, in any event, inapplicable to monies defendants received from Atlantic. *See below* at 10:17-11:23. Moreover, plaintiff's claim to that information does not support his requests.

First, his claim to that information does not justify his service on Atlantic of a Subpoena with twenty-seven separate requests, twenty-one of which plaintiff has

///

5

abandoned, and the rest of which are, as discussed below, improper.  Anderson Decl. at 2, ¶ 5, & Exh. 2.

Second, even paring plaintiff's Subpoena down to his claimed need to know how much defendants received from Atlantic, <u>defendants, by definition, have that information</u>, as well as the accountings they received from Atlantic and their contracts with Atlantic.  Simply put, Rule 45(d)(1) requires at a minimum that plaintiff look to defendants, not non-parties such as Atlantic, for information and documents that the defendants have.

Plaintiff argues he is uncertain that defendants have or would disclose how much they have received from Atlantic.  But plaintiff relies on deposition testimony that, *e.g.*, Cardi B has not herself seen accountings.  The fact that a recording artist has not personally received and reviewed non-party accountings should be no surprise to plaintiff.  And it does not mean that defendants' counsel and other representatives do not have the information plaintiff seeks and which plaintiff could obtain simply by, *e.g.*, an interrogatory to defendants.  *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012) ("A party answering interrogatories has an affirmative duty to furnish any and all information available to the party.") (quoting 7 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 33.102[1], at 33–72)); *Noble v. Gonzalez*, No. 1:07-CV-01111-LJO, 2011 WL 2118746, at *6 (E.D. Cal. May 27, 2011) ("If an appropriate interrogatory is propounded, the answering party is required to give the information available to him, if any, through his attorney, investigators employed by him or on his behalf, or other agents or representatives, whether personally known to the answering party or not").

Moreover, Atlantic raised, and plaintiff has admitted, that plaintiff is simultaneously pursuing this information from defendants.  But rather than file a motion to compel defendants' compliance with discovery, plaintiff instead has filed a motion against a non-party for defendants' information and documents.

///

"Fighting a subpoena in court is not cheap," and counsel issuing a subpoena to a non-party must "exercise . . . independent judgment about the subpoena's reasonableness." *Theofel*, 359 F.3d at 1074–75.  Plaintiff's issuance of the Subpoena to non-party Atlantic, as well as his filing against Atlantic of this motion to compel – all for information and documents in defendants' possession, custody, or control – reflects a complete failure to exercise that independent judgment and an abdication of plaintiff's and his counsel's affirmative duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  For this additional, independent reason, plaintiff's Motion should be denied.

**(d)     Plaintiff's Refusal to Agree to a Reasonable Compromise Also Justifies Denial of His Motion**

In addition to Rule 45(d)(1)'s imposition on plaintiff of an affirmative duty to avoid undue burden and expense on non-parties, Local Rule 37-1 requires that counsel confer in good faith to try to resolve discovery issues.  Plaintiff, however, has rejected Atlantic's reasonable proposals to provide the information he claims to seek.

On February 13, 2020, plaintiff's counsel and Atlantic's counsel conducted a telephonic meet-and-confer.  Plaintiff's counsel acknowledged that the 2016 Mixtape preceded Cardi B's relationship with Atlantic as a recording artist; that Atlantic has never distributed the 2016 Mixtape; and that Atlantic has located no correspondence regarding the 2016 Mixtape or its cover art.  Plaintiff's counsel also agreed that plaintiff is not entitled to, for example, contracts unrelated to Cardi B, and Atlantic's bank records.  Plaintiff's counsel claimed only a need to know how much Atlantic has paid defendants with respect to Cardi B recordings, merchandise, *etc.*  Anderson Decl. at 2, ¶ 6.

Accordingly, in that February 13, 2020, telephonic meet-and-confer, Atlantic's counsel pointed out, and plaintiff's counsel agreed, that since plaintiff only seeks the amounts that defendants have received from Atlantic, plaintiff does not need copies

1    of the accountings that Atlantic has rendered to defendants or Atlantic's contracts with

2    defendants: whatever the accountings and contracts provide and however the

3    payments to defendants were calculated, plaintiff only claims a need to know what

4    defendants received.  *Id.* at 2, ¶¶ 7-8.

5          Atlantic's counsel then raised as a compromise that Atlantic provide plaintiff

6    with a summary statement identifying all payments that it has paid defendants with

7    respect to Cardi B.  Plaintiff's counsel requested, and Atlantic's counsel agreed, that

8    the summary statement include specific categories with payments, if any, to

9    defendants for, *e.g.*, physical and digital uses, license income, merchandising income,

10   *etc.*, all broken down by accounting period, and also include the amounts of any

11   advances.   Plaintiff's counsel agreed that would resolve the Subpoena dispute

12   undertook to get back to Atlantic's counsel the next day.  *Id.* at 2-3, ¶¶ 9-10.

