FILED
CLERK, U.S. DISTRICT COURT

12/4/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| KEVIN MICHAEL BROPHY, JR.,<br><br>Plaintiff,<br><br>v.<br><br>BELCALIS ALMANZAR aka CARDI B; KSR GROUP, LLC; WASHPOPPIN, INC.; and DOES 1 – 20,<br><br>Defendants. | Case No.: SACV 17-01885-CJC(JPRx)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS [Dkt. 86], DENYING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFF'S THIRD CLAIM [Dkt. 85], GRANTING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DOUGLAS BANIA [Dkt. 107] AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE EXPERT OPINIONS OF MICHAEL EINHORN [Dkt. 84]** |

## I.  INTRODUCTION

In this case, Plaintiff Kevin Michael Brophy, Jr. alleges that Defendants Belcalis Almanzar (also known as Cardi B), KSR Group LLC, and Washpoppin, Inc. misappropriated his likeness by placing an image on the cover of one of Cardi B's albums that "explicitly misrepresents [P]laintiff having sex with Cardi B."  (Dkt. 1 [Complaint, hereinafter "Compl."] ¶ 21.)  Plaintiff asserts claims for (1) misappropriation of likeness or identity, (2) violation of the right to publicity under California Civil Code § 3344, and (3) invasion of privacy (false light).  (*Id.* ¶¶ 32–55.)

Now before the Court are four motions:  (1) Defendants' motion for summary judgment on all claims based on a transformative use defense (Dkt. 86); (2) Defendants' motion for summary adjudication on Plaintiff's third claim based on the statute of limitations (Dkt. 85); (3) Defendants' motion to exclude the expert testimony of Douglas Bania (Dkt. 107); and (4) Plaintiff's motion to strike opinions of Defendants' rebuttal expert Michael Einhorn (Dkt. 84).  For the following reasons, the first and second motions are **DENIED**, the third motion is **GRANTED**, and the fourth motion is **DENIED AS MOOT**.[1]

## II.  BACKGROUND

Plaintiff is a 42-year old California resident who works for a "surfing and lifestyle company."  (Dkt. 97 [Plaintiff's Statement of Genuine Disputes] ¶ 1.)  He has many tattoos, but the one at the center of this case looks like this:

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for December 7, 2020 at 1:30 p.m. is hereby vacated and off calendar.



(Dkt. 87, Ex. 5.)

Cardi B is a Grammy-winning recording artist. (*See* Dkt. 97 ¶ 36.) The cover of her first album, *Gangsta Bitch Music Vol. 1* ("GBMV1"), looks like this:



There is no dispute that Plaintiff's tattoo was used to make the GBMV1 cover. This case is about the import of that use. According to Plaintiff, Defendants misappropriated his likeness in "a misleading, offensive, humiliating and provocatively sexual way" in order "to launch [Cardi B's] career in music and entertainment." (Compl. ¶ 2.) Defendants assert, among other arguments, that the album cover is a transformative fair use, that Plaintiff's third claim is barred by the statute of limitations, and that Plaintiff's damages expert's testimony is not the product of reliable principles and methods.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS (Dkt. 86)

Defendants argue that the Court should grant summary judgment in their favor on all of Plaintiff's claims because the incorporation of Plaintiff's tattoo design as part of the GBMV1 cover image is a transformative fair use. (Dkt. 86.)

### A. Legal Standard

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient

to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### B.  Discussion

Defendants argue the GBMV1 cover image is a transformative fair use of Plaintiff's likeness. (Dkt. 86.) It is not necessary to go on at length about this argument because it is clearly one for the jury to decide. To grant this motion, the Court would have to conclude that no reasonable jury could find that the cover is not a transformative fair use. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013) (explaining that a defendant is entitled to the transformative use defense as a matter of law only if no trier of fact could reasonably conclude that its use is not transformative). The Court simply cannot do so.

To constitute a transformative fair use, the revised image must have significant transformative or creative elements to make it something more than mere likeness or imitation. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391, 407 (2001). A reasonable jury in this case could conclude that there are insufficient transformative or creative elements on the GBMV1 cover to constitute a transformative use of Plaintiff's tattoo. Testimony from the person who created the mixtape cover, Timm Gooden, helps demonstrate why this is so. Gooden testified that he is not a professional graphic designer, but "[m]ore [a] hobbyist in between regular jobs" who got paid $50 to design the GBMV1 cover. (Dkt. 98, Ex. 5 [Excerpts from Deposition of Timm Gooden, hereinafter "Gooden Dep."] at 15.) He said that he was contacted "to do a quick mixtape cover for Cardi B," and was given some images to begin with. (*Id.* at 20, 24.) One of those images was this one, taken of Cardi B and a male model (not Plaintiff) during a Toronto photoshoot for GBMV1:



(Dkt. 123, Ex. 1 at 4.)

