A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Lawrence J. Conlan (CSB No. 221350)
lconlan@cappellonoel.com
Wendy D. Welkom (CSB No. 156345)
wwelkom@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| KEVIN MICHAEL BROPHY, JR., an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BELCALIS ALMANZAR aka CARDI B, an individual; KSR GROUP, LLC, a New York limited liability company; WASHPOPPIN, INC., a New York corporation; and DOES 1-20, inclusive, <br><br> Defendants. | **Case No. 8:17-cv-01885-CJC (JPRx)** <br><br> Hon. Cormac J. Carney, <br> U.S. District Judge <br><br> **EX PARTE APPLICATION TO RESET TRIAL DATE AND REQUEST FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT BELCALIS ALMANZAR FOR BAD FAITH CONDUCT** <br><br> Complaint filed: October 26, 2017 <br> Pre-Trial Conf.: January 18, 2022 <br> Trial Date: February 1, 2022 |

**TO THE COURT AND ALL PARTIES:**

PLEASE TAKE NOTICE THAT PLAINTIFF, by and through his counsel of record, hereby applies to the Court, ex parte, to reset the trial date currently set for February 1, 2022 to the first available date in early December, 2021, and respectfully requests the Court issue an order to show cause why sanctions should not be imposed on Defendant Belcalis Almanzar for making misleading statements under oath to the Court, to Plaintiff, and to Plaintiff's counsel about the basis for her recent request to continue the previously set October 26, 2021 trial date.

On September 8, 2021, the Court issued an Order (Docket No. 140) setting trial in this action for October 26, 2021. On September 13, 2021, Defendant Ms. Almanzar moved ex parte to continue the trial date, and submitted a sworn declaration in support of her application. In her declaration, Ms. Almanzar stated that she did not feel it would be fair if she was required to travel from the New York area to California following the birth of her son in early September because she was concerned about her health during her post-natal period, and because the risk of Covid-19 cautioned the need for her to stay away from public places, like airports and hotels. *See* Dkt. 141.

Just two weeks after filing her sworn declaration, however, Ms. Almanzar appeared in Paris, France to attend Paris Fashion Week festivities and a variety of highly public events. Her trip to Paris was documented in a steady stream of photos on social media and a variety of media publications showing off her fitted designer dresses at multiple public events.

Ms. Almanzar's conduct contradicts her sworn declaration and her statements to the Court about the burden of travelling and attending trial on October 26, 2021 were misleading. There is no reasonable explanation for Ms. Almanzar to suggest that she could not, and would not, leave New York because she needed to be with her children and that it was not safe for her to be in public places, only for her to appear two weeks later in Paris in multiple designer looks at extravagant events

amongst crowds of people, at public parties and dinners. The evidence also suggests that at the time she submitted a sworn declaration stating that it was too much of a burden for her to travel, Ms. Almanzar had plans to travel to Paris and model for different designers for Fashion Week, as she did in 2019. Ms. Almanzar has disregarded the authority of this Court for her own convenience, and she has further prejudiced Plaintiff's rights.

Ms. Almanzar's misleading sworn testimony is not without consequence. As a direct result of her statements, the October 26 trial date was continued and Plaintiff has been prejudiced by an unwarranted delay of the trial date in this action, all while Defendants continue to market and sell their mixtape and earn royalties from the offensive use of Plaintiff's likeness.

Plaintiff's ex parte application is based upon this application, the accompanying memorandum of points and authorities, the declaration of Lawrence J. Conlan, the pleadings and papers on file in this action, all other material, evidence or argument presented to the Court, and such other matters as the Court may deem just and proper.

This application is made following Plaintiff's counsel's effort to confer with Defendants' counsel pursuant to L.R. 7-3. At 4:47 p.m. on October 4, 2021, Plaintiff's counsel Lawrence J. Conlan contacted Defendants' counsel Alan Dowling by email at agdowling@aol.com and provided notice and the grounds of the ex parte application in accord with Local Rule 7-19. Declaration of Lawrence J. Conlan, ¶ 3, Exhibit A. Defendants' counsel responded to the email notice on October 5, and denied that Ms. Almanzar's declaration was false or misleading. Declaration of Lawrence J. Conlan, ¶ 4, Exhibit B. But, the explanation provided regarding the circumstances of her Paris trip raises more questions than it answers, and it appears to compound the misleading nature of Ms. Almanzar's declaration. Defendants have stated they intend to oppose the application.

Defendants' counsel's contact information is set forth below:

    Alan G. Dowling, a Professional Corporation
    1043 Pacific Street, No. 1
    Santa Monica, California 90405
    Telephone:  (818) 679-6395
    Fax: (424) 238-5366

    Email: agdowling@aol.com

Dated:  October 6, 2021

**CAPPELLO & NOËL LLP**

By: */s/  Lawrence J. Conlan*

Lawrence J. Conlan

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

Plaintiff originally filed his action approximately four years ago, alleging causes of action for misappropriation of likeness under statutory and common law, and false light/invasion of privacy. Plaintiff is seeking to disgorge profits earned by Defendants from the improper use of his likeness, damages for humiliation and embarrassment allowable by statute, statutory damages, attorneys' fees, and punitive damages. To this day, Defendants continue to publish Plaintiff's likeness and earn royalties from the sales of the mixtape, and Plaintiff has been subjected to ongoing humiliation, worry, and distress caused by Defendants' unlawful and highly offensive commercial exploitation of his likeness.

After multiple continuances due to uncertainty surrounding the coronavirus pandemic, this Court issued an order on September 8, 2021 setting a jury trial for October 26, 2021, providing Plaintiff with a firm date and venue to seek justice for Defendants' wrongdoing. Dkt. 140.

Within days of the Court's order, Defendants moved ex parte to continue the trial date and pretrial conference, on the basis that the health and well-being of Ms. Almanzar, who gave birth to a son in early September, would be adversely affected by the scheduled trial date. *See generally* Dkt. 141 *et seq*.

In a sworn declaration under penalty of perjury dated September 10, Ms. Almanzar stated, among others things:

> With all respect, for medical reasons, I do not feel it will be appropriate, fair or reasonable for me to be required to travel from the East Coast to Southern California in mid to late October. It will be especially important for me to be with my newborn infant over the next two months. As I am and will be in the immediate post-natal period and nursing my newborn child, it would be extremely difficult and burdensome for me to have to be present for and participate in pretrial preparation, beginning in mid-October, and attendance at the trial, beginning in late October, in this case. The sheer burden of travelling

|     |     |
| --- | --- |
| 1   | across the country with my family (especially my infant |
| 2   | children), under these circumstances, would be substantial and unreasonable, and should be avoided. Apart from that burden, |
| 3   | the risk, to either me, or especially to my newborn son and my |
| 4   | young daughter, of possibly contracting a variant of the COVID-19 coronavirus in the course of such travel, or by |
| 5   | having to spend extended periods in (or moving about in) |
| 6   | public places such as the courthouse generally, a public courtroom, and other public facilities such as airports or a hotel, |
| 7   | is, I believe, unreasonably great. |

Declaration of Belcalis Almanzar, Dkt. 141-3 at ¶ 3.  Ms. Almanzar's sworn statements were accompanied by a declaration from her medical doctor discussing the risks to Ms. Almanzar of travel during the post-natal period.  Presumably, she had discussed the issue with her doctor and had been counseled in that regard. Over the objections of Plaintiff's counsel that Defendants' request for a lengthy continuance was unreasonable and that an early December trial date would allow adequate time to address Ms. Alamzar's stated concerns as well as the reasons provided by her doctor, this Court granted Defendants' ex parte application and continued the trial date to February 1, 2022.  *See* Dkt. 143.

Two weeks after filing her declaration, Ms. Almanzar traveled to Paris, France to participate in "Paris Fashion Week", and since September 28, 2021 has made multiple public appearances which continued through the first weekend of October.  Examples of Ms. Almanzar's public appearances are set forth below:

> Cardi B knows how to make an entrance.
>
> The "Up" rapper, 28, made a surprise appearance at Paris Fashion Week on Tuesday to celebrate the new "Thierry Mugler, Couturissime" exhibition at the Musée des Arts Décoratifs.
>
> Cardi honored the featured designer in an over-the-top outfit from his 1995 couture collection: a plunging red sequined dress paired with a matching cape that framed her face with fiery feathers.
>
> The Grammy winner added even more drama with her opera-length gloves, ruby necklace and glittery red eyebrows.

Excerpted from https://pagesix.com/2021/09/28/cardi-b-makes-first-red-carpet-appearance-since-giving-birth/ (last accessed October 6, 2021) (Full article attached as Exhibit C to concurrently filed Declaration of Lawrence J. Conlan)



> Now that's a double-breasted jacket.
>
> Cardi B stepped out in an over-the-top Schiaparelli ensemble during Paris Fashion Week on Wednesday, sporting a tweed jacket with two strategically placed golden circles at the bust — complete with gilded "nipples."
>
> The rapper, 28, accessorized with a series of surrealist accessories, including rings that resembled teeth and a chain necklace featuring charms shaped like eyes and lips.
>
> She topped the style off with an equally eye-catching sculptural gold headpiece that completely covered the top part of her face.

Excerpted from https://pagesix.com/2021/09/29/cardi-bs-paris-fashion-week-outfit-includes-golden-nipples/ (last accessed October 6, 2021) (Full article attached as Exhibit D to concurrently filed Declaration of Lawrence J. Conlan)



"Cardi B welcomed her second child with her rapper husband Offset on September 4, and they are also parents to daughter Kulture, three.

But the loved-up couple enjoyed a night off from parenting on Wednesday, when they stepped out hand-in-hand in Paris for a party held near the Champs-Élysées.

Rapper Cardi, 28, put on an eye-popping display in a low-cut black leotard layered beneath a sweeping coat while Offset, 29, cut a trendy figure in leather trousers and a corduroy bomber jacket."

Excerpted from https://www.dailymail.co.uk/tvshowbiz/article-10043265/Cardi-B-puts-busty-display-strolls-Paris-Offset.html (last accessed October 6, 2021) (Full article attached as Exhibit E to concurrently filed Declaration of Lawrence J. Conlan).

Additional web postings documenting Ms. Almanzar's Paris visit are accessible here:

https://www.buzzfeed.com/pablovaldivia/cardi-b-paris-fashion-week-debut-2021 (last accessed October 6, 2021) (Full article attached as Exhibit F to concurrently filed Declaration of Lawrence J. Conlan).

https://twitter.com/iamcardib?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (last accessed October 6, 2021).

It is implausible that Ms. Almanzar's appearances at Paris Fashion Week, complete with extravagant outfits, publicity, dinners and parties, was not planned at the time she filed her declaration asking this Court for a continuance. Ms. Almanzar's counsel has stated in response to the ex parte notice that Ms. Almanzar and her agents were not aware of the proposed trip until September 21 or 22, but that does not explain how she was able to book flights, hotels, dinner reservations, or prepare for fittings. A more likely inference may be drawn that Ms. Almanzar

and her agents knew of the opportunity to travel to Paris for Fashion Week, as she had done in 2019, at the time she submitted her declaration.  Hence, her story of hardship, and the inability to be away from her young children (who, according to her counsel she then left in New York for a week while she travelled to Paris), supported by declarations from her doctor and counsel, was misleading, and offered for no other reason than to avoid the *inconvenience to her* of a trial date that would impinge on her publicity-seeking activities.

The disregard for the Court's authority displayed by Ms. Almanzar comes as no surprise to Plaintiff, because it reflects the "all about me" approach that Ms. Almanzar has taken in this action from the outset.  Beginning from Defendants' efforts for two years to transfer venue to New York while claiming, incredibly, that Ms. Almanzar had no contacts with California, Defendants' cynicism toward the legal process and the rights of others has grown breathtaking in its audacity.  Ms. Almanzar apparently had no hesitation asserting that health concerns cautioned that she should stay home, but then promptly flew to Paris for parties and publicity just two weeks later.  While Ms. Almanzar and her counsel may try to recharacterize her declaration to say that she technically "made no false or misleading statements," there is little question that her conduct is inconsistent with the spirit of her sworn testimony.

In order to mitigate further prejudice to Plaintiff and to hold Ms. Almanzar accountable, Plaintiff respectfully requests this Court issue an order setting the trial of this matter for early December, 2021, or as soon thereafter as the Court is available for a jury trial.  Plaintiff further requests the Court exercise its inherent discretion and issue an order to show cause why sanctions should not issue against Ms. Almanzar for acting in bad faith, including but not limited to: compensatory monetary sanctions to include Plaintiff's legal fees incurred responding to Ms. Almanzar's ex parte application to continue the trial date, briefing this application, and appearing as necessary at an OSC hearing; the right to take Ms. Almanzar's

deposition without delay regarding the circumstances of her travel to Paris, when her plans were made and who she communicated with about them; non-compensatory monetary sanctions sufficient to deter similar bad faith conduct in future, and/or non-monetary sanctions up to and including terminating sanctions.

## II.  LEGAL ARGUMENT

### A.  This Court may exercise its inherent power to impose monetary sanctions for Ms. Almanzar's bad faith conduct.

This Court has inherent power to impose sanctions on a party or its attorneys for bad faith conduct. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). Bad faith conduct "includes a broad range of willful improper conduct" and "extends to a full range of litigation abuses." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

"[D]elaying or disrupting the litigation" or actions constituting a "fraud" on the court can constitute sanctionable bad faith conduct. *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Bad faith can also include reckless misstatements of law and fact coupled with an improper purpose, or failing to disclose facts that lead to wasted resources. *See Fink,* 239 F.3d at 994; *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1335 (5th Cir. 1996) (affirming inference of bad faith from party's failure to disclose its true position before the court and parties' resources were wasted).

In awarding monetary compensatory sanctions, the Court may award fees incurred "but-for" the party's bad faith conduct, and has broad discretion to determine the appropriate amount to award, including reliance on estimates and the Court's own understanding of the litigation. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1187 (2017).

Here, the false and misleading testimony provided by Ms. Almanzar under penalty of perjury was supplied to delay, frustrate, or otherwise disrupt the scheduled October 2021 trial date, for no other reason than her own convenience. It

defies credibility that Ms. Almanzar had no knowledge that she would travel if an opportunity arose (other than trial), or of her intent to attend "Paris Fashion Week", which she had also attended in 2019, only two weeks after submitting a declaration lamenting the hardship that travelling to *California* would cause to her health and family during that same period.

As a result of the misleading ex parte application filed by Defendants, supported by false testimony from Ms. Almanzar, Plaintiff has lost an opportunity for a long-awaited resolution of his action, all while Defendants continue to profit from the sales of the *Gangsta Bitch* mixtape that improperly and offensively features Plaintiff's likeness. In addition, Plaintiff incurred attorneys' fees responding to Defendants' ex parte application, and has incurred additional attorneys' fees bringing Ms. Almanzar's prejudicial misconduct to light. These attorneys' fees currently total $8,130.

Plaintiff respectfully requests the Court issue an order to show cause why Ms. Almanzar should not be ordered to pay Plaintiff his attorneys' fees, and any others incurred in connection with this application, based on findings of bad faith conduct arising out of Defendants' ex parte application to continue the October trial date.

In addition, in order to bring to light the full scope of Ms. Almanzar's misrepresentations to the Court and to Plaintiff, Plaintiff requests that the Court order Ms. Almanzar to appear for deposition forthwith, and order Ms. Almanzar to pay Plaintiff's attorneys' fees and costs incurred in taking such deposition.

**B.   This Court may exercise its inherent power to sanction bad faith conduct by imposing a monetary, non-compensatory sanction on Ms. Almanzar to deter future misconduct.**

In addition to compensatory monetary sanctions, the Court can choose to award non-compensatory monetary sanctions "to vindicate the court's authority and deter future misconduct." *Miller*, 661 F.3d at 1030.

While non-compensatory monetary sanctions may require additional due process protections, they are warranted here given the cynical opportunism and flagrant disregard of the Court's authority. *See Miller*, 661 F.3d at 1030 (non-compensatory sanctions akin to criminal contempt and may be imposed only by following procedures applicable to criminal cases).

Plaintiff therefore requests the Court issue an order to show cause why Ms. Almanzar should not be subject to non-compensatory sanctions under the Court's inherent power to sanction bad faith conduct, in an amount the Court determines is appropriate to deter future misconduct.

### C. The Court may also exercise its inherent power to sanction bad faith conduct by imposing a non-monetary sanction, up to and including terminating sanctions.

In addition to monetary sanctions, this Court has the inherent power to impose a broad range of non-monetary sanctions, such as striking an answer and entering default judgment. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162 (9th Cir. 2012) (affirming order striking answer and entering default judgment); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

Plaintiff submits that an appropriate non-monetary sanction would be an order setting the action for trial, expediting the filing of pretrial documents, and rejecting Defendants' requests to file additional motions in limine that they failed to file by the pretrial deadline when the case was first set for trial last year.

In addition, it would not be beyond the bounds of reason here to consider entering a default, subject to Ms. Almanzar's opportunity to explain herself, because her conduct demonstrates willfulness, fault, or bad faith. *Leon*, 464 F.3d at 958 (citing *Anheuser–Busch v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). Terminating sanctions are available where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" or "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.* (quoting *Anheuser–*

*Busch*, 69 F.3d at 348). Where a party's deceptive conduct makes it "impossible for the Court to believe a word" that party may say at trial, terminating sanctions are available. *See Englebrick v. Worthington Industries, Inc.*, 620 Fed.Appx. 564, 566–567 (9th Cir. 2015).

To determine whether awarding terminating sanctions is just, courts consider five factors: (1) the public's interest in expeditious resolution of litigation, (2) the district court's need to manage its docket, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Leon*, 464 F.3d at 958 n.4; *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004).

Plaintiff recognizes that the Court has the authority to determine whether or not non-monetary sanctions are warranted here, but Defendants' latest gambit is truly beyond the pale. Under any circumstances, Plaintiff respectfully requests that Defendants be allowed no more accommodation that prejudices Plaintiff's right to have his claims tried to a jury, without further delay.

### III.  CONCLUSION

For all the foregoing reasons, Plaintiff requests that the Court reset the trial date currently set for February 1, 2022 to the first available date in early December, 2021, and respectfully requests the Court issue an order to show cause why sanctions should not be imposed on Defendant Belcalis Almanzar of a type and severity that the Court determines to be appropriate under the circumstances.

Dated:  October 6, 2021

**CAPPELLO & NOËL LLP**

By: */s/  Lawrence J. Conlan*
Lawrence J. Conlan

## CERTIFICATE OF SERVICE

I, Lawrence J. Conlan, hereby certify that on October 6, 2021, I electronically filed the following document with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record:

**EX PARTE APPLICATION TO RESET TRIAL DATE AND REQUEST FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT BELCALIS ALMANZAR FOR BAD FAITH CONDUCT**

*/s/ Lawrence J. Conlan*
Lawrence J. Conlan