**Alan G. Dowling**
(California Bar No. 70686)
Email: agdowling@aol.com
**ALAN G. DOWLING,
A PROFESSIONAL CORPORATION**
1043 Pacific Street, No. 1
Santa Monica, California 90405
Telephone: (818) 679-6395
Fax: (424) 238-5366
*Attorney for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MICHAEL BROPHY, JR., an individual, <br><br> Plaintiff, <br><br> v. <br><br> BELCALIS ALMANZAR, aka Cardi B, an individual; KRS GROUP, LLC, a New York limited liability company; WASHPOPPIN, INC., a New York corporation; and DOES 1-20, inclusive, <br><br> Defendants. | **Case No. 8:17-cv-01885-CJC-JPR** <br><br> Hon. Cormac J. Carney <br> U.S. District Judge <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO RESET TRIAL DATE AND REQUEST FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT BELCALIS ALMANZAR FOR BAD FAITH CONDUCT** <br><br> Complaint filed: 10/26/17 <br> Pre-Trial Conf.: 1/18/22 <br> Trial Date:      2/1/22 |

# TABLE OF CONTENTS

|  | Pg. |
|---|---|
| **MEMORANDUM OF POINTS AND AUTHORITIES** | 1 |
| I.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND. | 1 |
| II.  LEGAL ARGUMENT | 5 |
|   A. PLAINTIFF'S ACCUSATION OF MISCONDUCT BY MS. ALMANZAR IS UTTERLY BASELESS AND FALSE. | 6 |
|   B. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR THE RELIEF REQUESTED. | 11 |
|     1. THERE IS NO REASON TO ADVANCE THE TRIAL DATE. | 11 |
|     2. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR COMPENSATORY MONETARY SANCTIONS. | 11 |
|     3. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR "NON-COMPENSATORY MONETARY SANCTIONS." | 13 |
|     4. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR NON-MONETARY SANCTIONS, INCLUDING ENTRY OF DEFAULT. | 14 |
|     5. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR AN EXTRAORDINARY DEPOSITION OF MS. ALMANZAR. | 16 |
| III. CONCLUSION | 16 |


# **TABLE OF AUTHORITIES**

**Pg.**

**CASES**

*Computer Task Grp., Inc. v. Brotby*,
364 F.3d 1112, 1115 (9th Cir. 2004) ..... 14-15

*Englebrick v. Worthington Industries, Inc.*,
620 Fed.Appx. 564, 566–567 (9th Cir. 2015) ..... 14

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S.Ct. 1178, 1187 (2017) ..... 13

*Guillory v. Domtar Indus. Inc.*,
95 F.3d 1320, 1334-1335 (5th Cir. 1996) ..... 12

*Hester v. Vision Airlines, Inc.*,
687 F.3d 1162 (9th Cir. 2012) ..... 14

*Leon v. IDX Sys. Corp.*,
464 F.3d 951, 958 (9th Cir. 2006) ..... 14

*Miller v. City of Los Angeles,*
661 F.3d 1024, 1030 (9th Cir. 2011) ..... 13

*Primus Auto Fin. Servs., Inc. v. Batarse*,
115 F.3d 644, 648-649 (9th Cir. 1997) ..... 12

**COURT RULES**

Federal Rules of Civil Procedure, Rule 37 ..... 14

Federal Rules of Civil Procedure, Rule 37(b)(2) ..... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Belcalis Almanzar, aka Cardi B ("Cardi B"), Washpoppin, Inc. ("Washpoppin") and KSR Group, LLC ("KSR," and collectively with Cardi B and Washpoppin, the "Defendants") respectfully submit the following points and authorities in opposition to Plaintiff's "Ex Parte Application to Reset Trial Date and Request for Order to Show Cause Why Sanctions Should Not Be Imposed Against Defendants Belcalis Almanzar for Bad Faith Conduct."

## I.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND.

On September 8, 2021, the Court issued its Order (Docket No. 140), setting the jury trial in this matter to commence on October 26, 2021, and also scheduling the Pretrial Conference and various related deadlines.

On September 13, 2021, Defendants applied ex parte for a continuance of the trial date and related dates and deadlines. Defendants' motion was supported by a declaration dated September 10, 2021, from Defendant Belcalis Almanzar, as well as a declaration from her physician, Dr. Seth Plancher, M.D. (Docket Nos. 141 et seq.)

In her supporting Declaration, dated September 10, 2021, Ms. Almanzar declared, truthfully, that due to the recent birth of her second child, a son, on September 4, it would not be "appropriate, fair or reasonable" for her to be required to prepare for and attend a week-long trial in this action that has just been scheduled to commence on October 26, 2021; it was important for her to be with her newborn infant, and would be "extremely difficult and burdensome" for her to have to move her family to Los Angeles/Santa Ana for three to four weeks, beginning in early to mid-October, in order to be present for trial preparation and the trial itself. (Declaration of Belcalis Almanzar in Support of Ex Parte

1

Application by Defendants to Continue Trial and Pretrial Conference Dates, and Related Deadlines, Docket No. 141-3, Para. 3.) Ms. Almanzar also expressed concern with the potential risks posed by the current Covid 19 pandemic and associated with long distance travel and having to spend extended periods in public places. (Id.)

Ms. Almanzar's concern with the timing of the pretrial and trial schedule in this case (which had only been set, *sua sponte*, by the Court five days earlier, on September 8) was compounded by the co-existence of another federal trial in Atlanta, GA, previously (and still) set to commence as early as November 9, 2021, literally days after the conclusion of the California trial (requiring Ms. Almanzar's family to be moved from California to Atlanta immediately after the conclusion of the California trial, which would have left her unreasonably limited time to prepare for the Atlanta trial). (Id. at Para. 4.)

Ms. Almanzar's OB-GYN, Dr. Seth Plancher, M.D., explained his concerns from a medical perspective. (Declaration of Dr. Seth Plancher, M.D., in Support of Ex Parte Application by Defendants to Continue Trial and Pretrial Conference Dates, and Related Deadlines, Docket No. 141-4.) Among the things Dr. Plancher noted were a risk of deep vein thrombosis in post-partum mothers, enhanced by long periods of immobility; the impact of lack of sleep on the mother's "cognition, attention span, ability to stay awake and alert, and her moods;" and the desirability of a mother maintaining proximity to her newborn child. (Id. at Paras. 5 and 6). He also expressed a concern with the risk of infection from exposure to strangers in public settings. (Id. at Para. 8.) Dr. Plancher thus recommended against Ms. Almanzar and her children (especially the newborn son) engaging in "extended or stressful travel" or staying "in a strange and temporary environment far away

from home, their physicians and their extended family" during this period, or the newborn child being subjected to the stress of long-distance air travel or the potential for exposure to viral infections, in particular. (Id. at Paras. 8-9.)

On September 15, 2021, the Court issued its Order (Docket No. 143) granting Defendants' ex parte application, re-setting the trial date to February 1, 2022 (with the Pretrial Conference re-set for January 18, 2022, and the related deadlines changed accordingly).

On September 23, 2021, Ms. Almanzar was approached with a proposal from the renowned fashion designer Mugler for her to appear and represent its latest designs at Paris Fashion Week (scheduled for September 28 through October 6, 2021, in France). The opportunity to take part in such an internationally renowned, widely publicized and prestigious event, on behalf of some of the world's greatest fashion designers, was simply too important, from a career standpoint, and too lucrative, to disregard. After confirming that if she went she could make suitable arrangements for the care of her newborn son and her three-year old daughter in New York, in her absence, by her mother and a baby nurse, Ms. Almanzar accepted Mugler's offer on September 24, 2021. (Declaration of Belcalis Almanzar [annexed hereto] ("Almanzar Decl."), Paras. 9, 13-14; Declaration of Kollin Carter [annexed hereto] ("Carter Decl."), Para. 4; Declaration of Ravi K. Shelton [annexed hereto] ("Shelton Decl."), Paras. 8-9.)

Over the next two days, travel plans had to be made for an entourage consisting of Ms. Almanzar, her husband Offset, her manager, her fashion stylist Kollin Carrter and his assistant, her makeup artist, a photographer and a security man. During that same period, Ms. Almanzar's representatives reached out to the famous fashion house Balenciaga, and an additional deal was made for her to also

3

appear in their event and represent their fashions while in Paris.  (Almanzar Decl., Paras. 9-10, 12; Carter Decl., Paras. 4-5; Shelton Decl, Paras. 9-12.)

Ms. Almanzar and her entourage flew to Paris from New York on September 26, 2021.  After her arrival, on September 30-October 1, 2021, arrangements were made for Ms. Almanzar to additionally represent the international diamond jewelry designer Messika during her time in Paris. (Almanzar Decl., Paras. 11-12; Carter Decl., Paras. 6; Shelton Decl, Paras. 11-12.)

In Paris, Ms. Almanzar made several public appearances in major events on behalf of Mugler, Balenciaga and Messika, along with her husband Offset, who is a famed musical performer and celebrity in his own right and represents the work of various fashion designers.  (Almanzar Decl., Para. 15.)

While in Paris, Ms. Almanzar was in contact with her children via FaceTime several times each day.  She and her son had undergone medical examinations before her departure for Paris and were in fine health.  She and her husband were Covid-tested (negative) prior to their flights to and from Paris. (Almanzar Decl., Paras. 13-14.)

Ms. Almanzar, her husband and most of their entourage returned to New York on October 4, 2021.  (Almanzar Decl., Para. 11; Shelton Decl., Para. 13.)  On that same day, Plaintiff's counsel notified Defendants of Plaintiff's intent to file the present ex parte application.  Defendants promptly provided Plaintiff with an explanation of the key facts refuting Plaintiff's inferences and suspicions, but Plaintiff has elected to proceed with this ex parte application nevertheless.

The declarations submitted with this Memorandum expand upon these facts in considerably more detail.

## II. LEGAL ARGUMENT

Plaintiff's ex parte application requests that the Court:

(1) reset the trial date to the early December period requested in Plaintiff's response to Defendants' ex parte application;

(2) order monetary sanctions against Ms. Almanzar, including but not limited to the payment of Plaintiff's attorneys' fees for responding to Defendants' ex parte application and incurred in Plaintiff's present ex parte application;

(3) order that Ms. Almanzar be subjected to a deposition immediately "regarding her travel plans;"

(4) order payment of Plaintiff's counsel's fees and costs (although Plaintiff does not specific which fees, or for what);

(5) order "any and all non-compensatory monetary sanctions" [sic] "sufficient to deter similar bad faith conduct in future" (without specifying what kind, or why there is any basis for future concern);

(6) order "non-monetary sanctions" (of unspecified type, and again with no stated basis for such relief) "up to and including terminating sanctions."

Plaintiff's motion does not appear to be based upon any statute, Federal Rule of Civil Procedure, or Local Rule of this Court. Its only claimed basis is "the inherent power of the Court." The only authorities cited by Plaintiff are quotes from a handful of cases stating the most general and undisputed propositions. The alleged misconduct found to have occurred in those cases is far more egregious than even the unfounded accusation by Plaintiff here.

Plaintiff does not even provide particulars as to the various kinds of sanctions he requests. He does not specify, or provide evidence as to, the amount

5

of any "compensatory monetary sanctions;" he does not specify, or provide evidence from which to determine, any particular amount of so-called "non-compensatory monetary sanctions," or indicate whether they are to be paid to the Court (as opposed to constituting a wrongful award of punitive damages if awarded to Plaintiff); he does not specifically identify the type of "non-monetary sanctions" he wants, except in so far as he suggests the ultimate sanction of entry of a default judgment against Ms. Almanzar (which would not resolve the claims, or avoid trial, against Washpoppin, Inc. or KSR Group, LLC), and he gives no hint of what evidence he would proffer to the Court in a default damages prove-up (since the judgment, in that event, would be determined by the Court, not a jury). And Plaintiff makes no proffer of what evidence he reasonably expects to establish by taking an extraordinary deposition of Ms. Almanzar, which would just be a further digression from the merits of the case. As for Plaintiff's request to advance the trial date, he gives no consideration to the Court's already-packed calendar, or the personal calendars of any of the other attorneys or third-party witnesses involved in this case.

### A. PLAINTIFF'S ACCUSATION OF MISCONDUCT BY MS. ALMANZAR IS UTTERLY BASELESS AND FALSE.

Plaintiff's ex parte application is based entirely on the mere supposition that Ms. Almanzar already intended to take part in Paris Fashion Week (September 28-October 4, 2021) when she submitted her Declaration dated September 10, 2021, but concealed such intention from the Court. Implicitly, Plaintiff claims Ms. Almanzar was insincere when she expressed her concern for the well-being of her newborn son and three-year old daughter, as well as herself, in the event trial were to commence here, as then scheduled, on October 26, 2021.

Plaintiff mischaracterizes Ms. Almanzar's declaration as a fraud on the Court, submitted in bad faith, simply for the purpose of delaying the trial. That supposition and those accusations are utterly false and libelous. (Almanzar Decl., Paras. 2-3.)

Although Plaintiff accuses Ms. Almanzar of "making false statements to the Court" and of "contemptuous actions," he does not quote and cite any specific statement she made under oath that was allegedly false. She certainly did not make such a sweeping statement as the one Plaintiff misattributes to her, that "she [sic] could not travel or be in public places for months." (Almanzar Decl., Paras. 2-4, 6.)

Ms. Almanzar made no false or misleading statements in her Declaration dated September 10, 2021. What she stated was that she did not feel it would be "appropriate, fair or reasonable for [her] to be required to travel from the East Coast to Southern California in mid to late October," to participate in a week-long jury trial beginning on October 26. A trip of such duration would have required her to move her entire family to Southern California for a period of several weeks, and among other things it would be especially inadvisable to subject her very young children, in particular her newborn son, to such a burden and the attendant risks, especially in that particular time frame. (Almanzar Decl., Paras. 3-4.) That remains the case. Ms. Almanzar also emphasized, in her Declaration, the unfair burden that would have resulted from scheduling the trial in this case immediately prior to the commencement of her other federal trial in Atlanta, GA. (Almanzar Decl., Para.54.)

Ms. Almanzar was informed on September 23, 2021, of the lucrative offer from Mugler that she represent their fashions at Paris Fashion Week. This offer

came two weeks after she had signed her Declaration, and more than a week after the Court's September 15 Order granting Defendants' ex parte application and changing the case schedule. (Almanzar Decl., Para. 9; Carter Decl., Para. 4.) The deals for Ms. Almanzar to also represent Balenciaga's fashions and Messika's jewelry were not initiated until September 25 and 30, respectively. (Almanzar Decl., Paras. 10, 12; Carter Decl., Paras. 5-6.)

At the time she signed and submitted her Declaration, Ms. Almanzar had no such travel plans and she had no public events planned, with the sole exception of the other federal jury trial scheduled to commence in Atlanta, GA, in early November, which was discussed at length in her Declaration. The once-in-a-lifetime opportunity to participate in Paris Fashion Week, especially representing world-famous, cutting-edge designers and featuring their creations with all the attendant publicity, was unexpected, but too important to pass up, provided she and her husband Offset could make adequate arrangements, as they did, for the care of their children. Although she and Offset traveled to Paris together for those few days, their children did not travel with them, but were left in New York, in the care of Ms. Almanzar's mother and a baby nurse. (Almanzar Decl., Paras. 13-14; Shelton Decl., Paras. 5-6, 9.)

Plaintiff represented, in the email notice of this application to Defendants' counsel on October 4, 2021, that "Based on our investigation, we believe Ms. Almanzar had firm plans to travel to Paris at the time she swore under oath to Judge Carney that she could not travel." However, despite being asked to come forth with whatever evidence that investigation yielded justifying such a conclusion, Plaintiff has come forward with nothing but a handful of press reports of the Paris event itself.

8

Plaintiff states that "The evidence also suggests that at the time she submitted a sworn declaration stating that it was too much of a burden for her to travel, Ms. Almanzar had plans to travel to Paris and model for different designers for Fashion Week, as she did in 2019." Plaintiff asserts that "It is implausible that Ms. Alamanzar's appearances at Paris Fashion Week, complete with extravagant outfits, publicity, dinners and parties, was not planned at the time she filed in declaration in this Court asking for a continuance." (Plaintiff Memo, p. 8.) Still later, he says it is "a more likely inference" that she knew of the opportunity to travel to Paris" when she submitted her declaration. (Id.) Plaintiff cites no admissible evidence that could possibly serve as a basis for such conclusions. The mere fact that Ms. Almanzar attended similar events in various locales in the past (two years and more ago) is not a basis for assuming that she had these specific plans in place to do so now at the time her Declaration was submitted to the Court on September 10, 2021—she did not. All of Plaintiff's "suggestion," "appearance" and "inference," however, is not evidence, or supported by evidence. Indeed, it is baseless and false. The scurrilous suggestion by Plaintiff that Ms. Almanzar said or did anything perjurious, contumacious, misleading, or designed "to delay, frustrate or otherwise disrupt" the conduct of this litigation is reprehensible and libelous.

Plaintiff apparently cannot fathom how one could "book flights, hotels, dinner reservations, or prepare for fittings" (Id. at p. 8-9), even though he is presumably aware that Ms. Almanzar has a highly-capable and large support group assisting her at all times, including a personal manager, travel agent, and others (who, in this instance, were working in conjunction with the highly-organized professional fashion people on-site in Paris who had asked her to come

9

and feature their fashions). It took them only a few days to make the arrangements. (Almanzar Decl., Paras. 9-11; Shelton Decl., Paras. 9-12.)

Plaintiff's conclusory claim of "prejudice" from a three-month delay in the trial is baseless and vague, especially coming on the heels of a year and a half of pandemic-occasioned delays. To the extent his "prejudice" is said to arise from ongoing earning of profits by the Defendants, he is willfully (even contumaciously) disregarding the Court's order granting Defendants' motion to exclude testimony and evidence from Douglas Bania, Plaintiff's sole designated "expert" on such damages, on the basis that his opinions and calculations were wholly speculative and unfounded (Docket No. 125, 12/4/20, at pp. 12-17)

Plaintiff blatantly mischaracterizes the testimony of Ms. Almanzar in her Declaration of September 10, 2021, as if her primary concern were herself. While she had and has every reason to be cautious about her own health and welfare, having just very recently given birth, her primary concern was with the well-being of, and potential burdens upon her family, and in particular her children, if subjected to long trip to, and a lengthy stay in, a strange place in California, especially with Ms. Almanzar herself having to be away from them for many hours on most days, for weeks on end. She was also legitimately concerned with the prejudicial effect of requiring a mother of a newborn to have to muster the focus and energy to stay awake through and participate in trial preparation and a lengthy trial at the same time she has to care for her newborn. And at least equally important was the factor that she was already scheduled for another trial in Atlanta, GA, that would have followed mere days after the conclusion of this one, leaving her no reasonable or fair time to move her family there, prepare for that trial, and testify and be present throughout it. (Almanzar

10

Decl., Paras. 2-6.)

## B. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR THE RELIEF REQUESTED.

### 1. THERE IS NO REASON TO ADVANCE THE TRIAL DATE.

The Court properly set the matter for trial on February 1, 2022, presumably because that was the soonest available date available (taking into account the necessary additional dates and deadlines that would have to precede it).  There were multiple valid reasons for the Court to continue the trial date from October 26, 2021, and the Court's decision was right and fair, and remains so.  Even assuming the Court had a week available for trial between now and then, advancing the trial date, now, to one between the Thanksgiving and Christmas holidays would serve no purpose other than to arbitrarily create disarray.  It would also interfere with the resumption of the settlement conference, which has just had to be postponed until December 1 due to a calendar conflict on the part of the Magistrate Judge.

### 2. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR COMPENSATORY MONETARY SANCTIONS.

Invoking a vaguely described notion of "the Court's inherent power," Plaintiff asks the Court to order Ms. Almanzar to pay Plaintiff's attorneys' fees incurred in unsuccessfully opposing Defendants' ex parte application to continue the October trial date.  Aside from the utter lack of evidence justifying any such relief, he identifies no statute or court rule justifying that, and no case authority supporting it on facts even remotely comparable to this case.  He does not identify whether such sanctions would be payable to the Court or to Plaintiff (though he

11

implies the latter). He does not state, or set forth evidence of, the amount he is seeking.  The same considerations apply to his suggestion he should be awarded fees incurred in making the present application.

Defendants certainly do not dispute that the Court has inherent power to impose sanctions in appropriate cases.  However, the authorities cited by Plaintiff are not helpful or persuasive.  Each shows fact patterns profoundly more serious than the wrongdoing of which Plaintiff (without basis in fact) accuses Ms. Almanzar here.

In *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648-649 (9th Cir. 1997), the Court noted: "'Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith.' *Roadway Express,* 447 U.S. at 767, 100 S.Ct. at 2465; *see also In re Keegan,* 78 F.3d at 436; *United States v. Stoneberger,* 805 F.2d 1391, 1393 (9th Cir.1986). Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting, as it did in this case. *See Chambers,* 501 U.S. at 47, 111 S.Ct. at 2134 ('[T]he narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders.').″  Id. at 648-649.

In *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1334-1335 (5th Cir. 1996), involving sanctions for entirely different misconduct, the Court stated "We find that the record does not demonstrate that the district court sanctioned Deere for failing to make a serious offer, but rather it imposed the sanctions because Deere concealed its true position that it never intended to settle the case."  Id. at 1334-1335.

12

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1187 (2017) involved an undisputed extended course of discovery misconduct, including the deliberate withholding of crucial evidence of knowledge of product defects. The Court held that "a federal court exercises its inherent authority to sanction bad-faith conduct by ordering a litigant to pay the other side's legal fees, the award is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." Id. at 1182, 1185-1190. Plaintiff makes no such causal connection here.

### 3. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR "NON-COMPENSATORY MONETARY SANCTIONS."

Plaintiff again invokes "the Court's inherent power" to ask for "a monetary, non-compensatory sanction . . to deter future misconduct." The sole case Plaintiff cites is not helpful. *Miller v. City of Los Angeles,* 661 F.3d 1024, 1030 (9th Cir. 2011) recognized that non-compensatory sanctions akin to criminal contempt and may be imposed, but only by following strict procedures applicable to criminal cases. Moreover, the circumstances in *Miller* were so unique and unusual that Chief Judge Kozinski stated, in the opening paragraph of his opinion: "This is a strange case. Its resolution hinges on the absence, as a factual matter, of something we must accept as a legal matter. There are unlikely to be many more like it, so this opinion's precedential value is probably limited. "Id. at 1024. The case involved violation the alleged of an *in limine* order precluding defendants from arguing a certain fact, and an allegedly consequent mistrial. The trial court's order imposing sanctions was reversed and the case remanded for further proceedings consistent with the Ninth Circuit's opinion regarding the procedures that would have to be followed.

13

Certainly, no evidence is offered to establish the imminence of any future misconduct in this case (or identifying what form it would supposedly take); Plaintiff has not even established past misconduct.

### 4. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR NON-MONETARY SANCTIONS, INCLUDING ENTRY OF DEFAULT.

Moving from the merely frivolous to the utterly fantastic, Plaintiff again invokes "the Court's inherent power" asking for an order of "non-monetary sanctions, up to and including terminating sanctions." As before, the cases he cites do not support any such relief here. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162 (9th Cir. 2012) involved discovery sanctions in a class action in which the defendant initially tried to deny the existence of key documents, then was repeatedly ordered to produce them but largely ignored those orders, and ultimately failed to produce everything ordered, in addition to having been warned, at several points, about the possibility of terminating sanctions. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) involved sanctions for willful, bad faith spoliation of key evidence, including numerous computer files. In *Englebrick v. Worthington Industries, Inc.*, 620 Fed.Appx. 564, 566–567 (9th Cir. 2015), a product liability action involving an exploding gas cylinder, the court found that "During discovery, Plaintiffs repeatedly lied under oath about their history of meth usage and when they had last consumed meth before the accident. After four years of litigation, they admitted this perjury while testifying during the second week of trial." Id. at 564. Dismissal of the plaintiffs' claims was ordered under FRCP 37 (not pursuant to the court's "inherent powers"). In *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004),

14

involving a motion for terminating sanctions under FRCP 37(b)(2), Brotby was found to have demonstrated a "consistent, intentional, and prejudicial practice of obstructing discovery," including not obeying repeated court orders and not heeding multiple court warnings, and fabricating evidence, 364 F.3d at 1114-116. Even Plaintiff's own fantastical misinterpretation of Ms. Almanzar's testimony and baseless inferences do not begin to approach those levels of misconduct.

Plaintiff even goes so far as to list five areas of inquiry relative to "terminating sanctions" (see *Computer Task Grp., Inc. v. Brotby*, *supra*, 364 F.3d at 1115), albeit without discussing any of those elements individually, applying them to this case, or citing any evidence pertinent to them. In fact, those factors support Defendants, here: (1) the public has no meaningful interest in a more expeditious resolution of this litigation, which in all events has already been pending for four years; (2) the present situation poses no threat to the Court's management of its already-overburdened docket, (3) there is no demonstrable risk of undue prejudice to the party seeking sanctions (nor has Plaintiff proven any), (4) the public policy favoring disposition of cases on their merits militates against entry of default, if anything, and (5) less drastic sanctions are clearly available (although even those are not merited, here).

Terminating sanctions in the form of entry of default are authorized generally for egregious violations of court orders or rules, and particularly for repeated and willful violations of discovery or pretrial conference orders. The misconduct of which Ms. Almanzar is accused by Plaintiff (aside from the fact that the accusation is false) had nothing to do with the nondisclosure of evidence relevant to the merits of this case, nor is there evidence of any previous chronic, pervasive or pernicious misconduct by her in this case.

15

### 5. PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR AN EXTRAORDINARY DEPOSITION OF MS. ALMANZAR.

Plaintiff asks for an order that he be allowed to harass and impose further expense upon Ms. Almanzar with a deposition concerning the planning of her brief Paris trip.  He provides no evidence to justify such an extraordinary remedy, no proffer of what evidence he reasonably expects to adduce (and what other existing evidence supports that expectation), and his request comes many months after all other discovery in this action was concluded.  It would be no more than another digression from the adjudication of the merits of this case and a fishing expedition months after discovery in this case was formally closed.

### III. CONCLUSION

As has unfortunately become typical in this case, Plaintiff's present contentions are entirely speculative, conclusory, substitute attorney rhetoric and innuendo for probative evidence, and are contrary to the facts.  For all the foregoing reasons, Defendants request that the Court deny Plaintiff's ex parte application in all respects.

Dated: October 8, 2021	ALAN G. DOWLING,
	A PROFESSIONAL CORPORATION

	By:   /s/ Alan G. Dowling
	      Alan G. Dowling
	      Attorney for Defendants

# CERTIFICATE OF SERVICE

I, Alan G. Dowling, hereby certify that on October 8, 2021, I electronically filed the following document with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record:

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO RESET TRIAL DATE AND REQUEST FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT BELCALIS ALMANZAR FOR BAD FAITH CONDUCT**

        /s/  Alan G. Dowling
        Alan G. Dowling