| | |
|---|---|
| 1 | **Alan G. Dowling** |
| 2 | (California Bar No. 70686) |
|   | Email: agdowling@aol.com |
| 3 | **ALAN G. DOWLING,** |
| 4 | **A PROFESSIONAL CORPORATION** |
|   | 1043 Pacific Street, No. 1 |
| 5 | Santa Monica, California 90405 |
| 6 | Telephone: (818) 679-6395 |
|   | Fax: (424) 238-5366 |
| 7 | *Attorney for Defendants* |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KEVIN MICHAEL BROPHY, JR., an individual, | ) | **Case No. 8:17-cv-01885-CJC-JPR** |
| | ) | |
| Plaintiff, | ) | Hon. Cormac J. Carney |
| | ) | U.S. District Judge |
| v. | ) | |
| | ) | **DECLARATION OF BELCALIS ALMANZAR IN OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO RESET TRIAL DATE AND REQUEST FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT BELCALIS ALMANZAR FOR BAD FAITH CONDUCT** |
| BELCALIS ALMANZAR, aka Cardi B, an individual; KRS GROUP, LLC, a New York limited liability company; WASHPOPPIN, INC., a New York corporation; and DOES 1-20, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | Complaint filed: 10/26/17 |
|  |  | Pre-Trial Conf.: 1/18//22 |
|  |  | Trial Date:         2/1/22 |

1

I, Belcalis Almazar, declare:

1. I am a Defendant in this action. I submit this Declaration in opposition to Plaintiff Kevin Michael Brophy, Jr.'s "Ex Parte Application to Reset Trial Date and Request for Order to Show Cause Why Sanctions Should Not Be Imposed Against Defendant Belcalis Almanzar for Bad Faith Conduct." I know all matters of fact set forth herein to be true of my own personal knowledge, except those stated upon information and belief, and I believe those to be true. If called as a witness, I could and would testify competently hereto.

2. I have been accused by Plaintiff of having misled the Court in my Declaration of September 10, 2021. This accusation appears to be based solely on the fact that my husband Offset and I took part in the Paris Fashion Week events between September 26 and October 4 of this year. Among other things, we were the subject of a great deal of attention and worldwide publicity on the Internet and in all traditional forms of media. Plaintiff seems to assume that, due to the prominence of the event and the nature and timing of our appearance there, I "must have known" on September 10, 2021, that I would be traveling there and making such a public appearance, but that is false. The accusation or inference that I deliberately misled the Court in order to put off the trial in this matter is libelous.

3. Plaintiff suggests that I told the Court I "could not travel or making public appearances" at all for at least the next couple of months. I never made that statement. While there are always legitimate concerns about complications a mother can develop in the weeks and months after giving birth, I had, and have had, none of those complications yet (thank God). And while there are pandemic-related risks involved in any form of travel, public appearance or gathering in a group setting, I have taken precautions such as having several Covid-tests and wearing masks, in order to minimize any such risks. Plaintiff's

mischaracterization of my testimony treats it as if my primary concern was my own health, but that was not and is not the case.

4. The main concern I expressed in my Declaration, regarding travel, separations from my children, and being in public, had to do with the fact that, in order to come to Southern California for a trial in this case starting October 26, 2021, I would have had to move my entire family here a couple of weeks beforehand. In terms of travelling, my greatest concern was the welfare and health of my newborn son, and I absolutely agreed with my doctor's strong advice that my son not be subjected travel at such a young age, in this time frame. That is why, when my husband and I made the brief trip to Paris, we were only able to do so because I could leave my son and daughter, for those few days, in New York the care of my mother and a baby nurse, and in close proximity to the pediatricians if the need arose. I could not do that for an extended trip to California during October. That extent and duration of travel was and remains inadvisable with regard to my newborn son in particular, but would also be risky for my three-year old daughter. A trial date in October would have required us being in Southern California for up to three weeks or more. The children would have had to be looked after here in California, away from me for extended periods while I would be gone for trial preparation meetings, traveling to and from court, and in the courtroom all day every day during the trial. I was also concerned I would be distracted and exhausted prior to and during the trial, not only from the travel and trying to juggle family needs and trial at the same time, but from lack of sleep due to my newborn's schedule and demands.

5. I also emphasized, in my Declaration that I was already scheduled for a two to three day federal jury trial in Atlanta, GA, set to commence on November 9, 2021 (though it could possibly trail a few days before starting). I am the Plaintiff in that case, and will therefore also need to be available in Atlanta

for trial preparation the week before that trial. Offset and I have not yet decided whether to move our entire family from New York to our home in Atlanta for that, or whether that trial will be short enough that it makes more sense to keep the kids in New York and have me go to Atlanta briefly. Again, we will not risk the health of the children, but the time demands associated with that trial are far less than those for this case. Moreover, had the California case not been continued, it is highly likely I would have had only a few days between the two trials, which would have been unfairly stressful, exhausting and would have interfered with my ability to focus on and prepare for the Atlanta trial, aside from the tremendous burden on my family, having had to travel first to California.

6. In short, when I signed and submitted to the Court my Declaration dated September 10, 2021, I had no plans in place (other than requirement that I be in Atlanta to prepare and testify) to travel or make any live appearances at public events through the end of November, but my concerns expressed in this case went far beyond just my own travel and public exposure. I had been informed in late August that the high fashion designer Mugler had asked my long-time fashion stylist, Kollin Carter, if I would be attending this year's Paris Fashion Week. At that time, I was in the last couple of weeks of my pregnancy, and had intention of doing so.

7. I gave birth to my son on September 4, 2021. Within days thereafter, I learned that the Court had re-set the trial in this case to begin on October 26. Defendants therefore filed an ex parte application seeking to have that date postponed slightly, for a number of reasons set forth in my Declaration dated September 10, 2021.

8. On September 15, the Court granted our application and ordered the trial continued to February 1, 2022.

9. I am informed and believe that around September 22, Kollin Carter,

my fashion stylist since 2017, was contacted by the fashion designers Mugler to asking once again if I would be willing to attend the Paris Fashion Show and appear in and represent their designs there. The Paris Fashion Show is one of the most important and prestigious annual events in international high fashion. I am further informed and believe that Mr. Carter conveyed Mugler's proposal first to my manager, Ravi Shelton. I was informed by Mr. Shelton of Mugler's proposal on September 23, 2021, thought it over, and agreed on September 24, 2021, to participate in the event for Mugler. The entire trip was arranged, and a group of people to accompany me was gathered for the trip, over the next two days. My travel was booked on September 24 and 25 by my manager, Mr. Shelton, through a New York travel agent. Our travel party included me, my husband Offset, my fashion stylist Kollin Carter and his assistant Aaron Christman, tailor Matthew Reisman, hair stylist Sheena Adae, makeup artist Erika Roman, photographer Tomas Harold, my manager Ravi Shelton, and Eric Hernandaz providing security.

10. On September 25, knowing that I was going to be in Paris, we reached out also to the couturier Balenciaga, and a deal was reached for me to appear in their designs, as well, at Fashion Week.

11. We traveled between New York and Paris via Air France, and we had private car service at our disposal in Paris. The flight to Paris was on September 26, 2021; the return flight from Paris was on October 4, 2021. We all stayed at the Park Hyatt Vendome in Paris.

12. Once we were already in Paris, on September 30, 2021, contact was initiated with Messika, the international diamond jewelry designer and seller, and a deal was struck with them the following day for me to appear on their behalf as well, at Fashion Week.

13. Before leaving for Paris, I saw my doctor for a routine check-up, and confirmed that I was doing fine recovering from the recent birth of our son, and

had no apparent signs of any complications. My husband and I received Covid-19 tests, with negative results, on September 26 (prior to the trip) and again on October 2, 2021 (prior to our return). No quarantining was required either in Paris or on our return to New York.

14. This was the only trip I have taken since the birth of our son on September 4, 2021. I was of course very concerned with, and made thorough arrangements for, the well-being and care of our children in our absence. During our absence, our three-year old daughter and our newborn son stayed with my mother and a baby nurse for our son, in New York. Both children were and remain in perfect health. (Our newborn son had just been to the doctor for a routine post-natal examination on September 16 or 17, 2021.) All contact information for the children's doctors and hospitals was left with my mother and the baby nurse, and a driver was kept on stand-by for any needs of either child. During the trip, I talked to our children, via FaceTime, daily. I spoke with our daughter each morning, afternoon and evening, and the baby nurse would contact me via FaceTime in the afternoon whenever our son was up so I could see and speak to him.

15. The entirety of Paris Fashion Week ran from Tuesday, September 28, 2021, through Wednesday, October 6, 2021. Offset and I were not there for the entire Fashion Week. The Parish Fashion Week events were undeniably fantastic and glamorous, the entire week star-studded, the accommodations top-class, and the fashions themselves were dazzling and memorable. I have had the good fortune to become identified almost as much for fashion as for my music, and the opportunity to be part of the "inner circle" of the elite of the fashion world, representing some of the most famous designers' work, was a rare opportunity, and important for my career, especially given my absence from live performance over most of the last two years due to the pandemic, and the fact that I have been

Brophy v. Almanzar, et al                    DECL OF BELCALIS ALMANZAR
                                              IN OPPOS TO PLTF EX PARTE APPLIC

working on a new, upcoming album. However, this was not just a pleasure trip or vacation, it was a working trip – the travel was arduous, the schedule in Paris was hectic, we had to coordinate with multiple organizations, there were literally hours spent in applying makeup and being clothed in the designers' creations for public display, and displaying the works to the public, spectators and the world press, and Offset and I both had to be "on" and in the public spotlight much of the time, not to mention being subjected to the paparazzi. It was a major challenge, but one we felt was worth the effort.

      16.    I fully understand that our going to Paris for such a major event could lead someone to assume it all "must have been" a long time in the planning, and well-known far in advance, but it was not that at all. My Declaration of September 10, 2021, was entirely truthful, I concealed nothing, and the opportunity to go to Paris did not even first come to my attention until a couple of weeks later. That opportunity was so important and compelling to my career that I could not reasonably turn it down, provided of course that we were able to make adequate provision for the care of our children for the few days my husband and I would be gone. We were able to do so, thanks to my mother, the baby nurse and others, and so we opted to take advantage of this incredible opportunity.

      Executed at New York, NY, on October 8, 2021.

      I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct.

*Belcalis Marlenis Almánzar p/k/a "Cardi B"*
BELCALIS ALMANZAR

7

# CERTIFICATE OF SERVICE

I, Alan G. Dowling, hereby certify that on October 8, 2021, I electronically filed the following document with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record:

**DECLARATION OF BELCALIS ALMANZAR IN OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO RESET TRIAL DATE AND REQUEST FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT BELCALIS ALMANZAR FOR BAD FAITH CONDUCT**

                        /s/ Alan G. Dowling
                        Alan G. Dowling

1

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR