**Alan G. Dowling**
(California Bar No. 70686)
Email:  agdowling@aol.com
**ALAN G. DOWLING,**
**A PROFESSIONAL CORPORATION**
1043 Pacific Street, No. 1
Santa Monica, California 90405
Telephone: (818) 679-6395
Fax: (424) 238-5366
*Attorney for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kevin Michael Brophy, Jr.,** an individual, <br><br> Plaintiff, <br><br> vs. <br><br> **Belcalis Almanzar**, aka Cardi B, an individual; **KSR Group, LLC,** a New York limited liability company; **Washpoppin, Inc.,** a New York corporation; and DOES 1-20, inclusive, <br><br> Defendants. | Case No. **8:17-cv-01885-CJC-JPR** <br><br> Hon. Cormac J. Carney, U.S. Dist. Judge <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* NO. 3** <br><br> Hearing Date: January 18, 2022 <br> Time:           3:00 p.m. <br> Location:      Ctrm 9B, US Cthse <br>                   411 W. Fourth St. <br>                   Santa Ana, CA 92701 <br> Complaint filed: 10/26/17 <br> Pre-Trial Conf.: 1/18/22 <br> Trial Date:      2/1/22 |

1

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

# <u>TABLE OF CONTENTS</u>

Pg.

I.     ARGUMENT     2

    A. PLAINTIFF LITERALLY CANNOT BE
      "READILY IDENTIFIED" IN THE MIXTAPE PHOTO.     2

    B. THERE IS AND CAN BE NO EVIDENCE OF ANY
      "KNOWING" USE OF PLAINTIFF'S "LIKENESS"
      BY DEFENDANTS.     8

    C. THE EVIDENCE PROFFERED IN PLAINTIFF'S
      OPPOSITION IS NOT PROBATIVE OR SUFFICIENT
      TO OVERCOME THIS MOTION.     14

    D. DEFENDANTS' MOTION IS NOT PROCEDURALLY
      IMPROPER OR MISLEADING.     17

II.     CONCLUSION     18

# <u>TABLE OF AUTHORITIES</u>

Pg.

## <u>STATUTES</u>
15 U.S.C. § 1125(a) (Lanham Act Sec. 43(a))  13

Cal. Civ. Code 3344  17

Cal. Civ. Code 3344(b)  5


## <u>COURT RULES</u>
F.R. Evid. 403  6,18

FRCP 37(b)(2)(B), (c)(1)  7


## <u>CASES</u>
*Blue v. Johnson,*
No. C 07-05370 SI, 2008 WL 2024995 (N.D.Cal. May 9, 2008)  10 n.2

*Christoff v. Nestle USA, Inc.,*
62 Cal. Rptr. 3d 122 (Ct. App. 2007)  10-11

*City of Pomona v. SQM North America Corp.*
866 F.3d 1060 (9th Cir. 2017)  17

*Del Amo v. Baccash,*
No. CV 07-663 PSG (JWJx), 2008 WL 2780978
(C.D.Cal. Jul. 15, 2008)  11

*Evergreen Safety Council v. RSA Network Inc.,*
697 F.3d 1221, 1228 (9th Cir. 2012)  10

*Flynt v. Flynt Media Corporation,*
No. CV 09-00489 AHM (RZx), 2009 WL 10673154
(C.D.Cal. Sept. 23, 2009)  13

*In re Japanese Electronic Products Antitrust Litig.,*  723 F.2d 238
(3rd Cir. 1983), rev'd on other grounds by *Matsushita Elec. Indus.*
*Co. Ltd. v. Zenith Radio Corp.* 475 U.S. 574 (1986)                    17

*Mercado v. City of Orlando,*
407 F.3d 1152 (11th Cir. 2005)                                          6,18

*Newcombe v. Adolf Coors Co.,*
157 F.3d 686 (9th Cir. 1998)                                            12

*Residential Funding Corp. v. Degeorge Fin'l Corp.,*
306 F.3d 99 (2nd Cir. 2002)                                             7-8,18

*Unigard Security Ins. Co. v. Lakewood Eng.* & Mfg. Corp.
982 F.2d 363 (9th Cir. 1992)                                            8,18

*Wendt v. Host Int'l, Inc.,*
125 F.3d 806 (9th Cir. 1997)                                            13

*Yeager v. AT&T Mobility, LLC,*
No. CIV S-07-2517 KHM GGH, 2012 WL 3778926
(C.D. Cal. Aug. 31, 2012)                                               12

Defendants Belcalis Almanzar, aka Cardi B ("Cardi B"), Washpoppin, Inc. ("Washpoppin") and KSR Group, LLC ("KSR") (collectively, the "Defendants") respectfully submit this reply memorandum of points and authorities in support of their Motion *in Limine* # 3.

## I.   ARGUMENT

### A. PLAINTIFF LITERALLY CANNOT BE "READILY IDENTIFIED" IN THE MIXTAPE PHOTO.

Defendants deny that they "knowingly" used any "likeness" that was "readily identifiable" as Plaintiff. The tattoo design in question was a line-drawing of animals and flowers created by third-party Tim Hendricks, not a depiction of Plaintiff himself. Only a portion of those parts of a photo displaying Hendricks' line-drawing design were used (by a third-party graphic designer of the mixtape artwork).

It is important to distinguish between the tattoo *design*, the *photo* of that design that was allegedly photoshopped, and Plaintiff himself. Plaintiff has no proprietary interest in the content of the tattoo design—he does not own the design, he cannot himself control or limit its use, and he does not possess copyright in it (including the rights to reproduce it, publish it or create derivative works based on it).

The design was created by Tim Hendricks; if anyone is its owner, it is he. Likewise, Plaintiff does not have any proprietary interest in the snapshot of him displaying the tattoo design as seen from behind—he does not own that photograph, he cannot himself control or limit the use of that photograph, and indeed Mr. Hendricks registered a claim of copyright in the photograph, solely in his own name, in January 2019.

As far as the design itself is concerned, there is no evidence of any

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

agreement between Mr. Hendricks and Plaintiff, prohibiting Mr. Hendricks or anyone else from duplicating it on any (or even numerous) other individuals, or in other artistic media, or from publishing pictures of the design. Indeed, it has been a practice and tradition in tattooing over many centuries – so common as to be subject to judicial notice—that tattoo designs have been copied, adapted or imitated innumerable times on innumerable individuals.

Plaintiff asserts it is "him" in the picture with Cardi B, and that his "likeness" and "identity" are used in that photo. But he also asserts that it was NOT, in fact, him posing in the picture. He had never met Cardi B or been in her presence before filing this action. The man posing with Cardi B in the mixtape photo was a third-party, a young Black male model named TheSixat6, who has a full head of hair, on which Cardi B's hand is resting in the photo. In stark contrast, Plaintiff is a middle-aged Caucasian male with a shaved head. The man in the picture is manifestly not Plaintiff, to anyone familiar with Plaintiff.

Defendants were utterly unaware of Plaintiff or anything about him before he sued them in October 2017, a year and a half after the mixtape was released. They were certainly not attempting to co-opt "him" for use in the mixtape photo, or for any commercial purpose. They were not using a tattoo design to imitate or create a "likeness" of Plaintiff. Neither were they trading on his "reputation" (whatever that may have been) or "commercial value," since they had no awareness of any such reputation and there is no evidence that Plaintiff's name, image or likeness had any commercial value (or history of having been exploited commercially) at all.

In short, the tattoo design finally used in the mixtape photo may have been a less distracting or silly-looking adornment on the male model than his actual cartoon tattoo that it replaced, but that had to do with the design itself, and had nothing to do with Plaintiff. And since the man in the picture with Cardi B is

3

ALAN G.
DOWLING, A.
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

TheSixat6, manifestly and admittedly <u>not</u> Plaintiff, and the tattoo design itself is not even identical (but missing important features), <u>it cannot be said that the male figure in the picture is "readily identifiable" as Plaintiff, since it is not him at all</u>.

The tattoo design depicted on the man posing with Cardi B is not identical to that sported by Plaintiff (nor to the image in the snapshot taken by Mr. Hendricks). One of the most prominent features of Plaintiff's tattoo, immediately visible to anyone viewing Plaintiff from behind, is the cliched phrase "Born to Lose" that is prominently featured across Plaintiff's neck in large letters, surrounded by additional flowers. No such imagery appears on the neck of the male model posing with Cardi B. Additionally, a considerable portion of the tattoo appearing on Plaintiff's upper left triceps does not appear at all on the tattoo on the male model's arm. The photo taken of Plaintiff by Mr. Hendricks, in color, is of Plaintiff standing upright in a well-lighted room. The tattoo image in the photo with Cardi B is leaned forward to match the posture of the male model kneeling before her; it has been altered, cropped, re-colored, shadowed and tinted to match the tonality of the existing mixtape photo, and only shows at most perhaps a third of the entire back tattoo design and only a small portion of the triceps tattoo design.

Even if the graphic designer, Mr. Gooden, had used a "likeness" of Plaintiff that was "readily identifiable" as Plaintiff in the context in which it was used, Defendants deny that they made any "knowing" use of Plaintiff's name, photo or likeness. Mr. Gooden was an independent contractor hired by KSR Group, LLC to fashion a digital image resembling a traditional "album cover" using a photo supplied to him by KSR. After he had done so, KSR simply asked him if he could replace the cartoon tattoo on the back of the man posing with Cardi B, because KSR found it distracting. Defendants had no idea what Mr. Gooden had done in making that change, how he had gone about it, or whether he used any source materials or created the design himself, much less whether the design was featured

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

4

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

on any actual living person.  To all appearances, Mr. Gooden could have created and drawn the design himself, or copied it from a book of drawings. He never discussed what he did with any of the Defendants before this lawsuit was filed; and they were never on notice that anyone's permission might be required, or if so, whose. Indeed, Mr. Gooden himself did not know, and had no means of learning (through reasonable "due diligence"), who it was in the photo he had cropped and altered; and neither he nor any of the Defendants had ever heard of Plaintiff, or anything about him, before this lawsuit.  The photo was selected, not because it was Plaintiff (or because of anything about Plaintiff, or because he was perceived as having any economic or commercial value), but solely because the line-drawn design it depicted was preferable to that which TheSixat6 has on his back.  In short, none of the Defendants knowingly made any use of anything whatsoever knowing that it had anything to do with Plaintiff.  (See Defendants' initial memorandum of points and authorities in support of this motion, Dkt No. 129-1, at pp.7-8 and evidence cited thereat.)

The mere fact that an image contains an element (a tattoo design) that bears some resemblance to a drawn design associated with a living person does not make that element a "likeness" *of that living person*, and the fact the design is obtained from a photograph of it posted online does not make *that person* "readily identifiable."

To constitute a plaintiff's "photograph" or "likeness" for purposes of common law and statutory claims of commercial misappropriation, the person depicted must be "readily identifiable" as the plaintiff himself.  Cal. Civ. Code § 3344(b) states, in pertinent part: "As used in this section, 'photograph' means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, *such that the person is readily identifiable.* (1) A person shall be deemed to be *readily identifiable* from a photograph when

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

*one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the **same person** who is complaining of its unauthorized use.*" (Emphases added.)

Here, by Plaintiff's own admission, it is not Plaintiff kneeling in front of Cardi B in the mixtape artwork, but a third-party male model named TheSixat6. And the tattoo design appearing on that other man's back in the mixtape photo, even if similar in various respects to that on Plaintiff's back, is not identical in its entirety, and indeed significant portions of Plaintiff's tattoo design are not present. Plaintiff thus cannot be "readily identified" as present in a photo in which he was not, in fact, present, and therefore also cannot claim it is his "likeness" in the mixtape photo. Plaintiff and his wife, and perhaps even some other people, might discern some similarity between the tattoo design on the man posing with Cardi B and the tattoo design on Plaintiff, especially after giving it only a cursory glance, but they cannot do the impossible: they cannot "readily identify" Plaintiff himself as actually being in that picture.

Any evidence intended by Plaintiff to establish that anyone ever thought (mistakenly, after a cursory glance at it) that the man in the Cardi B mixtape photo might be Plaintiff cannot support such a conclusion and is therefore irrelevant and should be precluded to avoid confusing or misleading the jury and prejudicing Defendants. Fed. R. Evid. 403. The scant evidence produced by Plaintiff, to that effect, in discovery (and included in Plaintiff's Opposition to this motion) is inadmissible hearsay, consisting of alleged comments by third parties. A motion *in limine* may also be used to prevent a party from introducing hearsay evidence. *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005), or to prevent them from introducing testimony or exhibits without authentication of documents or proof of necessary foundational facts.

Moreover, Plaintiff has never identified, in discovery responses and

6

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

disclosures or as designated trial witnesses, the actual names or contact information of any person who allegedly expressed such an erroneous notion. (Mr. Hendricks simply reported to Plaintiff, apparently on March 9, 2016, that an unnamed third-party had asked Mr. Hendricks if that was Mr. Hendricks' work depicted in the photo in the mixtape photo. *See* Dowling Decl. 12/20/21, Exh 1— Hendricks' deposition transcript at pp. 75-76, and Exh 2 – first message, sent to Plaintiff from "Timmy," *i.e.*, Hendricks.) No third party will appear at trial who conveyed any such messages either to Mr. Hendricks or to Plaintiff. In discovery, Plaintiff produced a handful of innocuous, ambiguous and confusingly arranged, cut-and-pasted pieces of what appear to have been printouts of electronically transmitted messages to him. (*See* Dowling Decl. 12/20/21, Exhs 2 and 3 – messages allegedly electronically received by Plaintiff and Plaintiff's testimony regarding the same, all but Hendricks' apparently coming after the TMZ media coverage of the filing of this lawsuit.) However, despite discovery demands, Plaintiff never produced the entirety of all the messages exchanged with those individuals on the same topic (the Cardi B album cover), nor did either he or Mr. Hendricks produce the electronic devices (smartphones or computers) they were sent on, for forensic examination. Those devices and their contents appear to have been deleted or lost by Plaintiff and Mr. Hendricks. Plaintiff's conduct has made it impossible for Defendants to obtain full and adequate discovery and fully investigate such messages, the people behind them, or their thinking.

A motion *in limine* may be used to prevent reference to evidence barred by discovery rules or discovery orders in the case; for example, reports and writings a party failed to produce in discovery or disclosures. Fed. R. Civ. P. 37(b)(2)(B), (c)(1). Even without a prior discovery order (required under Rule 37), for failure to produce evidence a court may act under its "inherent powers" to manage its affairs. *See Residential Funding Corp. v. Degeorge Fin'l Corp.*, 306 F.3d 99, 106-

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE #3*

107 (2nd Cir. 2002); *Unigard Security Ins. Co. v. Lakewood Eng.* & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992)—sanctions for suppression of evidence.

In short, there are no trial witnesses named capable of providing admissible evidence on this issue. Plaintiff and his wife and Mr. Hendricks can only testify to inadmissible hearsay, and no admissible non-hearsay documentary exhibits have been produced, to support Plaintiff's (and his wife's) assertions that "numerous" inquiries were made by third parties about whether it was Plaintiff in the Cardi B mixtape photo, nor can it be ascertained what was actually thought or intended by those third-parties. What we do know is in each instance when anyone (including his wife) said something to Plaintiff that he interpreted as an inquiry about whether he was the person posing the mixtape photo, they accepted his denial.

## B. THERE IS AND CAN BE NO EVIDENCE OF ANY "KNOWING" USE OF PLAINTIFF'S "LIKENESS" BY DEFENDANTS.

Lacking any evidence that any of the Defendants "knowingly" used any photograph or likeness of Plaintiff before the filing of this action, Plaintiff suggests that Defendants "knew" of Plaintiff and his claims once this lawsuit was filed, cease-and-desist letters were sent, and the GBMV1 mixtape—already then in release for a year and a half—continued to be offered by third-parties for streaming and sale. This argument holds no water.

Under the circumstances, it is no surprise that Defendants did not cease using the mixtape artwork after Plaintiff sent his cease-and-desist letters in October 2017. Defendants had no idea what Plaintiff's claims were about, or who Plaintiff was. They had not consciously done anything wrong and were not aware of anything indicating that Mr. Gooden had done anything wrong. They had no knowledge that Mr. Gooden had used a photograph of an actual person in any way; to all appearances he could have drawn the replacement tattoo image himself or copied it from a drawing in a book. Equally importantly, they genuinely believed,

8

and still believe, that Mr. Gooden's use of the design was a lawful use protected by the First Amendment and had nothing to do with anyone trying to capitalize on Plaintiff or anything about him.

Plaintiff says he first learned of the GBMV1 mixtape and its artwork in late February or early March 2017, although it appears Hendricks had sent him a text message informing him of it on March 9, 2016, the day the mixtape was released. *See* Dowling Decl., 12/20/21, Exhs 2 and 3. Either way, Plaintiff did nothing about it until this lawsuit was filed on October 26, 2017. On that same date, Plaintiff's counsel mailed "cease and desist" letters to Defendants (and to Atlantic Recording Corporation, of whose involvement counsel and Plaintiff obviously already knew). However, thirteen months before that date, on September 26, 2016, KSR Group LLC had sold all rights, title and interest in the GBMV1 mixtape and its artwork to Atlantic Recording Corporation.(For whatever reason, Plaintiff never sued Atlantic Recording Corporation, and never sought either a temporary restraining order or preliminary injunction in the more than four years this action has now been pending.)

Until at least the end of October 2017, Defendants had no knowledge of Plaintiff's existence. When he sent his cease-and-desist letters and, eventually, served his lawsuit, Defendants no longer owned or controlled the GBMV1 mixtape or its artwork—it was not within their legal power to do anything about it (nor, therefore, did they have any legal obligation to do so). Once sued, they learned Plaintiff was making heinous accusations against them, and claiming an entitlement to millions of dollars in damages, for something they knew nothing about and had no part in; more than that, he was accusing them of having acted willfully and maliciously against him; and they knew his allegations and claims to be baseless. Even once they finally learned (months after the lawsuit began) from the graphic designer, Timm Gooden, what he had done in order to complete the

9

mixtape artwork, they had no reason to believe any wrongdoing had occurred, as Mr. Gooden had only used a portion of an image of a tattoo design found in a photo online, with no attribution or identifying information, in creating an entirely different expressive artwork all about Cardi B and her image as a strong, bold, sexy woman, in which the tattoo design was merely an incidental feature or adornment.[1]

The fact that the Defendants acquired knowledge of Plaintiff's existence, or his claims, after this action was filed in October 2017 does not establish that the Defendants (or any of them) were knowingly using Plaintiff's photo or likeness thereafter. *See, e.g., Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) (holding that continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness, so long as one believes reasonably, and in good faith, that he or she is not infringing).[2]

Plaintiff's reference to dicta from *Christoff v. Nestle USA, Inc.*, 62 Cal. Rptr. 3d 122 (Ct. App. 2007) about a defendant failing to investigate is factually

---

[1] Cardi B's expression in the mixtape photo of female power, control and dominance (not to mention beauty, glamour and a "hip" lifestyle) does not derive from the presence of a tattoo design, in the shadows on the male model's back.  Rather, it derives from her pre-existing reputation among her fans, and from her visual dominance as the centerpiece of the picture itself (only her face is visible), with her facial expression, her makeup and hairstyle, her costume, the way she holds the beer in one hand and the man's hair in the other, her posture, and the fact that the man is anonymous and faceless, kneeling before her, head bowed, submissive and subservient, with his back to the camera.  The purpose of the tattoo substitution was to avoid the distraction and unattractiveness of the model's original tattoo.

[2] *Blue v. Johnson*, No. C 07-05370 SI, 2008 WL 2024995 (N.D. Cal. May 9, 2008) involved a trademark infringement claim brought by a well-known author against an adult film actress who has acted under the same name, and the court was considering a request for preliminary injunction.  The case did not involve a claim for unauthorized use of a faceless "likeness" or photograph, just an identical name.  The court was persuaded that the defendant "knew" of Plaintiff's name, rights and claim, by virtue of correspondence between them, but continued to use the name. (Here, in contrast, Defendants no longer owned and were no longer involved in using the mixtape artwork when they first learned of Plaintiff's claims after October 2017.  Also, the court in *Blue*, paid no attention to the factor of reasonable, good faith belief in non-infringement that was recognized as important four years later by the court in *Evergreen Safety Council, supra.*)

10

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

inapposite.   Christoff was a professional model who had posed for a photo to be used by Nestle Canada.  His contract provided he would be informed of any use of the photo on a product label and would be paid a sum to be negotiated.  Eleven years later, Nestle Canada's affiliate, Nestle USA, decided to use the photo on a product label.  Amanda Steele, an employee of Nestle USA, said she believed that she had authority to use Christoff's image because she knew it had been widely used by Nestle in Canada. Steele never investigated the scope of the consent and never asked Christoff if he consented to the use of his image, believing that, in talking to her colleague at Nestle Canada, Nestle already had usage rights for the photo. *Id.* at 126-127.  Steele clearly had an awareness of the source of the picture and that it was Christoff and had the misimpression that the use was permitted under Nestle's contract with Christoff.  That is vastly more knowledge than any of the Defendants had here, and a wholly different scenario.   The failure to investigate in the face of such a long history with Christoff, ready accessibility of intra-corporate records, and knowledge of the facts is in stark contrast to this case. Moreover, as an employee, Steele's actions and knowledge were imputed to Nestle, whereas there is no employee or basis for vicarious liability here.

Equally unavailing is Plaintiff's citation to *Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 2780978 (C.D. Cal. Jul. 15, 2008).  In *Del Amo*, the plaintiff alleged that the defendants misappropriated his fourteen copyrighted photographs of adult entertainers and used those photographs on Defendants' website to promote Defendants' on-line adult video rental business.  The dicta cited by Plaintiff appears to reflect a hypothetical possible defense, not one actually raised by the defendants in that case.  However, the Court did not hesitate to reject Del Amo's attempt to collect profits, for lack of evidence of causation:

"Following *Mackie* and *PolarBear Productions,* Del Amo has failed to establish the required nexus between Defendants' infringing activities and

11

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

their indirect profits. Del Amo has submitted no expert testimony that helps prove that Defendants' display of Del Amo's photographs resulted in increased membership revenues. Instead, Del Amo merely provided argument that Defendants' display of Del Amo's photographs must have resulted in increased membership fees. ... Del Amo never provided evidence that connected Defendants' display of the infringed photographs, among many other photographs displayed, to Defendants' membership fees profits. Failing the standard from *PolarBear Productions*, Del Amo did not "formulate the initial evidence of gross revenue duly apportioned to relate to the infringement" and merely "toss[ed] up an undifferentiated gross revenue number." *PolarBear Productions*, 384 F.3d at 711." 2008 WL 2780978 at *6.

Three other cases are cited by Plaintiff regarding whether a defendant has knowingly used a plaintiff's likeness. In each of them, however, the plaintiff was a world-famous celebrity whose name and/or likeness were instantly recognizable to the public, and the fact patterns bear no relationship to the facts at issue here. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998) (Don Newcombe, Los Angeles Dodgers' legendary pitcher and the first pitcher to win the Rookie of the Year, Most Valuable Player, and Cy Young Awards during his career; Newcombe, a recovering alcoholic, brought state court suit against beer company, advertising company, and publisher of magazine which carried beer advertisement containing drawing allegedly depicting pitcher, and alleged statutory and common law commercial misappropriation, defamation, negligence, and intentional infliction of emotional distress); *Yeager v. AT&T Mobility, LLC*, No. CIV S-07-2517 KHM GGH, 2012 WL 3778926 (C.D. Cal. Aug. 31, 2012) (renowned U.S. Air Force flying ace, and record-setting test pilot who in 1947 became the first pilot in history confirmed to have exceeded the speed of sound in level flight, and was

12

awarded the Congressional Medal of Honor; Yeager sued for use of his name in a press release); and *Flynt v. Flynt Media Corporation,* No. CV 09-00489 AHM (RZx), 2009 WL 10673154 (C.D. Cal. Sept. 23, 2009) (notorious American publisher and the president of Larry Flynt Publications, producing pornographic magazines, such as *Hustler,* pornographic videos, and three pornographic television channels named Hustler TV; Flynt fought several high-profile legal battles involving the First Amendment, unsuccessfully ran for public office, and was famously paralyzed from the waist down due to injuries sustained in a 1978 assassination attempt; the case arose from a dispute between Larry Flynt and his nephews, Dustin Flynt and Jimmy Flynt, over the nephews' use of the word "FLYNT" in marketing forms of adult entertainment via their new company, FlyntMedia Corporation.)

Plaintiff's citation to *Wendt v. Host Int'l, Inc.,*125 F.3d 806 (9th Cir. 1997), a Lanham Act "false endorsement" case, is especially puzzling.  Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) prohibits, *inter alia,* the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person. The plaintiffs' claim was that, by using an imitation of their unique physical characteristics, defendant misrepresented their association with and endorsement of its "Cheers" bars concept.   The appellate court, reviewing the granting of a motion for summary judgment, determined that a reasonable jury might infer customers were confused about the association of the plaintiffs with the defendant's "Cheers" bars and the goods sold there, and therefore overturned the summary judgment.   That scenario is entirely different from Plaintiff's allegation here that the use of portions of a tattoo design that he sports renders him "readily identifiable" as the faceless man of a different race and age in a photo with Cardi B, and therefore proves a wrongful use of "Plaintiff's likeness;" all the more so where Plaintiff claims to

13

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

have nothing in common with, or to be in any way associated with, Cardi B. And the facts of *Wendt*, certainly bears no relationship to the lack of knowledge of the Defendants in this case.

### C. THE EVIDENCE PROFFERED IN PLAINTIFF'S OPPOSITION IS NOT PROBATIVE OR SUFFICIENT TO OVERCOME THIS MOTION.

In his Opposition, Plaintiff had every opportunity to cite to any and all evidence in the record supporting his positions on these issues. He has presumably availed himself of that opportunity, and attached it as exhibits to the declaration of his counsel, Lawrence Conlan (Dkt Nos. 153-1 through 153-9). These exhibits prove nothing relevant to the subject matter of this motion and are, in fact, adverse to Plaintiff's position.

*Exhibit 1 – excerpts from transcript of deposition of Belcalis Almanzar (Cardi B).* The fact that she "authorized" the mixtape artwork to be used in connection with the release of her mixtape GBMV1 does not prove that she knowingly used, or was aware of the use of, any likeness or photo of Plaintiff, or that anything about the tattoo design in the mixtape photo was "readily identifiable" as Plaintiff. The fact that she had initially selected a particular photo to be used (because it made her face "look pretty ... look cute") does not establish that she knew anything at all about the tattoo image, for she did not.

*Exhibit 2 – excerpts from transcript of deposition of Klenord Shaft Raphael of KSR Group, LLC.* The statement that Cardi B "authorized" the publication of the mixtape artwork does not establish that she, or any of Defendants, knew anything about how the final tattoo image was effectuated. The fact that Mr. Raphael considered the model's original cartoon tattoo "too loud" or "ugly" and that it would therefore attract attention away from Cardi B (the subject and focus of the picture and the entire venture) was a casual opinion of no moment here.

14

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

*Exhibit 3 – excerpts from transcript of deposition of Timm Gooden*.  Mr. Gooden's affirmation that Mr. Raphael had asked if he "could find another tattoo" is undisputed, as is Mr. Gooden's description of what he did to change the tattoo, but that proves no fact regarding any Defendant knowing anything at all about what was done, or about Plaintiff.  Moreover, although Plaintiff does not highlight it, at Exh. 3 at pg. 33 lines 10-17 Mr. Gooden states that he did not consider getting permission to use the photo because he "didn't see anything relating to copyright or usage or permissions when I took the image."   What Mr. Gooden, an independent contractor, knew (that he was photoshopping a photo of a person, although he had no idea who), or what he thought about it, is not imputable to Defendants.  He was never their employee or agent.

*Exhibit 4 – excerpts from transcript of deposition of Plaintiff Kevin Michael Brophy, Jr.*   Plaintiff's self-serving assertions about his reputation or the "recognizability" of his tattoos in the "tattoo community," "surfing community" or "Newport Beach community" are argumentative, conclusory, speculative and there is no foundation in the evidence produced (much less through any expert witness) to define what those "communities" are.   Notably, though, Plaintiff has not identified a single member of those "communities," other than his tattoo artist Tim Hendricks, nor has he named any witness to testify at trial on these issues, and he has thereby made it impossible for Defendants to conduct discovery or to investigate Plaintiff's bald, sweeping assertions.  Plaintiff's "impression" of what Mr. Hendricks had in mind when he initially texted Plaintiff about the mixtape artwork is argumentative hearsay, superseded (and not directly affirmed) by Mr. Hendricks' own testimony.  (Dowling Decl. 12/20/21, Exh 1 and first text in Exh 3).  Defendants are at a loss for words to reply to Plaintiff's meaningless (and legally pointless) assertions that his "back is recognized as my face" and that when he takes his shirt off "it's the same thing as my face."

15

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

*Exhibit 5 – excerpts from transcript of deposition of Plaintiff's wife, Lindsay Michelle Brophy.* Mrs. Brophy is a self-serving witness financially interested in the outcome of this case. Aside from admitting that she "trusts him 100 percent" and that they "have an amazing relationship," she also acknowledges that Plaintiff explained to her, immediately, that it was not him in the picture (after he brought it to her attention of his own volition). Her concerns about what other people "might think" may be, in some sense, understandable or natural, but her testimony about "one [un-named] mom at preschool," in <u>2020</u>, and other un-named people "coming up and asking him [Plaintiff] about it at the beach" (with no indication from her of specifically what was said), on unknown dates, like her recollection of Plaintiff having received text messages in her presence mentioning the mixtape cover, is patently inadmissible hearsay. Importantly, though, she acknowledges that Plaintiff told the people in question "that it wasn't him that posed for the picture."

*Exhibits 6-8 – emails dated 3/1/2018 between Defendants' counsel and Timm Gooden.* These emails, five months after this action was filed, described what Mr. Gooden had done in creating the mixtape artwork, and the result of his effort to find the possible online source of the photo he used. Exh. 6 only establishes that, on the assumption that the allegations by Plaintiff in his October 2017 Complaint that it had been a photo of him were true, Mr. Gooden, in March 2018, went back to the Internet, retracing his steps, to see if he could find a picture like the one in Para. 17 of the Complaint (though there are many). Though he could not be positive, he concluded that he had found a location that was "more than likely where I got it from." Exh. 7 reflects the results of a lengthy investigation by defense counsel of numerous websites identified by a Google search, again on the assumption that the Para. 17 picture was indeed Brophy, and that numerous duplicates appeared on many other sites (also anonymously, without attribution or any limitations on use) including several websites run by Tim Hendricks. Exh. 8

16

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

explains some of the changes Timm Gooden made in adopting a cropped portion of the tattoo design he found into the mixtape photo.

Even taken collectively, and giving Plaintiff every benefit of the doubt, this evidence does not begin to establish that Plaintiff himself was in the photo with Cardi B, that he was (or even could be) "readily identifiable" as the man in the picture, that the man with the tattoo in the photo is a "likeness" of Plaintiff, or that any of the Defendants had any knowledge whatsoever either of how that image was created or regarding Plaintiff himself.

## D. DEFENDANTS' MOTION IS NOT PROCEDURALLY IMPROPER OR MISLEADING.

Motions *in limine* may be used to obtain an advance ruling on the admission of certain evidence. They permit more careful consideration of evidentiary issues than would take place in the heat of battle during trial and they minimize conferences and disruptions during trial. Finally, by resolving critical evidentiary issues at the outset, they enhance efficiency of the trial process and promote settlements. See *In re Japanese Electronic Products Antitrust Litig.* 723 F.2d 238, 260 (3rd Cir. 1983), *rev'd on other grounds by Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986) (*in limine* procedure "permitted more thorough briefing and argument than would have been likely had the rulings been deferred"); *City of Pomona v. SQM North America Corp.* 866 F.3d 1060, 1070 (9th Cir. 2017) (such motions "are useful tools to resolve issues which would otherwise clutter up the trial") (internal quotes omitted).

As explained above, Plaintiff has produced no evidence and identified no competent witnesses with personal knowledge of the facts sufficient to establish either that a photographic likeness of Plaintiff was used  for commercial purposes by these Defendants, or that they did so knowingly, within the ambit of Cal. Civil Code § 3344.

17

ALAN G
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3

Consequently, Plaintiff cannot be permitted to offer bare, inadmissible hearsay from himself and his wife consisting of alleged third-party statements (none of which they are able to quote verbatim, and none of which they have attributed to individuals s identified in discovery or disclosures) or to attempt to characterize those anonymous persons' thoughts or intentions.  Likewise, Plaintiff cannot be permitted to cobble together selected cut-and-paste versions of printouts of ambiguous text messages allegedly sent by unidentified people, especially where the devices that transmitted and stored those communications have been lost or destroyed by Plaintiff and his tattoo artist.  As established above, such evidence is irrelevant to the issues presented by this motion and should be precluded to avoid confusing or misleading the jury and prejudicing Defendants.  Fed. R. Evid. 403.  Plaintiff's "evidence" is manifestly inadmissible hearsay. *See Mercado v. City of Orlando*,  407 F.3d 1152, 1161(11th Cir. 2005).  The fact that Plaintiff has produced no other evidence of communications, and no identifying information sufficient to permit discovery as to those alleged communications, examination of the communicators, and examination of the devices on which the messages were sent and stored is in itself grounds to exclude the evidence. *See Residential Funding Corp. v. Degeorge Fin'l Corp.*, 306 F.3d 99, 106-107 (2nd Cir. 2002); *Unigard Security Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); Fed. R. Civ. P. 37(b)(2)(B), (c)(1).

This is not a "disguised motion for summary judgment"; it is a motion to exclude irrelevant, misleading, prejudicial, and inadmissible evidence.  Plaintiff lacks the necessary foundation and authentication evidence needed at trial, and, more importantly, none of this evidence fits any exception to the hearsay rule.

## II.  CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Defendants' Motion *in Limine # 3* should be granted in all respects.

ALAN G DOWLING, A PROFESSIONAL CORPORATION SANTA MONICA, CA

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF DEFS' MOT *IN LIMINE* #3

Dated:  December 20, 2021

Respectfully Submitted,

**ALAN G. DOWLING, P.C.**

By: */s/ Alan G. Dowling*

**Alan G. Dowling**

*Attorney for Defendants*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brophy v. Almanzar, et al
USDC, CD Cal, Case No. 8:17-cv-01885-CJC-JPR

MEMO OF P&A IN SUPP OF
DEFS' MOT *IN LIMINE* #3