UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| KEVIN MICHAEL BROPHY, JR., <br><br> Plaintiff, <br><br> v. <br><br> BECALIS ALMANZAR a/k/a CARDI B; KSR GROUP, LLC; WASHPOPPIN, INC.; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: SACV 17-01885-CJC (JPRx) <br><br> **ORDER REGARDING PROPOSED JURY INSTRUCTIONS AND VERDICT FORM** |

I.      INTRODUCTION

Trial is set to begin in this case on August 2, 2022. (Dkt. 179.) Plaintiff Kevin Michael Brophy, Jr. ("Mr. Brophy") brings three claims against Defendants Becalis Almanzar also known as Cardi B ("Cardi B"), KSR Group, LLC, and Washpoppin, Inc. for (1) common law misappropriation of likeness, (2) improper use of likeness pursuant to California Civil Code section 3344, and (3) false light. Mr. Brophy's claims arise from the allegedly improper use of a photograph of his tattoo which was used as part of the artwork on Cardi B's first mixtape, *Gangsta Bitch Music, Vol. I* ("GBMVI").

Before the Court is a joint statement from the parties on their conflicting positions concerning the proposed jury instructions and the proposed verdict form to be used at trial. (Dkt. 176 [Joint Statement Regarding Additional Jury Instructions and Verdict Form Issues, hereinafter "Joint Statement"].) The first issue concerns whether the jury should receive an instruction on a First Amendment "public interest" defense to Mr. Brophy's claims. The second is whether the jury should be instructed on Defendants' First Amendment "transformative use" defense. The third is whether any non-economic damages awarded in this case should be apportioned amongst Defendants. The fourth issue is whether disgorgement of profits should be apportioned amongst Defendants. The fifth issue is whether the jury or the Court should decide the disgorgement of profits issue. The final issue is whether consent is an affirmative defense to Plaintiff's claim for false light. The Court takes each in turn.

//
//
//
//
//

## II.   DISCUSSION

### A.   "Public Interest" Defense

Defendants ask the Court to instruct the jury on an affirmative defense used in privacy cases, such as this one, known as the "public interest" defense. The "public interest" defense is rooted in the First Amendment of the United States Constitution. *See Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001). The defense bars recovery for misappropriation of likeness claims when the public interest in the use of the plaintiff's likeness outweighs the infringement on the plaintiff's right to be protected from unauthorized publicity. *Id.* at 409–10 (2001) ("[T]he common law right [to be protected from unauthorized publicity] does not provide relief for every publication of a person's name or likeness. The First Amendment requires that the right to be protected from unauthorized publicity be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guaranties of freedom of speech and the press."). In other words, the defense is premised on First Amendment protections for the dissemination of information or content that the general public may have a legitimate interest in, such as matters that concern "people who by their accomplishments or mode of living create a bona fide attention to their activities." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993).

Defendants maintain that Mr. Brophy has repeatedly characterized himself in this case as a public figure. (Joint Statement at 11.) They point to allegations in Mr. Brophy's Complaint which allege that he was involved in the entertainment and surfing industries, is a well-known and recognized person in the Southern California beach community, and that his tattoo design is so unique as to be "instantly recognizable" to the public. (*Id.*) Defendants also point out that Mr. Brophy was formerly a lead singer of a

rock band called "The Pricks" for a number of years, "featuring his tattoos in performances;" has had his tattoos photographed and included in at least one or two books on tattooing; appeared in a nationally televised reality television show, *Miami Ink*, that featured the work of his tattoo artist Tim Hendricks; and also appeared in a movie called *Tattoo Nation*. (*Id.*) Mr. Brophy insists that he is a not a public figure nor has he ever contended that he has any kind of celebrity status. (*Id.* at 9 ["[Mr. Brophy] is not famous and does not seek to draw widespread attention to his activities for commercial gain. He filed this action in order to protect the use of his likeness and his right to be left alone."].)

The Court agrees with Mr. Brophy that the jury should not be instructed on the public interest defense here. Defendants have not shown that Plaintiff is the kind of person that "who by [his] accomplishments or mode of living create a bona fide attention to their activities." *Dora*, 15 Cal. App. 4th at 542. Though Plaintiff may have in the past pursued projects or roles that could have led to the kind of notoriety that would suggest the public has a legitimate interest in his activities, there has been no information presented that would allow the Court to reasonably conclude that Mr. Brophy has achieved such notoriety.[1]

Second, the public interest defense appears to be a poor fit with the facts of this case. The actual item that may be subject to public interest here is not Mr. Brophy's tattoo but Cardi B's album and Cardi B herself. As a professional musician, entertainer, and artist, it is her work and her activities that the public may legitimately have an interest in because she is widely popular, her work is disseminated and purchased around

---

[1] That is not to suggest that only celebrity plaintiffs are subject to the public interest defense. Indeed, private figures—through their own accomplishments—may be properly subject to unwelcomed or unwanted news reports or press. But Defendants have not made a showing that Mr. Brophy is such a person.

the world, her music has topped billboard charts, and she has achieved great success in the music industry. The same cannot be said of Mr. Brophy or his tattoo.

Defendants argue that since Cardi B is a person that the public may legitimately have an interest in then the use of Mr. Brophy's tattoo in her cover album art is also protected by the First Amendment. This inverts the public interest defense. Since Cardi B has chosen to pursue, and has achieved, a career that has thrust her in the public limelight, it makes sense that the First Amendment would protect the exchange of ideas that comment on her or her work. But that does not mean that because Cardi B has achieved celebrity status she can avoid liability for any unauthorized use of another's likeness. Such a reading of the public interest defense is unsupported by the law and taken to its logical conclusion would mean that each time a celebrity is a defendant in a rights of publicity case, rather than the plaintiff, then she can claim the First Amendment protects her unlawful conduct because the public is interested in whatever she does.

Defendants have also failed to show how Cardi B's album, which may be of public interest, is related to Mr. Brophy and his tattoo. For instance, there is no claim that Cardi B's album was a commentary on tattoos or, more specifically, Mr. Brophy. Mr. Brophy appears to be a private individual whose image was selected to appear on the album because someone in Cardi B's team thought his tattoo would fit the cover of the album well. This is important because the California Supreme Court has held that to make use of the public interest defense, the use of the plaintiff's likeness must have a relationship with the claimed issue of public interest. In *Gill v. Curtis Pub. Co.*, 38 Cal.2d 273 (1952), the plaintiffs were a married couple that owned and operated a confectionary and ice cream concession in the Farmers' Market in Los Angeles. *Id.* at 275. Though they were known locally, they were private figures unknown to the general public. *Id.* A photographer for a magazine photographed the couple while they were seated at their concession stand. *Id.* In the photograph, they appeared side-by-side, leaning against

each other. *Id.* The photo was later used in an issue of *Ladies' Home Journal* in connection with an article entitled "Love." *Id.* The article did not deal "with actual recent or past events in the lives of actual persons[,]" but was "more a philosophical or psychological or semi-educational discussion of abstractions." *Id.* at 281. The plaintiffs sued for misappropriation of likeness but the Defendants (the magazine's publishing company and distribution company) argued that their claims were barred by the First Amendment public interest defense. *Id.* at 276–77.

The California Supreme Court ruled that the Defendants could not escape liability for the improper use of the photograph based upon the public interest defense, even though the court assumed the article itself was "within the range of public interest in dissemination of news, information, or education." *Id.* at 279. The court reasoned that "there appears no necessity for the use [of the photo] in connection with the article without [plaintiffs'] consent[.]" *Id.* That is, "[t]he article, to fulfill its purpose and satisfy the public interest, if any, in the subject matter discussed, could, possibly, stand alone without any picture." *Id.* In other words, "the public interest did not require the use of any particular person's likeness nor that of plaintiffs without their consent. The likeness is only illustrative of part of the article, like a schematic diagram in a scientific dissertation, except that there is far less necessary pertinency." *Id.* Simply put, "the article, and use of the photograph with it, was not aimed at giving news or information about plaintiffs' business." *Id.* at 281.

Like in *Gill*, the use of Mr. Brophy's likeness here did not add or detract from any public interest there may be in Cardi B's musical work—the album could have existed even without the use of the image of Mr. Brophy's tattoo. Indeed, there is simply no relationship between the claimed item of public interest here, Cardi B's work and/or Cardi B, and Mr. Brophy's tattoo, besides what Defendants did to create such a

relationship. And the use of the image of Mr. Brophy's tattoo "was not aimed at giving news or information about plaintiff[]" or anything else related to Mr. Brophy.

The Ninth Circuit has also limited the defense to situations in which the work *publishes or reports* matters of public concern. In *Hilton v. Hallmark Cards*, Paris Hilton sued Hallmark for the use of her likeness on a greeting card that appeared to be a reproduction of her from her reality television show *The Simple Life*. 599 F.3d 894 (9th Cir. 2010). Hallmark attempted to escape liability through the "public interest" defense, arguing that because Paris Hilton is famous, Hallmark's use of her likeness on the greeting card was protected by the First Amendment. But the Ninth Circuit ruled Hallmark "cannot not employ" the defense "because, by its terms, [the defense] only precludes liability for '*the publication* of matters in the public interest.'" *Id.* at 912 (quoting *Montana v. San Jose Mercury News. Inc.*, 34 Cal. App. 4th 790, 793 (1995) (internal quotation marks omitted)). The Ninth Circuit explained that "[t]he case that established the defense explicitly linked it to the publication of newsworthy items." *Id.* And "[l]ater opinions confirm the impression that it is about such *publication or reporting*." *Id.* The Circuit concluded that Hallmark could not "employ the 'public interest' defense because its birthday card does not publish or report information." *Id.*

Just as a Hallmark card depicting Paris Hilton cannot reasonably be considered to "publish or report information[,]" neither may the cover of GBMVI. That is because the mixtape artwork does not aim to educate or inform the public about an event, person, or item of public interest. Rather, the mixtape art is a marketing tool, designed with the hopes to attract consumers to Cardi B's album. Accordingly, Defendants cannot make use of this defense here and the jury will not be instructed on it.

### B.        Transformative Use Defense

Mr. Brophy contends that the jury should not be instructed on Defendants' second affirmative defense, transformative use, because it is inapplicable since Mr. Brophy is not a celebrity. (Joint Statement at 18.) Defendants argue that instructing the jury on the transformative use is proper because nothing in the case law limits the applicability of the defense to cases in which the plaintiff is a celebrity. Though the Court acknowledges that generally a defendant invokes the transformative use defense when a *celebrity* plaintiff is accusing them of violating their right of publicity rather than a private individual making such accusations, the Court agrees with Defendants that there is no case law that explicitly limits the defense only to instances in which the plaintiff is a celebrity.

The transformative use defense, like the public interest defense, is rooted in the First Amendment. *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001). In *Comedy III*, the California Supreme Court articulated and outlined the purpose of this defense. The case concerned a defendant who had created charcoal drawings of the members of the comedy trio, The Three Stooges, and transferred them onto t-shirts. *Id.* at 393. The defendant argued that any findings that he violated rights of publicity at issue violated his right of free speech and expression under the First Amendment. *Id.* at 396. The court recognized a "tension between the right of publicity and the First Amendment . . . recalling the two distinct, commonly acknowledged purposes of the latter." *Id.* at 396–97. The first is "to preserve an uninhibited marketplace of ideas' and to repel efforts to limit the 'uninhibited, robust, and wide-open' debate on public issues." *Id.* at 397 (internal quotation marks omitted). The second is "to foster a fundamental respect for individual development and self-realization." *Id.*

The court explained that "[t]he right of publicity has a potential for frustrating the fulfillment of both these purposes. Because celebrities take on public meaning, the

appropriation of their likenesses may have important uses in uninhibited debate on public issues, particularly debates about culture and values." *Id.* To be sure, Mr. Brophy is not a celebrity, but that does not mean that Defendants' possibly creative or transformative expression of Mr. Brophy's likeness automatically loses First Amendment protection. As the California Supreme Court noted in *Comedy III*, "entertainment is entitled to the same constitutional protection as the exposition of ideas" and "entertainment, as a mode of self-expression, is entitled to constitutional protection irrespective of its contribution to the marketplace of ideas." *Id.* at 398. That is because "expression is an integral part of the development of ideas, of mental exploration and of the affirmation of self." *Id.* Here, Defendants argue that the way they used Mr. Brophy's tattoo materially changed it into something more than a mere recreation of his image. Whether Defendants were actually successful in doing so is a question for the jury, as this Court has already explained. (*See* Dkt. 125 [Court's Order Denying Defendants' Motion for Summary Judgment on All Claims] at 5 [The issue of transformative use "is clearly one for the jury to decide."].)

The California Court of Appeal has also indicated that the defense is applicable even when the plaintiff is not a celebrity. In *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 850 (2018), the California Court of Appeal explained that "[b]ooks, films, plays, and television shows often portray real people. Some are famous and some are just ordinary folks. Whether a person portrayed in one of these expensive works is a world-renowned film star—'a living legend'—or a person no one knows, she or he does not own history. Nor does she or he have the legal right to control, dictate, approve, disapprove, or veto the creator's portrayal of actual people." Though *De Havilland* concerned a celebrity-plaintiff, the rationale of the Court Appeal stands for the principle that just because Mr. Brophy is a private individual does not mean that he could recover from a defendant who has materially contributed and transformed his likeness, voice, or image into a work of independent artistic value. Otherwise, the right of publicity would overwhelm the First Amendment, the exact result *Comedy III* intended to avoid.

Though the Court understands that Mr. Brophy is attempting to vindicate his right to be left alone rather than the right to exploit his fame, Mr. Brophy does not cite any case law to suggest that the right to be left alone does not face the same or similar tension with the First Amendment as the right to publicity does. Indeed, the one case Mr. Brophy does cite to suggest that the difference between these two rights matters for the purposes of the applicability of this defense instead highlights how they are related. *See Orthopedic Systems, Inc. v. Schlein*, 202 Cal. App. 4th 529, 544 (2011) (quoting *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 366 (2001)) ("'What may have originated as a concern for the right to be left alone has become a tool to control commercial use and, thus, protect the economic value of one's name[.]'"). Indeed, to prove both his common law claim and his Section 3344 claim, Mr. Brophy must show that the appropriation of his likeness was used for some commercial purpose and, at the end of the day, Mr. Brophy seeks to be compensated for that commercial use. But if Defendants can convince a jury that the way they used Mr. Brophy's likeness was transformative into something beyond a mere reproduction of his likeness, then that expression may be entitled to First Amendment protection.

However, the Court recognizes that the Judicial Council of California Civil Jury Instructions' ("CACI") model instruction on the transformative use defense is quite broad and designed to be used when a celebrity is the plaintiff, not the defendant. *See* CACI Civil Jury Instr. 1805 ("The instruction assumes that the plaintiff is the celebrity whose likeness is the subject of the trial. This instruction will need to be modified if the plaintiff is not the actual celebrity."). Thus, appropriate modifications should be made to reflect the appropriate application of this defense in the context of a private plaintiff. In full, the instruction provides:

    Defendants claim that Mr. Brophy has not violated Mr. Brophy's right of privacy because the album cover of *Gangsta Bitch Music, Vol. 1* is protected by the First Amendment's guarantee of freedom of speech and expression. To succeed, Defendants must prove either of the following:

  1.  That the album cover adds something new to Mr. Brophy's likeness, giving it a new expression, meaning, or message; or

  2.  That the value of the album cover does not result primarily from Mr. Brophy's fame.

The source of this second element is *Comedy III*. There, the California Supreme Court made clear that this element is designed to be used in "close cases" concerning transformative use. *See Comedy III*, 25 Cal.4th at 407. Specifically, the court explained that this inquiry was designed to capture whether "the marketability and economic value of the challenged work derive[s] primarily from the fame of the celebrity depicted[.]" *Id*. If so, "then there would generally be no actionable right of publicity." *Id.* Clearly, the second element of this instruction is only applicable in instances in which the plaintiff is claiming that the work at issue is valuable primarily from their celebrity status.

  Allowing this portion of the instruction would bar private plaintiffs from pursuing justice for the misappropriation of their likeness. Take for instance the present case in which Mr. Brophy has conceded that Defendants did not use his tattoo to exploit his fame and conceded that the album did not sell principally because of his fame. With those concessions, the second element of the defense would constitute a death knell for Mr. Brophy's misappropriation of likeness claims. But that was not what this inquiry was designed to do. Rather it was meant to hold celebrity plaintiffs to a higher standard if the work at issue "comes principally from some source other than the fame of the celebrity—

from the creativity, skill, and reputation of the artist[.]" *Id.* at 407. The Court will therefore eliminate the second element of the model instruction in this case.

That leaves the first element of the instruction: "[t]hat the album cover adds something new to Mr. Brophy's likeness, giving it a new expression, meaning, or message." This language is quite broad and creates a risk of jury confusion. Based upon the current language, the jury could conclude that there is a transformative use of Mr. Brophy's likeness even if his likeness is merely replicated but the work provides a creative background on which his likeness is displayed. But this has been foreclosed by California Courts. *See No Doubt v. Activision Publishing, Inc.*, 192 Cal. App. 4th 1019, 1034–35 (2011) (finding that a video game developer was not entitled to the transformative use defense as a matter of law because its video game contained "literal recreations" of members of the band "No Doubt" despite the fact that the "avatars appear in the context of a videogame that contains many other creative elements" since those creative elements "do[] not transform the avatars into anything other than exact depictions of No Doubt's members."). In other words, the appropriate inquiry here is whether Mr. Brophy's likeness has been transformed, "rather than whether the work as a whole [is] transformative." *Davis v. Electronic Arts Inc.*, 775 F.3d 1172, 1178 (9th Cir. 2015).

Accordingly, the Court finds a more precise and appropriate statement of the law here requires amending the first element of the instruction to "that the depiction of Mr. Brophy's tattoo on the album cover adds something new to Mr. Brophy's tattoo, giving the tattoo a new expression, meaning, or message[.]" The instruction as amended will therefore be:

> Defendants claim that Mr. Brophy has not violated Mr. Brophy's right of privacy because the album cover of *Gangsta Bitch Music, Vol. 1* is protected by the First Amendment's guarantee of freedom of speech and expression. To succeed, Defendants must prove that the depiction of Mr. Brophy's tattoo on the album cover adds something new to Mr. Brophy's tattoo, giving the tattoo a new expression, meaning, or message.

### C. Apportionment of Non-Economic Damages

Plaintiff also requests that the Court hold Defendants jointly and severally liable for any non-economic damages the jury may award in this case. The Court agrees with Plaintiff that since this action does not concern claims for personal injury, property damages, or wrongful death, based upon principles of comparative fault, then joint and several liability applies here. *See* Cal. Civ. Code §1431.2. The privacy torts at issue are intentional torts rather than torts based upon comparative fault. Indeed, courts have routinely held that defamation, of which false light is related, is an intentional torts. *See, e.g., McQuirk v. Donnelley*, 189 F.3d 793, 796 (9th Cir. 1999) (explaining that plaintiff's claim for defamation is an intentional wrong); *King v. U.S. Bank National Association*, 52 Cal. App. 5th 728, 712 (2020) (describing intentional torts to include defamation); *Stellar v. State Farm General Ins. C*o., 157 Cal.App.4th 1498, 1505 (2007) (quoting *Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 271 (N.D. Cal. 1991)) ("Defamation, which includes libel and slander, is an intentional tort which requires proof that the defendant intended to publish the defamatory statement. The very nature of defamation precludes the conclusion that it can occur 'accidentally.'") (internal citations omitted in oriignal). Moreover, Section 3344 requires a plaintiff to prove that the defendant *knowingly* misappropriated plaintiff's likeness, just as other intentional torts require. Cal. Civ. Code § 3344. Though the common law misappropriation of likeness tort does not have a "knowing" element, Defendants concede that it is not based upon comparative fault principles. And both claims require some showing that Defendants meant to use Mr. Brophy's likeness, even if they did not do so knowingly, (*see* CACI Jury Instr. 1802,

1803), indicating they are intentional torts in which no apportionment is required. *See B.B. v. County of Los Angele*s, 10 Cal.5th 1, 29 (2020) (holding that "section 1431.2, subdivision (a), does not authorize a reduction in the liability of intentional tortfeasors for non-economic damages based on the extent to which the negligence of other actors — including the plaintiffs, any codefendants, injured parties, and nonparties — contributed to the injuries in question."); *see also Thomas v. Duggins Construction Co., Inc*., 139 Cal. App. 4th 1105, 1108 (2006) (concluding that the adoption of comparative fault principles did not diminish the intentional tortfeasor's liability); *Golden v. Anderson, 2*56 Cal. App. 2d 714, 719-720 (1967) ("Plaintiff's action is for an intentional tort. All persons who are shown to have participated are liable for the full amount of the damages suffered.").

Defendants' view that they are entitled to apportionment because they may show at trial that Mr. Brophy or other individuals not named as parties in this action may be responsible for Mr. Brophy's non-economic damages is not persuasive. Each case Defendants cite discuss claims for personal injury, property damages, or wrongful death, based upon principles of comparative fault, in which California law explicitly requires apportionment. Again, there is no comparative fault claim at issue here. And Defendants have not cited any persuasive authority dictating that apportionment is proper.

### D. Disgorgement of Profits and Apportionment

Defendants also ask that the Court, not the jury, decide the issue of disgorgement of profits pursuant to Section 3344 because disgorgement of profits is an equitable remedy rather than a legal remedy. The Court recognizes a tension in Ninth Circuit case law on this issue. In the context of cases brought pursuant to the Lanham Act, the Ninth Circuit has held that "[t]he Seventh Amendment does not require that a jury calculate these profits, because juries have not traditionally done so, and a claim for profit disgorgement is equitable in nature." *Fifty-Six Hope Road Music, Ltd. v. A.V.E.K.A..,*

*Inc.*, 778 F.3d 1059, 1065 (9th Cir. 2015).  However, the Ninth Circuit has held that a claim for disgorgement of profits under the Copyright Act of 1909 does trigger the Seventh Amendment's right to a jury trial.  *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) (hereinafter *Krofft*), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)).  To be sure, the Ninth Circuit's holding that disgorgement of profits under the Copyright Act of 1909 triggers the Seventh Amendment has been questioned in recent case law.  *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 Fed. Appx. 110, 115–116 (9th Cir. 2020) (Friedland, J., concurring) (urging the Ninth Circuit to reconsider its prior holding that disgorgement of profits under the Copyright Act of 1909 triggers the Seventh Amendment right and finding "*Krofft* was wrong to conclude that it is a legal remedy.  And nothing in *Krofft* itself persuades otherwise.").  But the tension between the two lines of cases remains.

However, it is not necessary for the Court to resolve this issue before trial.  To avoid duplication of effort, delay and unnecessary expense to the Court and the parties, the Court will submit the issue of disgorgement of profits to the jury.  *See* Fed. R. Civ. P. 39(c) ("In an action not triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory jury[.]").  To try the issue separately would require the parties to call the same witnesses and present some of the same evidence twice, given the substantial evidentiary overlap and relationship between the disgorgement of profits and the other liability and damages issues involved in this case.

Moreover, there are additional concerns that advise against bifurcating the disgorgement of profits issue from the other liability and damages issues presented.  This Court has an obligation to ensure that the province of Mr. Brophy's Seventh Amendment right is not invaded when legal and equitable issues in the case overlap.  That is, "'where equitable and legal claims are joined in the same action, there is a right to jury trial on the

legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001).  When the legal and equitable issues are "intertwined at trial . . . bifurcation . . . may cause constitutional problems."  *Id.*

There is great risk of such intertwinement here.  Mr. Brophy has a Seventh Amendment right to try his misappropriation of likeness claim, Section 3344 claim, and false light claim to a jury.  For both his misappropriation of likeness claim and Section 3344 claim, he is required to show that Defendants used his likeness for a commercial advantage or purpose.  What could be better evidence of such a purpose than the very profits Defendants made from the use of his likeness?  The Court will not risk infringing upon Mr. Brophy's Seventh Amendment right by bifurcating the issues when the evidence for both issues is so interlinked.

Nor will the Court apportion the disgorgement remedy here.  The Court has already determined that Section 3344 holds Defendants jointly and severally liable for their misconduct.  Defendants cite no authority to suggest that apportioning the remedy for Section 3344, the disgorgement of profits, is required.  Cal. Civ. Code § 3344.  And if one defendant is found liable but another is not, contrary to Defendants' view, that does not mean the non-liable defendants would also disgorge any profits they made.  Rather, only the liable defendants would have to disgorge profits.  Whether the liable defendant has possession of the entire amount he is required to disgorge does not matter.  A defendant cannot escape liability merely because he gave some of the profits made from his wrongdoing to another non-liable individual.  Such a result would provide a perverse incentive to tortfeasors and the law does not require such a result.

E.         **Consent Defense to False Light**

Finally, Defendants ask that the Court instruct the jury that consent is a defense to false light. Though the Court agrees that consent is a defense to a claim of false light, *see Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625 (1986) (discussing whether a plaintiff had consented to the use of his likeness in a defamatory, libelous, or false light manner when he signed a waiver permitting the portrayal of his likeness), there is nothing in the record at this stage of the litigation that would warrant issuing the instruction. The Court understands that Defendants intend to argue that Mr. Brophy consented to the use of his tattoo on the mixtape artwork because he had posed in the nude for full body pictures, circulated those images on his public Instagram page, which were then disseminated on other websites and internet platforms, and thus thrust the image of his tattoo into the public domain. (Dkt. 120 [Defendants' Memorandum of Contentions of Fact and Law] at 35.) However, Mr. Brophy is contending that the mixtape artwork portrays him in a false light both because it displays him in a sexually provocative, offensive, and vulgar manner and because it portrays him as someone who would consent to the use of his likeness in such a proactive, offensive, and vulgar manner. *See Douglass v. Hustler Magazine*, 769 F.2d 1128 (7th Cir. 1985) (finding plaintiff had a viable false light claim even when she consented to having her photograph used in *Playboy* but defendants published it *Hustler* which she did not consent to do). And Defendants cite no caselaw to support their contention that a private plaintiff's circulation of images of his own likeness in the public sphere provides blanket consent for others to use such images in whatever manner they may choose. *See Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, 1634–35 (1985) (reversing a trial court's grant of dismissal in a privacy torts case when plaintiff had signed a waiver permitting defendants to use plaintiff's likeness because *the scope* of plaintiff's consent was at issue).

While the Court will not preclude Defendants from raising the defense altogether, it will not instruct the jury on the issue at this time. *See United States v. Camargo*, 747 Fed. Appx. 551 (9th Cir. 2018) (affirming a lower court's decision to refuse to issue an instruction on an entrapment defense because "the court found there was insufficient evidence presented at trial to permit a finding that the government induced the crime[.]"). Defendants are free to raise the issue at a later point during the trial to argue that sufficient evidence has been presented on the consent defense such that issuing the instruction would be proper.

DATED: July 15, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE