**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| KEVIN MICHAEL BROPHY, JR.,<br><br>          Plaintiff,<br><br>     v.<br><br>BELCALIS ALMANZAR aka CARDI B; KSR GROUP, LLC; WASHPOPPIN, INC.; and DOES 1 through 20, inclusive,<br><br><br>          Defendants. | Case No.: SACV 17-01885-CJC (JPRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW [Dkt. 247]** |

## I.   INTRODUCTION

In this action, Plaintiff Kevin Michael Brophy, Jr., brought claims against Defendants Belcalis Almanzar, a celebrity rapper also known as Cardi B ("Cardi B"), KSR Group, LLC, the business entity of her former manager, and Washpoppin, Inc., her own business entity, for (1) common law misappropriation of likeness, (2) improper use

of likeness pursuant to California Civil Code section 3344, and (3) false light.  (*See* Dkt. 1 [Complaint].)  Brophy's claims centered on Defendants' allegedly improper use of one of his back tattoos on the back of a model in the cover artwork of Cardi B's mixtape *Gangsta Bitch Music, Vol. I.*  (*See id.* ¶¶ 1–2.)  On October 21, 2022, after a four-day trial, the jury found Defendants not liable on all claims.  (*See* Dkt. 236 [Verdict Form].)  Now before the Court is Brophy's motion for judgment as a matter of law on all claims in his favor and against Defendants under Federal Rule of Civil Procedure 50.  (*See* Dkt. 247 [Plaintiff's Motion for Judgment as a Matter of Law Pursuant to FRCP Rule 50, hereinafter "Mot."].)  For the following reasons, the motion is **DENIED**.[1]

## II.     DISCUSSION

### A.       Waiver

The parties first dispute whether Brophy waived his right to make a Rule 50 motion by not doing so by the close of the evidence or stipulating to making such motions at a later time.[2]  In short, Brophy indeed waived his right.

Rule 50 provides that a party may move for judgment as a matter of law "before the case is submitted to the jury," Fed. R. Civ. P. 50(a)(2), and "may file a renewed motion" within "28 days after the entry of judgment," *id.* 50(b).  While an initial Rule 50 motion need not be made in writing, *see Nitco Holding Corp. v. Boujikan*, 491 F.3d 1086,

---

[1]  Having read and considered the papers that the parties presented, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 9, 2022, is hereby vacated and removed from the calendar.

[2]  Defendants also argue that Brophy's counsel did not, as the Local Rules require, "contact opposing counsel to discuss . . . the substance of the contemplated motion and any potential resolution . . . at least 7 days prior to the filing of the motion."  Local Rule 7-3; (*see also* Dkt. 248 [Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Judgment as a Matter of Law Pursuant to FRCP 50] at 1–2).

1088 (9th Cir. 2007), and this temporal requirement "may be satisfied by an ambiguous or inartfully made motion," *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989), the obligation to make *something* amounting to a Rule 50(a) motion by "the close of all the evidence is a strict one," *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987). "[S]ubstantial compliance is not enough." *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 887 (9th Cir. 2002). "Asking if one will have the opportunity to make a motion" does not suffice, as asking "and making a motion are two different things." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 923 (9th Cir. 2001). Nor is "counsel's statement" of an "inten[t] to make a Rule 50 motion" adequate. *Kovacic v. County of Los Angeles*, 731 F. App'x 669, 671 (9th Cir. 2018). Waiver may occur even when, for example, an ambiguous statement from the judge "induce[s] [a party] not to file the 50(a) motion," because a party still "could" file one and the Rule's requirements are "clear." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009).

Brophy does not claim that he in fact made a Rule 50(a) motion before the case was submitted to the jury. Rather, he points to instances when the parties and the Court discussed the best process for making such a motion and argues that the instances either amounted to a stipulation allowing each party to make a motion after the verdict or otherwise preserved a party's right to make one then. But that is not the case. In each instance, all that happened was either the Court expressing a preference for, or inquiring about, a stipulation to brief and argue Rule 50(a) motions after the verdict or the parties discussing the status of the suggested stipulation. Despite solicitations from Defendants' counsel to Brophy's counsel for a stipulation, one never materialized. Thus, Brophy's untimeliness amounts to a waiver.

The most telling—and most recent—instance when the parties discussed Rule 50 is the final pretrial conference on October 11, 2022. That discussion consisted only of an

expressed preference from the Court for a stipulation and an explanation by Defendants' counsel of a proposed stipulation emailed to Brophy's counsel for review:

> MR. CONLAN: Actually, on that point, since you raise that, Your Honor, what we had agreed—and I thought we should put this on the record for Mr. Anderson's benefit—is that the defendants, if and when they make a Rule 50 motion, will do it separately outside of the jury. And I think the Court has instructed that any Rule 50 briefing be the subject of a briefing schedule after the case goes to the jury or after their verdict.
>
> THE COURT: *That was—that was my suggestion.* I don't know if it was my order, but it was my suggestion is that we don't want to have the jurors have to cool their jets while we're arguing the details of the motion. Plus, I don't want defense counsel distracted from putting on their case and worrying about putting together a brief in the middle of trial.
>
> And under Rule 50, I have the right to take the matter under submission and render a decision on it if the jury comes back with a verdict.
>
> MR. CONLAN: *So, in other words, a stipulation on a Rule 50 motion is unnecessary—*
>
> THE COURT: Well—
>
> MR. CONLAN: —at this point.
>
> THE COURT: *—I would appreciate a stipulation*, and you might want to see how it's going. But as you're coming to the end of your case, *if you can reach a stipulation* that defense doesn't have to brief and argue a Rule 50 motion, that they can preserve the issue and they can then brief it after the jury returns a verdict, I'd appreciate it.
>
> MR. CONLAN: And we don't have a problem with that. I think we've already committed to that in prior conferences.
>
> THE COURT: Okay.
>
> MR. ANDERSON: Just to be clear, because it is an important issue—and I did read the transcript several times on the discussion of this, and *I understood the Court to suggest that counsel agree. And we have submitted*

-4-

*a stipulation and proposed order.*  And I just wanted—to Mr. Conlan for his review.

And, basically, what it provides is that there will be no waiver of a Rule 50 motion for failure to make it, you know, and brief it at the close of the plaintiff's case or by failing to renew it.  And the idea is that, once we have that, then there will be no interruption at all.  I won't have to say, "Your Honor, we have a motion," that everyone has to leave.  And so that's the status of where we are on that point, Your Honor.

THE COURT: I appreciate that.

(Dkt. 221 [October 11, 2022, Transcript, hereinafter "Tr. 10/11"] at 31:7–33:2 [emphasis added].)

No part of this colloquy amounts to a stipulation or otherwise preserved the right to make a Rule 50(a) motion after the case was submitted to the jury.  Brophy argues that the "recit[ation]" of "the stipulation . . . on the record" preserved "all grounds for Rule 50 motions."  (Mot. at 13.)  Not so.  Defendants' counsel summarized a proposed stipulation previously emailed to Brophy's counsel just to ensure that it conformed to the Court's preferences.  The parties never expressed on the record at that or any subsequent conference an agreement to the terms, nor did Brophy's counsel respond by email to the proposed stipulation from Defendants' counsel.  (*See* Dkt. 248-2 [October 10, 2022, email asking about a stipulation]; Dkt. 248-3 [October 12, 2022, email asking about a stipulation]; Dkt. 248-4 [October 14, 2022, email asking about a stipulation]; Dkt. 248-6 [October 17, 2022, email asking about a stipulation]; *see also* Dkt. 248-5 [October 14, 2022, email from Brophy's counsel stating "[w]e will respond to you on the proposed Rule 50 stip"].)  Further, despite the "understanding" of Brophy's counsel, (Mot. at 13), that "a stipulation on a Rule 50 motion [wa]s unnecessary . . . at this point," (Tr. 10/11 at 31:24–32:2), the Court made clear on October 11 that one was nonetheless needed.  And Defendants' counsel likewise said at the conference that counsel "understood the Court to *suggest*" at prior conferences "that counsel agree."  (*Id.* at 32:14–15 [emphasis added].)

The discussions at earlier conferences that Brophy cites do not change the clear import of the more recent statement on October 11 that a stipulation was necessary.  Even on their own terms, however, those discussions did not preserve his right to a Rule 50(a) motion post-verdict.  On July 18, 2022, the Court "suggest[ed]" that the parties "reach an agreement" that each party need only state that the party is "making the motion" at the conclusion of the evidence with "a briefing and hearing schedule" to follow.  (Dkt. 203 [July 18, 2022, Transcript] at 26:11–17.)  Defendants' counsel asked whether the parties "should refrain from filing a Rule 50 motion until the conclusion of the evidence," and the Court again "suggest[ed] . . . that [the parties] reach a stipulation." (*Id.* at 27:15–18.)  Of course, the suggestion to reach a stipulation is not enough.  Then on July 28, the Court stated its "general understanding" that everyone "agreed" that a party may simply say that the party has "a Rule 50 motion" and "very quick[ly], orally," explain the grounds and that the parties "can agree" to not "even have to get that detailed" to preserve "all possible grounds, to be briefed after trial."  (Dkt. 220 [July 28, 2022, Transcript] at 80:4–17.)  Brophy's counsel said that he "thought" the parties already "had agreed to that"—as explained, they had not—and in any event, he never made a "very quick, oral[ ]" motion. (*Id.* at 80:12–22.)  Finally, on August 17, the Court merely discussed its "authority" to set a briefing and argument schedule after the verdict.  (*See* Dkt. 200 [August 17, 2022, Transcript] at 17:12.)  That statement did not absolve the parties' obligation to make *something* amounting to a timely motion or to stipulate otherwise.

The suggestions and discussions around a potential stipulation on the timing of Rule 50 motions were just that—suggestions and discussions, not actual motions or stipulations as to timing.  If "[a]sking if one will have the opportunity to make a motion," *Humetrix*, 268 F.3d at 923, and a "statement" that one "intend[s] to make a" motion, *Kovacic*, 731 F. App'x at 671, do not suffice, neither do suggestions and discussions

about a potential motion or stipulation.  Brophy waived his right to a Rule 50 motion, pure and simple.

**B.      Merits**

The untimeliness of Brophy's Rule 50 is reason enough to deny it.  But the motion also wants for substantive merit.  Brophy seeks judgment as a matter of law despite the jury having heard competing evidence on a variety of issues the determination against Brophy on any one of which would justify the jury's verdict.  This, a court cannot—and the Court will not—grant.

A party seeking judgment as a matter of law has a "very high" standard to meet. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002), *aff'd sub nom. Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).  A court may enter judgment as a matter of law only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [prevailing] party" as to "an issue" on which that party "has been fully heard" during trial.  Fed. R. Civ. P. 50(a)(1).  The jury's verdict must be upheld if, viewing the facts in the light most favorable to the nonmoving party, there is substantial evidence for a reasonable jury to have found in the nonmoving party's favor.  *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  "'Substantial evidence' is evidence that a reasonable mind might accept as adequate to support a conclusion." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 992 (9th Cir. 2007) (citation omitted). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  *See Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (citation omitted).  The "high hurdle" that this standard creates "recognizes that credibility, inferences, and factfinding are the province of the jury, not this court."  *Costa*, 299 F.3d at 859.

Two of Brophy's claims—on common law and statutory misappropriation—have overlapping elements.  The common law claim requires a plaintiff to prove "(1) the defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."  *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413–14 (9th Cir. 1996) (citation omitted).  The statutory claim requires a plaintiff to prove that the defendant (1) "knowingly use[d] . . . , in any manner," (2) the plaintiff's "name, voice, signature, photograph, or likeness" (3) "on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of" the same (4) "without such person's prior consent."  Cal. Civ. Code. § 3344(a).  Thus, to succeed, "a plaintiff must prove all the elements of the common law cause of action," plus the "knowing use by the defendant" and "a direct connection between the alleged use and the commercial purpose."  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

False light, meanwhile, requires a plaintiff to prove that the defendant (1) made a public disclosure, *see Fellows v. Nat'l Enquirer, Inc.*, 721 P.2d 97, 99 (Cal. 1986), that (2) put the plaintiff a false light, i.e., "declar[ing] or impl[ying] a provably false assertion of fact," *Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 253 (Cal. Ct. App. 2017) (citation omitted) (discussing defamation); *see also id.* at 256 (noting that a false light claim is "in substance equivalent to a libel" or defamation claim and thus "stands or falls" with one (citations omitted)), (3) "would be highly offensive to a reasonable person," *id.* at 256, and (4) caused the plaintiff harm, *see Balla v. Hall*, 273 Cal. Rptr. 3d 695, 728 (Cal. Ct. App. 2021) ("Defamation requires . . . injury to reputation . . . ."), (5) with negligence regarding the falsity of the declared or implied fact, *see Kawar v. Globe Int'l, Inc.*, 965 P.2d 696, 708 (Cal. 1998) (noting that "a negligence standard" applies "for private figure plaintiffs seeking compensatory damages in defamation actions").

Considering the evidence in the light most favorable to Defendants, the jury had an ample basis for its verdict. For example, the jury could have reasonably concluded that the back tattoo on the model on the mixtape cover at issue in this suit was not sufficiently identifiable with Brophy to constitute misappropriation of his likeness or depiction in a false light. Because the model's face is not visible, identification based on facial appearance is impossible. (*See* Dkt. 229 [Jury Instructions] at 13 [displaying the mixtape cover]; Dkt. 251 [October 19, 2022, Transcript, hereinafter "Tr. 10/19"] at 81:4–6, 82:12–14 [testimony of Kevin Michael Brophy].) Brophy and Kleonard "Shaft" Raphael, Cardi B's former manager, testified that the model appears non-White with black hair while Brophy is White and has a shaved head. (*See* Tr. 10/19 at 81:7–17, 82:5–11 [testimony of Kevin Michael Brophy]; Dkt. 252 [October 20, 2022, Transcript, hereinafter "Tr. 10/20"] at 11:21–12:2 [testimony of Raphael].) Brophy also has several neck tattoos, which did not appear on the model's neck. (*See* Tr. 10/19 at 82:25–83:4 [transcript of Kevin Michael Brophy]; Tr. 10/20 at 12:3–8 [testimony of Raphael].) Further, Brophy's tattoo artist testified that the tattoo at issue, depicting a snake and a tiger, includes common aesthetic and thematic features. (*See* Tr. 10/20 at 228:18–231:11 [testimony of Tim Hendricks].) All this evidence supports a reasonable conclusion that, despite any contrary evidence that Brophy adduced, the model's tattoo was not sufficiently identifiable with Brophy. *See Abdul-Jabbar*, 85 F.3d at 416 (noting that whether the use of a variation of a name or likeness is sufficiently identifiable with a plaintiff "is a question for the jury").

The jury also could have reasonably found that Brophy suffered no harm. Brophy testified that neither he nor any member of his family sought treatment from a psychiatrist or psychologist or marital or family counseling for the alleged humiliation, embarrassment, and mental distress. (*See* Tr. 10/19 at 98:21–100:5.) Brophy's employer has been supportive and continues to send him to exotic destinations for functions related to his surf-marketing job. (*See id.* at 100:23–101:11.) He is happily married to his wife,

Lindsay, who also testified to the strength of their relationship, and their eldest child, who saw the mixtape cover once, never mentioned it to Brophy again. (*See id.* at 63:21–65:7 [testimony of Kevin Michael Brophy]; *id.* at 149:1–4 [testimony of Lindsay Brophy]; Dkt. 250 [October 18, 2022, Transcript, hereinafter "Tr. 10/18"] at 201:2–5 [testimony of Kevin Michael Brophy].) Indeed, according to Brophy, from when he first saw the mixtape cover until he filed his suit, no one (other than his tattoo artist) approached him to mention the tattoo's presence on the mixtape cover. (*See* Tr. 10/19 at 98:1–98:13.)

Other than the elements of liability on Brophy's claims, the transformative use defense that the jury considered further bears on the propriety of its verdict. This defense is "a balancing test between the First Amendment and the right of publicity based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere . . . likeness or imitation." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 799 (Cal. 2001). The test asks "whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* at 808 (citations omitted). If a plaintiff's "likeness is one of the 'raw materials' from which an original work is synthesized," it is more likely transformative, but if "the depiction or imitation of the [plaintiff] is the very sum and substance of the work in question," it is not likely so. *Id.* at 809. "[T]he quality of the artistic contribution" is neither here nor there; the focus is more on "quantitative than qualitative" factors, "asking whether the literal and imitative or the creative elements predominate in the work." *Id.* Another helpful "subsidiary inquiry" is whether "the marketability and economic value of the challenged work derive primarily from the [likeness] depicted." *Id.* at 810. "When the value of the work comes principally from some source other than the [plaintiff]—from the creativity, skill, and reputation of the artist—it may be presumed that sufficient transformative elements are present . . . ." *Id.*

The jury could have reasonably believed that any use of Brophy's likeness in the mixtape cover was transformative. The graphic artist who created the cover testified to several technical editing processes that he used in incorporating the image of Brophy's tattoo that he retrieved from the internet into the cover, such as adding curvature, re-skewing, darkening, color correction, repositioning, disassembly, and reassembly. (*See* Tr. 10/20 at 171:14–172:7 [testimony of Timothy Gooden].) Most importantly, Brophy's tattoo played a minor role in what was a larger visual commentary on sexual politics. Brophy's tattoo was but one tattoo on the back of the model, who was himself but one part of a suggestive portrayal of a man with his head between Cardi B's legs while she was in the backseat of a vehicle and drank an alcoholic beverage. (*See* Jury Instructions at 13.) The purpose, Cardi B testified, was to show her in control, reversing traditional gender roles. (*See* Tr. 10/19 at 203:10–21, 209:4–210:19.) Additionally, when viewing the evidence in the light most favorable to Defendants, it is hard to see how the cover's economic value derived at all from Brophy's tattoo. Despite any contrary evidence that Brophy presented, the jury was within reason to find that the use of the tattoo was transformative. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2010) (noting that a plaintiff "is only entitled to the defense as a matter of law if no trier of fact could reasonably conclude that [a use] was not transformative" and that applying the defense is generally "a question of fact" for the jury).

In short, reasons abound to sustain the jury's verdict of not liable on all claims. A finding in favor of Defendants and against Brophy on an element of liability or on the transformative use defense would suffice. The jury heard competing evidence on several issues bearing on the elements and that defense, and the jury acted within reason in reaching its verdict. It is not for this Court to second-guess the verdict now.

//

//

//

1

**III.    CONCLUSION**

2

3

For the foregoing reasons, Plaintiff's motion is **DENIED**.

4

5

6

DATED:      December 28, 2022

7

8

CORMAC J. CARNEY

9

UNITED STATES DISTRICT JUDGE