13         Although that compromise would have provided plaintiff with the information

14   he claims to need – namely, the amounts defendants received from Atlantic relating

15   to Cardi B – the next day plaintiff's counsel instead demanded that Atlantic produce

16   all of its accountings to defendants, in Excel format, and all contracts between

17   defendants and Atlantic relating to Cardi B.  Plaintiff's counsel acknowledged that the

18   day before he had agreed that plaintiff does not need Atlantic's accountings and

19   contracts, but provided no reason for now demanding them.  *Id.* at 3, ¶ 11.  Aside from

20   the fact that Atlantic's accountings are not in Excel format and cannot be

21   electronically converted into Excel files, both the accountings and the contracts, which

22   are highly confidential, do not shed any additional light on the payments that

23   defendants have received from Atlantic.  Kushner Decl. at 3, ¶ 12.

24         Subsequently, defendants' counsel advised Atlantic that, including on privacy

25   and relevance grounds, defendants object to Atlantic disclosing to plaintiff the

26   amounts they received from Atlantic.  Defendants' counsel also advised Atlantic that

27   defendants had objected or would object directly to plaintiff, request their own meet-

28   and-confer, and, if the matter were not resolved, file a motion for a protective Order.

8

1  Defendants' counsel also provided a copy of his March 6, 2020, meet-and-confer letter
2  to plaintiff's counsel.  Anderson Decl. at 3-4, ¶ 12, & Exh. 3.

3       In another attempt to resolve the issues as to Atlantic, Atlantic's counsel
4  proposed to plaintiff's counsel that plaintiff defer the issue as to Atlantic until plaintiff
5  and defendants had, directly or with the Court's assistance, resolved their dispute.
6  Plaintiff's counsel refused.   Anderson Decl. at 4, ¶ 13.

7       Finally, on March 18, 2020, defendants' counsel advised Atlantic that
8  defendants withdrew their objections to Atlantic producing to plaintiff a copy of
9  Atlantic's accountings to defendants and their contracts with Atlantic.  Accordingly,
10  that same day, Atlantic's counsel proposed producing to plaintiff copies of the
11  accountings it has rendered to defendants along with a declaration confirming they are
12  true and correct copies of the accountings Atlantic has rendered to defendants with
13  respect to Cardi B.  *Id.* at 4, ¶¶ 14-15, & Exh. 4.  As of the filing of this Memorandum,
14  plaintiff's counsel has not responded to that proposal.

15       Plaintiff claims to need only the amounts that defendants have received from
16  Atlantic with respect to Cardi B, and Atlantic has twice offered to provide that
17  information, the second time also with copies of the accountings.  Plaintiff has offered
18  no justification for declining to agree, let alone a justification consistent with his and
19  his counsel's duties to avoid undue burden on Atlantic and to resolve discovery
20  disputes in good faith.  For that additional, independent reason, plaintiff's Motion
21  should be denied.

22      **(e)**    **<u>Non-Party Atlantic's Contentions as to Each of Plaintiff's Requests</u>**

23       Plaintiff **(1)** failed to provide Atlantic the thirty-one days' notice required by
24  Local Rules 37-4 and 6-1; **(2)** knowingly failed to comply with Local Rule 37-2;
25  **(3)** violated Federal Rule of Civil Procedure 45(d)(1) by misusing a subpoena to
26  obtain from a non-party information and documents in the defendants' possession,
27  custody, or control; and **(4)** failed to accept compromises that would have provided
28  ///

what he claims to need and avoid undue burden on a non-party.  Each of these are independent reasons for the Court to deny plaintiff's Motion.

In addition, however, plaintiff's Motion as to six Requests in his Subpoena fails on the merits.

### (1)    Request No. 10

Request No. 10 in plaintiff's Subpoena asks non-party Atlantic to produce:

"All contracts or agreements YOU entered into with any DEFENDANT during the relevant time period."

Atlantic timely objected to this and the other Requests that plaintiff puts in issue.

Plaintiff's Requests, including this Request, include defined terms that plaintiff, by omitting from his Motion the Subpoena he directed to Atlantic, fails to disclose to the Court.  Moreover, this Request is not limited to contracts relating to Cardi B, and plaintiff has conceded he is not entitled to any contracts within his Subpoena that do not relate to Cardi B.  Anderson Decl. at 2:11-13.

As to Atlantic's contracts with defendants relating to Cardi B, they are not relevant and are highly confidential.

With respect to relevance, plaintiff argues that every dollar that defendants receive after the 2016 Mixtape are "profits" attributable to the 2016 Mixtape's cover art.  As a general matter, the cases that plaintiff cites do not support his contention and, indeed, refute it.  *See, e.g., Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 547, 135 Cal. Rptr. 3d 200 (2011) (party claiming unauthorized use of his name could recover the adversary's "profits from the unauthorized use."); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1491-93, 171 Cal. Rptr. 3d 548 (2014) (breach of fiduciary and unjust enrichment claims regarding improper sale of stock; plaintiff's recovery limited to defendants' profits from their sale of stock); *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1090 (9th Cir. 2002) (Civil Code § 3344 allows a plaintiff to recover the defendant's profits "from the unauthorized use"); *Columbia Broad. Sys., Inc. v. Superior Court for Los Angeles Cty.*, 263 Cal. App. 2d

12, 19-21, 69 Cal. Rptr. 348 (Ct. App. 1968) (because plaintiff's claim related only to one two-part episode of television series, she was not entitled to discovery as to contracts and revenues from the other episodes in the series); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (in copyright and patent infringement case, the plaintiff's recoverable profits limited to those "from the infringing product.").

Plaintiff analogizes to federal copyright cases and argues that every dollar defendants receive are "indirect" profits attributable to the 2016 Mixtape's cover art. However, under established copyright law, indirect profits are limited to those that, as a matter of fact, are "causally linked" to the alleged infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 713 (9th Cir. 2004). And plaintiff's theory here – that the 2016 Mixtape's cover art increased interest in Cardi B – has been rejected by the Ninth Circuit. *Id.* at 714-15 (the plaintiff's theory that infringing use of its film footage "created excitement" resulting in defendants' sales of non-infringing products, "stretches the causation rubber band to its breaking point"); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002) (symphony's infringing use of plaintiff's artwork in promotional campaign did not entitle plaintiff to symphony's profits from ticket sales; any claim of causation is speculative). As a result, plaintiff's analogy to copyright law actually defeats, rather than supports, his claimed entitlement to the profits defendants have made after the release of the 2016 Mixtape with its cover art.

Further, in this specific instance, the 2016 Mixtape and its cover art was not a factor in Atlantic's decision to enter into its agreements with defendants. Kushner Decl. at 2, ¶¶ 6-9.

Finally, even if defendants' payments from Atlantic were relevant to plaintiff's claims, which they are not, the Atlantic contracts themselves are irrelevant. Plaintiff has conceded as much by confirming that he seeks from Atlantic the amounts it paid to defendants with respect to Cardi B recordings, merchandise, *etc.* How those amounts were calculated under complex contractual provisions does not shed any

additional light on what plaintiff claims to need: the amounts of the payments defendants actually received.  Further, those contracts are highly confidential with specifically negotiated terms, and their disclosure, including to plaintiff's music industry experts pursuant to a protective order, would be substantially damaging to Atlantic.  Kushner Decl. at 3-4, ¶¶13-16.  Since plaintiff seeks only the amounts defendants received, there is no justification for exposing this non-party to that risk.

Accordingly, plaintiff's Motion as to Request No. 10 should be denied.

### (2)   Request No. 12

Request No. 12 in plaintiff's Subpoena is:

> "All documents in your possession sufficient to show all sales or streams of any music released by any DEFENDANT during the relevant time period."

This Request is problematic on its face.  First, like many of plaintiff's Requests, it asks for "[a]ll documents" sufficient to show something, when one such document would suffice.  Second, Atlantic does not have sales and streaming information for music "released by any DEFENDANT" – *e.g.,* the 2016 Mixtape – only information as to music released by Atlantic.  As a result, this Request is moot.

### (3)   Request No. 16

Request No. 16 in plaintiff's Subpoena is:

> "All documents in your possession sufficient to show the revenues derived from any music released by any DEFENDANT during the relevant time period."

This Request also asks for "[a]ll documents" when it should at most request "a document," and, in any event, this Request is moot because Atlantic does not have the requested information as to "music released by any DEFENDANT."  *See above* at 12:15-17.

///

///

**(4)     Request No. 20**

Request No. 20 in plaintiff's Subpoena is:

> "All documents in your possession sufficient to show profits, royalties, or other compensation, including non-monetary "in kind" or non-cash benefits, that any DEFENDANT derived in any way from any music released by any DEFENDANT, from all countries, including from concert events, non-concert events, licensing, merchandising, or other GBMV1-related contracts."

As above, this request improperly refers to "[a]ll documents" when one document would suffice, and is limited to "music released by any DEFENDANT," not music released by Atlantic.  Confirming that this Request refers to the 2016 Mixtape profits, plaintiff ends it with "or <u>other</u> GBMV1-related contracts," and plaintiff's Subpoena defines "GBMV1" as the 2016 Mixtape.  Anderson Decl., Exh. 2 at 6, ¶ 8; *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486–87 (2006) ("[W]ords grouped in a list should be given related meaning" (quoting *Dole v. Steelworkers*, 494 U.S. 26, 36 (1990))).  As a result, this Request also is moot.

**(5)     Request No. 24**

Request No. 24 in plaintiff's Subpoena is:

> "All documents concerning any payments, including account summaries, account statements, records of bank transfers, checks, cash payments, or any form of nonmonetary "in kind" or non-cash benefits any DEFENDANT received relating to any music released by any DEFENDANT."

This Request also suffers from multiple defects.

First, because plaintiff requests "[a]ll documents <u>concerning</u> any payments . . . <u>relating to</u> any music . . . . ," this Request is overbroad and fails to identify the requested documents with reasonable particularity.  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616 (C.D. Cal. 2013) ("[A] discovery request should be sufficiently

13

definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced.'" (quoting *Regan–Touhy v. Walgreen Co.,* 526 F.3d 641, 649–50 (10th Cir. 2008))); *Calleros v. Rural Metro of San Diego, Inc.*, No. 17CV686-CAB(BLM), 2018 WL 1744599, at *7 (S.D. Cal. Apr. 11, 2018) ("Courts tend to find document requests seeking all documents related to a claim or defense as lacking particularity." (quoting *Lopez v. Chertoff*, No. CV 07-1566-LEW, 2009 WL 1575214, at *2 (E.D. Cal. June 2, 2009))).

Plaintiff exacerbates that lack of specificity by his Subpoena's definitions:

"6.    Documents which 'concern,' 'refer' or 'relate' to a given subject are ones that, whether directly or indirectly, constitute, memorialize, contain, concern, embody, reflect, identify, evidence, state, deal with, comment on, respond to, set forth, describe, analyze, contradict, or are in any way pertinent to that subject matter."

Anderson Decl., Exh. 2 at 6, ¶ 6.

Second, whatever this Request seeks, its scope is limited by its reference to "music released by any DEFENDANT."  Atlantic does not have records as to music released by defendants – *e.g.,* the 2016 Mixtape – so this request also is moot.

**(6)    Request No. 27**

Finally, plaintiff moves with respect to his Subpoena's Request No. 27, which is:

"All documents concerning any payments, including summaries, account statements, bank transfers, checks, cash payments, and any form of non-monetary "in-kind" or non-cash benefits YOU provided to any DEFENDANT relating to any contract or agreement entered into between YOU and any DEFENDANT."

In addition to this Request's overbreadth and lack of particularity due to plaintiff's use of his broadly defined terms, "concerning" and "relating to," Atlantic's

14

bank records regarding payments that it has made to defendants are not relevant and their production is not proportional to the needs of the case.

Plaintiff claims the right to know what defendants received from Atlantic relating in any way to Cardi B. Given that plaintiff acknowledges that Atlantic had nothing to do with the 2016 Mixtape or its cover art, this Request does not seek documents that are relevant to any claim or defense. Fed. R. Civ. P. 26(b)(1). Neither is there any merit, generally or – even more importantly here – as to Atlantic, to plaintiff's argument that his potential remedies include all monies defendants have received after the 2016 Mixtape. *See above* at 10:17-11:23; Kushner Decl. at 2, ¶¶ 6-9.

And even if there were any relevance to the monies defendants received from Atlantic, plaintiff's request that Atlantic produce its bank records is plainly not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Plaintiff, to pursue his claim to monies defendants received from Atlantic, only needs to know those specific amounts. Plaintiff has had ample opportunity to obtain that information from defendants, and has even been offered that information by Atlantic to resolve this discovery dispute. And Atlantic's bank records and statements having any conceivable relationship to Atlantic's recordings of Cardi B are not limited to the payments to defendants, but extend to, for example, payments to third parties as well as payroll to employees involved in the creation or distribution of those recordings, none of which are the 2016 Mixtape or include the 2016 Mixtape's cover art.

This Request is overbroad and improper and plaintiff's Motion should be denied.

**(f)** **Plaintiff or His Counsel Should Be Required to Reimburse Atlantic its Attorneys' Fees and Costs of Opposing Plaintiff's Motion**

Plaintiff and his counsel have not only brought a Motion without substantial justification, without complying with the Court's Local Rules, and which they could have easily avoided by accepting Atlantic's proposal, but have imposed substantial,

15

undue burdens on a non-party.   Under these circumstances, Atlantic should be awarded its attorneys' fees and costs.  Fed. R. Civ. P. 37(a)(5)(b), & 45(d)(1); L.R. 37-4.

## 3.   **CONCLUSION**

Non-party Atlantic respectfully submits that plaintiff's Motion should be granted and Atlantic awarded its attorneys' fees and costs.

Dated: March 19, 2020

_/s/ Peter Anderson_
Peter Anderson, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Non-Party
ATLANTIC RECORDING
CORPORATION