When Gooden produced a draft of the album cover using this image, Klenord Shaft Raphael, KSR's Executive Officer (often referred to as "Shaft") asked Gooden if he could "find another tattoo to go over the back of the male model." (Gooden Dep. at 28.) So Gooden googled "back tattoos" and found a person with a tattoo he thought would work. (*Id.* at 29, 33.) That person happened to be Plaintiff. Gooden right clicked "copy image" from the internet photo of Plaintiff's tattoo, and then pressed "paste" into his draft of the mixtape cover. (*Id.* at 31.) He then "manipulated the tattoo to fit on the actual body of the model," "piec[ing] it together to make it" fit on the size of the back of the image he already had. (*Id.* at 29–30, 46–47.)

Defendants argue that the "transformation" Gooden performed is enough to protect their use of Plaintiff's tattoo. They point out that on the GBMV1 cover, Plaintiff's "neck tattoo is removed," "the arm is repositioned," "the image is tilted to match the forward-leaning posture of the male model's body," one "portion of the left triceps tattoo, vertical in the picture of [Plaintiff] standing, is horizontal on the outstretched arm of the actual male model kneeling and leaning forward in the photo with Cardi B," and other portions of the triceps tattoo are eliminated. (Mot. at 15–16.)

1       However, a reasonable jury could conclude that Gooden's changes lack sufficient transformative elements or creative contributions to protect Defendants' use of Plaintiff's likeness. *See Comedy III*, 25 Cal. 4th at 407. There is no dispute that Gooden made some changes. But there is also no dispute that the content he worked with was copied and pasted from a photo of Plaintiff's tattoo. And significant elements of Plaintiff's tattoo remain untouched in the final album cover. Most significantly, defining elements including the tiger and snake remain virtually unchanged. Under these circumstances, a jury will have to decide the merits of Defendants' defense. *Hilton*, 599 F.3d at 911 (concluding there was "enough doubt as to whether Hallmark's card is transformative" so as to preclude the defense as a matter of law where there were "some differences" between Hilton's representation in a TV show and her portrayal in a Hallmark card, but "the basic setting [was] the same"); *In re NCAA Student-Athlete Name & Likeness*, 724 F.3d at 1274 (concluding "that EA's use of Keller's likeness [did] not contain significant transformative elements" that would entitle EA to the defense as a matter of law). Defendants' motion for summary judgment on all claims based on a transformative use defense is therefore **DENIED**.

## IV. DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFF'S THIRD CLAIM AND FOR LEAVE TO AMEND THEIR ANSWERS TO ASSERT A STATUTE OF LIMITAITONS DEFENSE (Dkt. 85)

      Plaintiff's third claim is for invasion of privacy or false light. Defendants argue that summary judgment is appropriate in their favor on this claim because it is barred by the statute of limitations. However, Defendants "inadvertently" failed to assert this defense in their answers. They therefore request leave to amend their answers under Federal Rule of Civil Procedure 15(a)(2) to assert a statute of limitations defense.

Rule 15 provides that after a party has been served with a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although leave to amend "shall be freely given when justice so requires," it "is not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990)). Courts consider five factors when determining whether to give leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Courts "may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

### A.  Bad Faith

The first element, bad faith, leans in favor of permitting amendment. There is no indication that Defendants acted with bad faith in failing to assert a statute of limitations defense earlier, and Plaintiff does not contend they did.

### B.  Undue Delay

Although Defendants do not appear to have acted in bad faith, they certainly acted with undue delay. Defendants raised their statute of limitations defense for the first time after the parties had completed written discovery, and when only two depositions were left to complete. Their justification for their undue delay is very weak. According to Defendants, they failed to raise the defense earlier because they were "unaware that the statute of limitations governing the False Light Claim is one year . . . and not the two-

year statute applicable to Plaintiff's other claims."  (Dkt. 85-1 at 18 n.2.)  This factor weighs against granting leave to amend.

### C.     Prejudice

In the decision on whether to grant leave to amend, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)  Plaintiff would be prejudiced by permitting Defendants to amend their answers at this stage.  The discovery deadline (which the Court has already twice extended) passed in June.  (*See* Dkts. 73, 78.)  Because Defendants did not raise their statute of limitations defense until after written discovery was complete and only two depositions remained, Plaintiff had no opportunity to conduct discovery targeted at factual issues relevant to Defendants' statute of limitations defense.  Specifically, Defendants contend that Plaintiff's false light claim is barred by the one-year statute of limitations because GBMV1 was released in March 2016 and Plaintiff did not sue until October 2017.  Plaintiff responds that Defendants published the album cover numerous times within the statute of limitations on different music websites and in other formats, and therefore the claim is not time-barred.

Deciding whether Plaintiff's claim is barred by the statute of limitations requires analysis of the single publication rule.  That rule states that "any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication."  Restatement (Second) of Torts § 577A(3) (1977).  "Under this rule, the aggregate communication can give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred."  *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1130 (9th Cir. 2006).  However, a second publication on a different website or in a different

medium "constitutes a separate and distinct publication—one not foreclosed by the single publication rule." *See id.* at 1133–34; *Canatella v. Van De Kamp*, 486 F.3d 1128, 1135 (9th Cir. 2007) (finding that another publication of the allegedly offensive content on the same website did not trigger a new statute of limitations). The statute of limitations is therefore "reset" when offending material "is republished." *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) (offering example of republishing as a statement made in a hardcover book that is repeated later in a paperback version of the book).

Plaintiffs did not have the opportunity to propound written discovery targeted at what republications occurred and what involvement Defendants had in those republications. Granting Defendants leave to amend would therefore require reopening the already-extended discovery period and would substantially delay the resolution of this three-year-old case. This factor therefore weighs against granting leave to amend. *See Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of leave to amend, concluding that the opposing party would have been prejudiced because allowing amendment would have required further discovery, and discovery was to close only five days after the motion to amend was filed); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

**D.  Futility**

The futility of amendment factor also weighs against granting leave to amend. Defendants do not dispute that the GBMV1 cover was republished in a way that would reset the statute of limitations. Specifically, GBMV1 (including the cover art) was published in a new medium—physical vinyl records—in November 2019, more than two years after this case was filed. (*See* Dkt. 106 [Reply] at 2.) The cover art was also added

to various new music services, thereby reaching new audiences, within the statute of limitations—to Pandora in November 2016, 7digital in March 2017, Pulselocker in April 2017, CD Universe API and iHeart Radio in August 2017, TouchTunes in September 2017, and Dubset in March 2018. (*See* Dkt. 116 [Defendants' Responses to Plaintiff's Statement of Genuine Disputes] ¶¶ 16–22.)

Defendants argue, however, that there is no way *they* are responsible for the republications because "KSR sold all of its right, title, and interest in and to the GBMV1 mixtape and the GBMV1 Cover Image to Atlantic Recording Corporation effective September 28, 2016," more than one year before Plaintiff filed the Complaint. (*Id.* at 9.) They therefore maintain that they cannot be liable on Plaintiff's false light claim because someone else is responsible for any republications. The Court is not persuaded. Plaintiff claims that Defendants invaded his privacy and cast him in a false light by putting his image on an explicit album cover. Shaft (KSR's executive officer) testified that he signed off on the decision to sell GBMV1 on vinyl. (Shaft Dep. at 338 [relating that if the distributor said they wanted to "produce vinyl, I said sure, go ahead"].) He also testified that KSR is making money from the vinyl sales. (*Id.* at 320.) Under these circumstances, with evidence that Defendants signed off on and are profiting from the production of vinyl records with Plaintiff's image published within the limitations period (indeed, after Plaintiff filed his Complaint), the Court concludes that permitting Defendants to amend their answers to assert a statute of limitations defense would likely be futile.

### E. Whether Defendants Have Previously Amended

The final factor is whether Defendants previously amended their answers. They have not. This factor therefore weighs in favor of granting leave to amend.

On balance, these factors weigh against granting Defendants' request for leave to amend their answers to assert a statute of limitations defense at this late stage. Most importantly, Plaintiff would be prejudiced if the Court permitted amendment because doing so would require reopening discovery and cause a substantial delay. Although there is no indication that Defendants acted in bad faith, the reason for their delay in seeking leave to amend—that they simply did not realize the statute of limitations was one year—is very weak. Defendants' motion is therefore **DENIED**.[2]

## V.  DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY AND REPORT OF DOUGLAS BANIA (Dkt. 107)

Plaintiff's second claim is for violation of California Civil Code § 3344, which provides a statutory remedy for commercial misappropriation of another's photograph or likeness. Under that section, "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by [that] person . . . ." Cal. Civil Code § 3344(a).

Damages recoverable under Section 3344 include (1) actual damages the Plaintiff sustained as a result of the unauthorized use or $750, whichever is greater, (2) "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages," (3) punitive damages, and (4) fees and costs.

---

[2] Defendants alternately request summary adjudication or judgment on the pleadings on Plaintiff's false light claim based on the statute of limitations. For the reasons discussed above regarding futility, the Court cannot conclude as a matter of law that Defendants are insulated from liability on the false light claim based on the statute of limitations. Rather, the evidence shows that they were directly involved in the decision to republish Plaintiff's likeness in a new form even after this lawsuit was filed.

*Id.* To establish the second category of damages, a plaintiff must "present proof only of the gross revenue attributable to such use." *Id.*

### A. Summary of the Bania Report

Douglas Bania is Plaintiff's damages expert. (Dkt. 123, Ex. 1 [Bania Expert Report, hereinafter "Bania Rep."] at 1 [explaining that he was hired to "investigate the economic damages claims pursuant to the complaint"].) In his report, he offers his opinion that the amount of "gross revenue attributable" to Defendants' use of Plaintiff's likeness on the GBMV1 cover under Section 3344 is $1,625,789.

Here is how he reaches that conclusion. Bania determined that 84% of GBMV1's royalties were generated by streaming and downloading on Apple Music, Spotify, Vevo, iTunes, Pandora, and YouTube. He then determined that all of those services except Vevo show GBMV1's cover art when a listener searches for "Gangsta Bitch Music Vol 1" or plays GBMV1. (*Id.* at 6–7.) Based on these facts, Bania concluded that *all* of the royalty income Defendants received for GBMV1 on the five streaming services that show GBMV1's cover—a total of $1,070,854—is "related to use of the Subject Image" and is "gross revenue attributable to such use" under Section 3344.

Bania did not stop there. Rather, he determined that Plaintiff's likeness was used to market, promote, or sell *Gangsta Bitch Music Volume 2* ("GBMV2," released in January 2017), even though Plaintiff's likeness did not appear on that album cover. (Bania Rep. at 6–7.) His reasoning went like this. GBMV2 plays automatically after playing GBMV1 in Apple Music and Pandora. (*Id.* at 8.) In other words, if a user listens to GBMV1 on one of those platforms, finishes the album, and does not choose another option, then GBMV2 automatically plays after GBMV1. According to Bania, this means that "in Apple Music and Pandora, GBMV2 is linked and is benefiting from playing the

GBMV1 songs or entire album, all of which use the Subject Image when GBMV1 songs are playing." (*Id.* at 8.) Bania therefore concludes that $554,935—Defendants' total royalty income on GBMV2 from Apple Music and Pandora—constitutes "gross revenue attributable to" the use of Plaintiff's likeness under Section 3344. (*Id.*)

### B. Legal Standard

Courts have a "special obligation" to serve as a gatekeeper for expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This is because "[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (internal citation omitted); *see also Cree v. Flores*, 157 F.3d 762, 773 (9th Cir. 1998) (noting that expert testimony is "not subject to the strictures of Federal Rules of Evidence 602 and 803").

Faced with a proffer of expert testimony, a district court must determine whether the expert is proposing to testify to (1) specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 592–93. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically, technically, or specially valid, and of whether that reasoning or methodology properly can be applied to the facts at issue. *Id.* In other words, all admitted expert testimony must be both relevant and reliable. *Kumho Tire*, 526 U.S. at 152; *see* Fed. R. Evid. 702(a)–(d) (requiring that expert testimony "help the trier of fact to understand the evidence or determine a fact in issue," be "based on sufficient facts or data," be "the product of reliable principles and methods," and be the result of the expert's reliable application of "the principles and methods to the facts or data").

### C. Discussion

Bania concludes that every dollar Defendants earned from the downloading and streaming of GBMV1 on the five music services that display the cover art resulted from the use of Plaintiff's likeness. (Bania Rep. at 9; Dkt. 119-3 [Excerpts from Transcript of Bania Deposition, hereinafter "Bania Dep."] at 148 ["[M]y opinion is the fact that the image is displayed and the defendants are making their royalties, that is the connection."]; *see id.* at 140 ["When the song is played, the image is displayed and royalties are made."].) This conclusion is simply not the product of any reliable principle or method. Fed. R. Evid. 702(c). Bania does cite to any survey, poll, focus group, or other study where listeners—much less 100% of listeners—stated that the sole driver of their decision of what music to listen to is cover art, or that cover art is absolutely critical to their decision to listen to a song or album. Asked at his deposition whether he looked at surveys, polls, or studies regarding why consumers buy records, he could cite none. (Bania Dep. at 33.) That is for good reason. Such a conclusion is pure fantasy. *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (explaining that district court did not err in rejecting the testimony as unreliable where there was no explanation of experts' reasoning and methods underlying their conclusions); *see also Del Amo v. Baccash*, 2008 WL 2780978, at *10 (C.D. Cal. July 15, 2008) (rejecting claim for gross profits because the plaintiff failed to establish what portion of profits were *attributable to* the Section 3344 violation).

There are myriad ways people might come to listen to Cardi B's album. They may have seen her on TV and decided to search for her music. They may have read about her in a magazine and decided to listen to her songs. They may have chosen to listen to a curated rap playlist and happened upon a GBMV1 song without seeking it out specifically. In none of these scenarios does Plaintiff's tattoo cause Defendants to earn revenue. Rather, Cardi B's fame and notoriety, or a consumers' more general

preferences, for example for rap music, play the deciding role in a listener's choice and therefore Defendants' revenue. At least some of GBMV1's listeners must have been driven by these factors (and not by the cover art) to listen to the album. Yet Bania fails to consider even the possibility that Defendants may have earned revenue on the streaming services that display the album cover for reasons other than Plaintiff's tattoo. That failure is especially noteworthy given the fact that, as Bania acknowledges, Defendants made money on GBMV1 through Vevo, even though that service did *not* display the cover art. That Defendants made money on GBMV1 even when the tattoo was not displayed shows that it is extremely likely that at least some listeners chose to listen to Cardi B's album for reasons other than the use of Plaintiff's tattoo. Bania's conclusion that all of Defendants' revenue on sites that did display the tattoo is attributable to the use of the tattoo is therefore extremely unlikely if not completely impossible.

Because of Bania's untenable conclusion, he makes no attempt to explain what amount of revenue Defendants earned *because* they used Plaintiff's likeness—the amount of revenue *attributable* to the challenged use under Section 3344. He does not analyze what amount of money Defendants would not have earned on GBMV1 if they had not used Plaintiff's likeness on the cover. Rather, wherever the photo appears, Bania concludes Defendants earned all of their revenues *because of* the photo. This is simply not an opinion based on a reliable principle or method. *See Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (explaining that it is not enough to show the defendant's gross revenues from all sales and that a plaintiff must instead show gross revenues resulting from the infringement using this analogy: "If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.").

Put another way, Bania's theory means that if Defendants had not used Plaintiff's tattoo on the GBMV1 cover, Cardi B would have made *no* money on the album—at least on the streaming services where the tattoo appears. There is absolutely no basis for this conclusion, and the Court in its role as gatekeeper will not allow a jury to rely on it. *See Kumho Tire*, 526 U.S. at 147. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

All of this, of course, addresses only Bania's opinions about GBMV1. His opinions regarding GBMV2 are even less the product of reliable principles and methods. As to that album, Bania concludes that because GBMV2 plays automatically after GMV1 on two streaming services, *every* play of GBMV2 on those streaming services *must* have occurred by way of auto play. That conclusion is also not the result of any reliable principle or method. Indeed, common sense indicates that the conclusion is impossible. Nor, as already explained, is there any basis for Bania's assumption that any listener who played GBMV1 did so because of Plaintiff's tattoo on the cover.

A jury may only award as damages revenue *attributable to* Defendants' misappropriation of Plaintiff's likeness. *See* Cal. Civ. Code § 3344. Because Bania's opinion that *all* royalties Defendants earned on GBMV1 on music services where the cover is displayed were attributable to Defendant's misappropriation of Plaintiff's likeness is not the product of reliable principles and methods, his testimony must be excluded.[3]

---

[3] Also pending before the Court is Plaintiff's motion to strike the opinions of Michael Einhorn, Defendants' rebuttal expert to rebut Bania's opinions. (Dkt. 84.) Because the Court grants Defendants' motion to exclude Bania's testimony, it need not consider whether to strike the rebuttal expert's testimony. Accordingly, Plaintiff's motion is **DENIED AS MOOT.**

## VI. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment or summary adjudication are **DENIED**, Defendants' motion to exclude the testimony of Douglas Bania is **GRANTED**, and Plaintiff's motion to exclude the testimony of Michael Einhorn is **DENIED AS MOOT**.

DATED: December 4, 2020

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE