A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Lawrence J. Conlan (CSB No. 221350)
lconlan@cappellonoel.com
Richard Lloyd (CSB 332101)
rlloyd@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone:  (805) 564-2444
Facsimile:   (805) 965-5950
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| KEVIN MICHAEL BROPHY, JR., an individual, <br><br> Plaintiff, <br><br> v. <br><br> BELCALIS ALMANZAR aka CARDI B, an individual; KSR GROUP, LLC, a New York limited liability company; WASHPOPPIN, INC., a New York corporation; and DOES 1-20, inclusive, <br><br> Defendants. | **Case No. 8:17-cv-01885-CJC(JPRx)** <br><br><br> **PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO FRCP RULE 59** <br><br> Judge:      Hon. Cormac J. Carney <br><br> Date:       April 10, 2023 <br> Time:       1:30 p.m. <br> Courtroom:  9B |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** on April 10, 2023 at 1:30 p.m., or soon thereafter as this matter may be heard before The Honorable Cormac J. Carney, Courtroom 9B, United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, Plaintiff by and through his attorneys of record herein, will move this Court for an order granting a new trial pursuant to Federal Rules of Civil Procedure, Rule 59.

Plaintiff's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declarations of A. Barry Cappello, Lawrence J. Conlan and attached exhibits, the oral argument of counsel, and any such matters the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place by agreement of counsel on January 19, 2023.

Dated:  January 25, 2023          **CAPPELLO & NOËL LLP**

*/s/  Lawrence J. Conlan*
A Barry Cappello
Lawrence J. Conlan
Richard Lloyd

Attorneys for Plaintiff

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Lawrence J. Conlan (CSB No. 221350)
lconlan@cappellonoel.com
Richard Lloyd (CSB 332101)
rlloyd@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone:  (805)564-2444
Facsimile:   (805)965-5950
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| KEVIN MICHAEL BROPHY, JR., an individual,<br><br>Plaintiff,<br><br>v.<br><br>BELCALIS ALMANZAR aka CARDI B, an individual; KSR GROUP, LLC, a New York limited liability company; WASHPOPPIN, INC., a New York corporation; and DOES 1-20, inclusive,<br><br>Defendants. | **Case No. 8:17-cv-01885-CJC(JPRx)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO FRCP RULE 59**<br><br>Judge:      Hon. Cormac J. Carney |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................4

TABLE OF AUTHORITIES .....................................................................5

I.      INTRODUCTION .......................................................................8

II.     RELEVANT FACTs.....................................................................9

    A.   Prior to trial, the Court confirmed that no further pretrial motions would be permitted, and each party would have two opportunities to examine each witness. ..............................................9

    B.   In the middle of trial, Defendants made a surprise and untimely oral motion in limine to exclude Almanzar's Atlanta testimony, which was granted without an adequate examination of the disputed evidence..............................................................11

    C.   Plaintiff was denied the right to cross-examine Almanzar following her direct testimony.........................................................11

    D.   The evidence at trial proved Defendants' liability and Plaintiff's harm. ..............................................................13

III.    ARGUMENT ............................................................................15

    A.   Legal standard for a new trial under Rule 59. ................................15

    B.   The summary denial of Plaintiff's right to cross-examine Almanzar was *per se* prejudicial error requiring a new trial. .........15

    C.   It was prejudicial error to exclude the Atlanta Trial testimony based on Defendants' untimely motion in limine...........................18

    D.   The jury's verdict was against the weight of evidence at trial, requiring a new trial..........................................................22

    E.   Defendants' misconduct at trial was a deliberate strategy to frustrate Plaintiff's presentation of his case and improperly influence the jury .......................................................27

    F.   Taken as a whole, the cumulative effect of the above legal errors and witness misconduct deprived Plaintiff of a fair trial and a new trial should be ordered. ....................................28

IV.     CONCLUSION ........................................................................28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3 *Acton v. Merle Norman Cosmetics, Inc.*,
   163 F.3d 605 (9th Cir. 1998) ........................................................................24

4 *Alford v. United States*,
   282 U.S. 687, 691 (1931)........................................................................8, 16
5
*California v. Green*
6   399 U.S. 149, 158 (1970)..................................................................................18

7 *Dean v. Trans World Airlines Inc.*,
   924 F.3d 805, 812 (9th Cir. 1991) ................................................................15

8 *Dedge v. Kendrick*,
   849 F.2d 1398 (11th Cir. 1988) ...................................................................19

9 *Degolos v. Fidelity & Cas. Co. of New York*,
   313 F.2d 809, 812 (5th Cir. 1963) ................................................................16
10
*Deters v. Equifax Credit Information Services, Inc.*,
11   202 F.3d 1262 (10th Cir. 2000) ....................................................................21

12 *Douglas v. Owens*,
   50 F.3d 1226, 1230, fn. 6 (3rd Cir. 1995)....................................................16

13 *El-Hakem v. BYJ, Inc.*,
   415 F.3d 1068, 1077 (9th Cir. 2005) ............................................................19

14 *Francis v. Clark Equipment Co.*,
   993 F.2d 545, 550 (6th Cir. 1993) ................................................................16
15
*Goldberg v. Kelly*,
16   397 U.S. 254, 269 (1970)..............................................................................16

17 *Harper v. City of Los Angeles*,
   533 F.3d 1010, 1030 (9th Cir. 2008) ............................................................18

18 *Harries v. United States*,
   350 F.2d 231, 236 (9th Cir. 1965) ............................................................8, 16
19
*In re George G,*
20   68 Cal. App. 3d 146, 157 (Ct. App. 1977) ...................................................16

21 *Jerden v. Amstutz*,
   430 F.3d 1231, 1241 (9th Cir. 2005) ............................................................28

22 *K.J.P. v. County of San Diego*,
   2022 WL 17494968 (S.D. Cal. Aug. 17, 2022)............................................18

23 *Kehr v. Smith Barney*,
   736 F.2d 1283, 1286 (9th Cir. 1984) ............................................................27

24 *Killian v. Poole*,
   282 F.3d 1204, 1211 (9th Cir. 2002) ............................................................15
25
*Landes Constr. Co., Inc. v. Royal Bank of Canada.*,
26   833 F.2d 1365, 1371–72 (9th Cir.1987) ......................................................22

27 *McCarthy v. Mobile Cranes, Inc.*,
   199 Cal. App. 2d 500, 509-510 (Ct. App. 1962) ..........................................16

28 *McNeill v. Butz*,
   480 F.2d 314, 321 (4th Cir. 1973) ............................................................8, 16

5

*Millenkamp v. Davisco Foods Intern. Inc.*,
  562 F.3d 971, 976-977 (9th Cir. 2009)..............................................15

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724, 729 (9th Cir.2007) ......................................................15

*Montgomery Ward & Co. v. Duncan*,
  311 U.S. 243, 251 (1940)...................................................................27

*Murphy v. City of Long Beach*,
  914 F.2d 183, 187 (9th Cir. 1990) .....................................................22

*Obrey v. Johnson*,
  400 F.3d 691, 701 (9th Cir. 2005) .....................................................18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...........................................................26

*Perry v. Brown*,
  No. CV 18-9542-JFW(SSx),
  2019 WL 6888048 at *1 (C.D. Cal. June 11, 2019)...........................19

*Resurrection Gold Min. Co. v. Fortune Gold Min. Co.*,
  129 F. 668 (8th Cir. 1904)..................................................................16

*Settlegoode v. Portland Pub. Sch.*,
  371 F.3d 503, 516–17 (9th Cir. 2004) ...............................................27

*U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*,
  768 F.2d 1099, 1104 (9th Cir. 1985) .................................................19

*U.S. v. Moran*,
  493 F.3d 1002, 1014 (9th Cir. 2007) .................................................20

*United States v. Boulware*,
  384 F.3d 794, 808 (9th Cir. 2004) .....................................................22

*United States v. Caudle*,
  606 F.2d 451, 458 (4th Cir. 1979) ................................................8, 17

*United States v. Curtin*,
  489 F.3d 935, 958 (9th Cir. 2007) .....................................................21

*United States v. de Cruz*,
  82 F.3d 856, 868 (9th Cir. 1996) .......................................................15

*United States v. Fleming*,
  215 F.3d 930, 939 (9th Cir. 2000) .....................................................21

*United States v. Jones*,
  982 F.2d 380, 384 (9th Cir. 1992) ................................................8, 17

*United States v. Jorgenson*,
  451 F.2d 516, 520 (10th Cir. 1971) ...................................................16

*United States v. McElmurry*,
  776 F.3d 1061, 1069 (9th Cir. 2015) .................................................21

*United States v. Monzon-Silva*,
  791 Fed.Appx. 671, 672 .....................................................................21

*United States v. Osazuwa*,
  564 F.3d 1196, 1175 (9th Cir. 2009) .................................................17

*United States v. Price*,
  577 F.2d 1356, 1364 (9th Cir. 1978) .................................................16

6

*Wiedemann v. Galiano,*
  722 F.2d 335, 337 (7th Cir. 1940) ..............................................................27, 28

**California Statutes**

Civil Code, section 3344.........................................................................................25

**Federal Statutes**

Fed. R. Civ. P.  611(c)(2) ......................................................................................15
Fed. R. Civ. P. 59(a) ...............................................................................................15
Fed. R. Evid. 402 ....................................................................................................21
Fed. R. Evid. 403 .........................................................................................18, 20, 21
Fed. R. Evid. 404(a) ...............................................................................................15
Fed. R. Evid. 607 ....................................................................................................18
Fed. R. Evid. 801(d)(2) ..........................................................................................20

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO
FRCP RULE 59

## I.    **INTRODUCTION**

Federal Rule of Civil Procedure 59 authorizes the Court to vacate a judgment and order a new trial where prejudicial errors of law were committed, when the verdict is against the weight of the evidence, and when the cumulative effect of those factors resulted in an unfair trial.

In this case, two significant prejudicial errors of law occurred during trial. First, Plaintiff was deprived of his fundamental and substantial right to cross-examine Cardi B at trial.  Defendants were permitted to elicit testimony from her on direct examination, and Plaintiff was not permitted to cross-examine her, leaving the credibility of a key party witness to remain unchallenged and unimpeached.  As explained below, when the right to cross-examine has been denied, or even unduly restricted, harm is presumed, the prejudice is undeniable, and new trial is required. *Alford v. United States*, 282 U.S. 687, 691 (1931) (reversing Ninth Circuit affirmation of trial court's order limiting cross-examination and remanding for new trial); see also *McNeill v. Butz*, 480 F.2d 314, 321 (4th Cir. 1973); *United States v. Price*, 577 F.2d 1356, 1364 (9th Cir. 1978); *United States v. Caudle*, 606 F.2d 451, 458 (4th Cir. 1979) (reversing and remanding for new trial); *United States v. Jones*, 982 F.2d 380, 384 (9th Cir. 1992) (reversing and remanding for new trial, holding recross must be allowed to probe new matters elicited on redirect).

Second, Defendants made an untimely, surprise oral motion in limine to exclude crucial and relevant testimony of Cardi B from a defamation trial which took place in federal court in Atlanta, Georgia in January 2022.  The claims in that case, in which Cardi B, as a plaintiff, sued for false statements made about her on the internet, are strikingly similar to the claims in this case.  Plaintiff sought to examine Cardi B on her sworn testimony regarding the alleged injury she suffered due to the way she was being publicly portrayed.  The Court granted Defendants' oral motion, without reviewing the testimony Plaintiff sought to present and which Defendants sought to exclude.  The exclusion was in error, and substantially

1  prejudiced Plaintiff's presentation of his case.

2          Additionally, over the course of the trial, abundant evidence was presented

3  demonstrating that Defendants knowingly misappropriated Plaintiff's likeness, that

4  Plaintiff did not consent to that misappropriation, and that Plaintiff suffered

5  significant harm.   Despite this evidence, the jury delivered a verdict for

6  Defendants.  The jury's verdict was against the weight of evidence, and a new trial

7  is warranted.

8          Finally, the conduct of Cardi B on the witness stand not only prompted

9  prejudicial error in denying cross-examination, but also substantially and

10 prejudicially impacted Plaintiff's presentation of his case.  Whether viewed

11 independently or taken as a whole, the above errors and conduct of a Defendant

12 party witness rendered the trial fundamentally unfair to Plaintiff, and a new trial

13 should be ordered.

14 **II.    RELEVANT FACTS**

15         **A. Prior to trial, the Court confirmed that no further pretrial motions**
16             **would be permitted, and each party would have two opportunities**
               **to examine each witness.**

17         On June 9, 2020, the Court issued a Scheduling Order setting the Pretrial

18 Conference date, *including hearing of motions in limine*, as October 5, 2020, and

19 the date of the commencement of jury trial as October 13, 2020.  Dkt. No. 78[1].

20 Defendants ultimately filed their motions in limine, two of which the Court denied

21 on January 12, 2022.  Dkt. 171.

22         At the July 18, 2022 pre-trial conference, the Court advised the parties of its

23 "two-examination" rule, that each party would have "two shots" at each witness:

24 //

25 //

26 _____

27 [1] The Court's procedures also state that all motions in limine will be heard at the
   pretrial conference, and all motions in limine must be in writing with sufficient
28 notice pursuant to Local Rule 6-1.  See https://www.cacd.uscourts.gov/honorable-
   cormac-j-carney at ¶ 12.

1
2
3
4
5

> The two-examination rule, there's -- that's the only rule
> that I have that's carved in stone. Direct, cross, redirect,
> recross, that's it. And let's not call any witness twice. So
> whether it's the plaintiff's witness or the defense witness,
> ask all your questions during the direct, redirect, cross or
> recross.
> [. . . ]
> **I'm not going to limit you on issues**. I'm just saying you
> only got **two shots at each witness**. Cover it.

6
7

Declaration of Lawrence J. Conlan ISO Motion for New Trial ("Conlan

Decl."), Ex. 1 [Jul. 18, 2022 Tr.] at 61:17-22; 62:25-63:2 (emphasis added).

8
9
10

When Defendants raised the issue of potential further pre-trial motions at a

rescheduled August 17, 2022 pre-trial conference, the Court confirmed no further

pretrial motions would be permitted:

11
12

> Let me stop you. **All pretrial motions, done**. So the
> defendants are going to have to live with whatever Mr.
> Dowling did.

13

Conlan Decl., Ex. 2 [Aug. 17, 2022 Tr.] at 17:6-8 (emphasis added).

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Relying on the Court's rulings and published procedures, Plaintiff understood

that no further motions in limine could be filed, and prepared for trial on that basis.

Declaration of A. Barry Cappello ("Cappello Decl.") ¶ 10.  Plaintiff had been

monitoring the Defendant Belcalis Almanzar aka Cardi B's defamation case in

Atlanta, Georgia, including the trial which took place in January 2022 (the "Atlanta

Trial") which was tried by her trial counsel in this action.  *Id.* ¶ 11.  Plaintiff did so,

in order to use her sworn testimony regarding her alleged emotional distress-type

harm, including for impeachment.  *Id.* at ¶¶ 11-12.  The Atlanta Trial involved

defamation claims brought by Almanzar, and sworn testimony by her regarding the

harm she and her family had allegedly suffered due to false statements being made

about her.  Because of the striking parallel between Almanzar's claims and alleged

injuries in the Atlanta Trial, and Plaintiff's claim and injuries in this action,

Plaintiff's planned examination of Almanzar involved the use of several excerpts of

Almanzar's sworn testimony.  See *id.* at ¶ 12, Exh. 1.

28

//

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO
FRCP RULE 59

**B. In the middle of trial, Defendants made a surprise and untimely oral motion in limine to exclude Almanzar's Atlanta testimony, which was granted without an adequate examination of the disputed evidence.**

Plaintiff specifically referred to Defendants' testimony from the Atlanta Trial in his opening statement:

> Now, as part of my cross-examination of Ms. Almanzar, she's going to tell you, I believe, just how harmful and how stressful and how much anxiety can be caused when somebody accuses you publicly and puts it on the Internet of wrongful sexual conduct. She'll tell you it's even worse that when you confront that person and you refuse to take it down, and you confront them time and again and they don't take it down. And she will tell you how she suffered because of that.

Conlan Decl., Ex. 3 [Oct. 18, 2022 Tr.] at 168:20-169:2.

Defendants did not object during or after the opening statement; following the first day of trial, or during the morning of the second day of trial. Cappello Decl. ¶ 14; see also Conlan Decl. ¶ 2.

It was only shortly before Plaintiff was ready to call Almanzar to the stand in this action, that Defendants made a surprise oral motion to exclude *any* use of Almanzar's sworn testimony from the Atlanta Trial. Conlan Decl., Ex. 4 [Oct. 19, 2022 Tr.] at 141:2-143:6.   After hearing brief argument, and without reviewing the disputed testimony, the Court acknowledged the potential relevance of the proffered evidence but broadly excluded the use of Almanzar's Atlanta Trial testimony. *Id.* at 147:18-23.

**C. Plaintiff was denied the right to cross-examine Almanzar following her direct testimony.**

When Plaintiff called Almanzar, to the stand, it was clear she had no interest in answering the questions posed, and instead engaged in a variety of theatrics. Almanzar refused to answer simple questions, repeatedly veered off-topic and disclosed privileged and confidential mediation communications.  See generally *id.* at 206:11-207:22; 210:20-212:24

//

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO FRCP RULE 59

In an attempt to restrain Almanzar's theatrics and encourage her to answer questions being posed, Plaintiff's counsel asked her to respect the time of the jury and everyone else in the courtroom.  Defendants' counsel responded with an objection "to that admonition" and an accusation: "I mean, this is counsel's party and this is what he's doing."  The Court sustained the objection and Plaintiff's counsel responded "[i]t's not my party if it's coming from there. That's canned testimony." *Id.* at 211:19-213:12.

The Court then halted proceedings and excused the jury.  Outside of the presence of the jury, the Court presented several scenarios on how it might address the interruption, but did not allow argument. *Id.* at 214:1-9.

After a short recess, the Court returned and imposed time limits on the remaining examination of Almanzar.

> All right. Here's how I'm going to proceed. And I know neither side is going to be happy with it. I'm going to put time limits on the examinations. The plaintiffs have 30 minutes more of cross-examination. Ma'am, you're going to need to answer any question with a "yes" or "no" or "I can't answer that question 'yes' or 'no.'" And if Mr. Cappello wants an explanation why you can't answer it "yes" or "no," then he'll ask you.
>
> Then, Mr. Anderson, after the cross-examination is done in a half hour, you have one hour. And, obviously, you don't ask leading questions. But at the same time, it's an hour. I feel these time limits are appropriate under Rule 611.

*Id.* at 214:12-25.

The Court did not state that no cross-examination would be permitted by Plaintiff, after Defendants had finished their direct examination.  Plaintiff's counsel resumed Almanzar's examination, but curtailed it to reserve sufficient time after Defendants' direct examination, and then yielded to Defendants.  Plaintiff understood there would be an opportunity for cross-examination following Defendants' examination, as the law requires, and consistent with the Court's instruction at the prior pre-trial conference, that "two shots at each witness" would

be permitted. See *id.* at 217:15-227:18; Cappello Decl. ¶ 7.

Defendants' counsel then called Almanzar as part of their own case, which included a number of topics concerning Almanzar's upbringing, family, religious beliefs, early career, and accounting information not prepared by Almanzar concerning royalties from the *Gangsta Bitch* mixtape. See Conlan Decl. Exh. 4 [Oct. 19, 2022 Tr.] at 228:6-242:9.   Much of the testimony that Defendants' counsel solicited from Almanzar was classic character evidence, designed to elicit a sympathetic view of Almanzar and suggest that she follows a positive moral compass.

When Defendants' examination concluded, Plaintiff's counsel stood up to exercise Plaintiff's right to cross-examine the witness.  However, the Court immediately ended the examination, and excused Almanzar from the stand:

> MS. MOORE: I have no further questions, Your Honor.
> THE COURT: Okay.
> MS. MOORE: Thank you.
> THE COURT: **No. We're done.** Ma'am, we're done. You can step down.

*Id.* at 242:5-9; see also Cappello Decl. ¶ 9 [adding context]; Conlan Decl. ¶ 6 [same].

At the end of second day of trial, Plaintiff made a further offer of proof regarding the Court's exclusion of the Atlanta Trial testimony, and highlighted issues raised by Almanzar in her testimony, which Plaintiff was not given the opportunity to rebut.  Conlan Decl. Ex. 4 [Oct. 19, 2022 Tr.] at 268:4-24; see also *id.* at 270:6-16.  The Court declined to reconsider its ruling. *Id.* at 270:24.

### D. The evidence at trial proved Defendants' liability and Plaintiff's harm.

At trial, the jury heard uncontroverted testimony from Plaintiff that his back tattoo was his art, his masterpiece, and is part of his identity. Conlan Decl., Ex. 3 [Trial Transcript ("TT") Day 1] at 186:19-21.  There was also *uncontroverted* testimony from Plaintiff that he never consented to the use of his likeness, and that

he suffered substantial embarrassment and harm from the misuse of his likeness. *Id.* at 189:14-15; 213:21-23; Conlan Decl. Exh. 4 [TT Day 2] at 32:8-11; 39:8-10.

Through a wealth of trial testimony and exhibits admitted into evidence, Plaintiff established that Defendants knew they were using Plaintiff's likeness to advertise their mixtape, whether through actual knowledge or constructive knowledge of their agents. Conlan Decl. Exh. 5 [TT Day 3] at 179:21-24; 187:4-10; Exh. 6 [Trial Exh. 125] ("I copied and pasted directly from google.") and Exh. 7 [Trial Exh. 128] ("The picture(s) of Brophy are present on numerous tattoo websites. . . all the pics I'm seeing of Brophy, including what you sent me, have him standing vertically, with both arms at his sides. In the cover art photo your did, however, the tattoo is transposed onto the back of the original model. . .")

Notably, Defendants did not argue at trial that Timm Gooden, who photoshopped Plaintiff's likeness onto the mixtape cover for Defendants, was acting outside the scope of his authority. Nor did they argue that Mr. Dowling, Defendants' attorney, was acting outside the scope of this authority when he readily identified Plaintiff's likeness.  The undisputed evidence showed Defendants knew they were using Plaintiff's actual likeness, and continued to use it over Plaintiff's objection, despite receiving a cease-and-desist letter from Plaintiff and their subsequent defense against Plaintiff's lawsuit.

Finally, even setting aside Plaintiff's uncontradicted and compelling testimony regarding the harm he suffered, California Civil Code section 3344 serves as a substitute for proof of damages.  Upon a showing of knowing use of a person's likeness without consent, the statute authorizes the greater of seven hundred fifty dollars ($750) or the actual damages suffered. Cal. Civ. Code § 3344(a).

The jury's verdict for Defendants cannot be reconciled with the evidence that Defendants used Brophy's likeness without his prior consent—all that is needed for Brophy to prevail on his Section 3344 claim.

# III.   ARGUMENT

### A. Legal standard for a new trial under Rule 59.

A motion for a new trial pursuant to Rule 59 may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a). These reasons include, but are not limited to, claims "that the verdict is against the weight of the evidence. . .or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir.2007).

A new trial may also be granted based on errors of law during trial, including erroneous evidentiary rulings that affect a party's substantial rights and result in prejudice. *Millenkamp v. Davisco Foods Intern. Inc.*, 562 F.3d 971, 976-977 (9th Cir. 2009); see also *Dean v. Trans World Airlines Inc.*, 924 F.3d 805, 812 (9th Cir. 1991) (reversing and remanding for new trial after trial court erroneously excluded admissible impeachment evidence).

Finally, "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002), quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996).

### B. The summary denial of Plaintiff's right to cross-examine Almanzar was *per se* prejudicial error requiring a new trial.

Plaintiff called Almanzar as a hostile witness on direct.  See FRE 611(c)(2). Plaintiff therefore did not use certain evidence, including evidence of bad character, but would have, if Defendants "opened the door" in Almanzar's own testimony. See FRE 404(a).   But after Defendants did open the door on their own direct examination by introducing evidence of "good character", the Court refused to allow Plaintiff's cross-examination of the witness.  This fundamental denial of due process and impairment of a substantial right requires a new trial.

//

"Cross-examination of a witness is a matter of right." *Alford v. United States*, 282 U.S. 687, 691 (1931); see also *Harries v. United States*, 350 F.2d 231, 236 (9th Cir. 1965) (right to cross-examine witnesses "fundamental in our judicial system."). The right to cross-examine witnesses applies equally in both criminal and civil cases.  See *McNeill v. Butz*, 480 F.2d 314, 321 (4th Cir. 1973) ("In various civil settings, the Supreme Court has stressed the critical nature of the right to confront and cross-examine adverse witnesses."), citing *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970); see also *Douglas v. Owens,* 50 F.3d 1226, 1230, fn. 6 (3rd Cir. 1995).

As the Supreme Court explained in *Alford*, the right to cross-examination is so fundamental that if denied, harm is presumed:

> "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what fact a reasonable cross-examination might develop. <u>Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them</u>. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, <u>is to deny a substantial right and withdraw one of the safeguards essential to a fair trial</u>.  In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony."

*Alford*, 282 U.S. at 692, emphasis added and citations omitted.

The Ninth Circuit has similarly held that denial of cross-examination is *per se* harmful error.  See *United States v. Price*, 577 F.2d 1356, 1364 (9th Cir. 1978) ("Obviously, the denial of all right of cross-examination cannot be harmless.")[2].

---

[2] Multiple circuits and California appellate courts have also recognized that the denial of cross-examination is *per se* harmful error.  See *Douglas v. Owens*, 50 F.3d 1226, 1231 (3rd Cir. 1995); *Francis v. Clark Equipment Co.*, 993 F.2d 545, 550 (6th Cir. 1993); *Degolos v. Fidelity & Cas. Co. of New York*, 313 F.2d 809, 812 (5th Cir. 1963); *United States v. Jorgenson*, 451 F.2d 516, 520 (10th Cir. 1971) *Resurrection Gold Min. Co. v. Fortune Gold Min. Co.*, 129 F. 668 (8th Cir. 1904); see also *In re George G*, 68 Cal. App. 3d 146, 157 (Ct. App. 1977) *McCarthy v. Mobile Cranes, Inc.*, 199 Cal. App. 2d 500, 509-510 (Ct. App. 1962) (complete denial of cross-examination is prejudicial error under the California Constitution).

Whether viewed as a denial of cross-examination or re-cross, the denial of Plaintiff's right to cross-examine Ms. Almanzar after Defendants' examination took place was prejudicial error.   "To deny recross examination on matter first drawn out on redirect is to deny the defendant the right of any cross-examination as to that new matter. The prejudice of the denial cannot be doubted." *United States v. Caudle*, 606 F.2d 451, 458 (4th Cir. 1979) (reversing and remanding for new trial because "trial court lacks discretion to curtail cross-examination until after questioner has had reasonable chance to pursue matters raised on direct"); see also *United States v. Jones*, 982 F.2d 380, 384 (9th Cir. 1992) (reversing and remanding for new trial, holding recross must be allowed to probe new matters elicited on redirect).

While no harm need be shown, the denial of Plaintiff's right to cross-examination, in fact, materially prejudiced Plaintiff.  Indeed, Defendants introduced significant testimony from Almanzar—a party and key witness—without any opportunity for Plaintiff to rebut or challenge that same testimony or impeach Almanzar's credibility.   This included otherwise impermissible "good character" evidence, which "opened the door" to contrary impeachment evidence.

For example, in a sidebar prior to commencing their direct examination, Defendants requested (in another surprise motion in limine), and Plaintiff stipulated, not to inquire into Almanzar's prior gang membership.  Conlan Decl. ¶ 4 [Oct 19, 2022 Tr.] at 174:21-24.  But thereafter, Defendants  "opened the door" to character evidence by eliciting testimony about Ms. Almanzar's religious faith, and her commitment to her family and community.  Questions about her gang membership, and other questions concerning Ms. Almanzar's other bad acts and criminal conduct to which she had not moved in limine to exclude, should therefore have been "fair game".  See e.g. *United States v. Osazuwa*, 564 F.3d 1196, 1175 (9th Cir. 2009) (A party can "introduce otherwise inadmissible evidence when defendant 'opens that door' by introducing potentially misleading testimony");

*K.J.P. v. County of San Diego*, 2022 WL 17494968 (S.D. Cal. Aug. 17, 2022) (prior bad acts evidence properly admitted for impeachment under FRE 607).  Plaintiff similarly was unable to impeach Almanzar's direct testimony about her commitment to her family with a prior sworn declaration in this case, when she sought to delay trial, purportedly for family reasons, only to jet off to Paris for fashion week once the trial was continued.

Denying Plaintiff his fundamental right to cross-examine Almanzar deprived the jury of the "greatest legal engine ever invented for the discovery of truth." *California v. Green* 399 U.S. 149, 158 (1970).  The jury was therefore unable to fully evaluate Almanzar's credibility and the testimony of a key witness.  Denial of cross-examination was prejudicial error, requiring a new trial.

### C. It was prejudicial error to exclude the Atlanta Trial testimony based on Defendants' untimely motion in limine.

To merit a new trial based on the erroneous exclusion of evidence, a party must show the evidentiary ruling was erroneous, and that the exclusion "substantially prejudiced" that party.  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).   Erroneous exclusion of evidence yields a "presumption of prejudice."   *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005).

To avoid a new trial, the party benefiting from the error must show it is "more probable than not that the jury would have reached the same verdict."  *Id.* (erroneous exclusion of evidence "directly probative of central issues in dispute" was abuse of discretion requiring reversal).

It was prejudicial error to exclude the Atlanta Trial evidence on FRE 403 grounds, without examining the actual evidence proffered in response to Defendants' untimely oral motion in limine.  This error requires a new trial.

//

//

//

### 1. Defendants' oral motion in limine to exclude the Atlanta Trial testimony was untimely and highly prejudicial to Plaintiff's presentation of his case

A pretrial order controls the subsequent course of the action unless modified "upon a showing of good cause" *El-Hakem v. BYJ, Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005); see also Fed. R. Civ. P. 16(b)(4).   Failure to comply with the pretrial order alone justifies denial of a motion.  See e.g. *Perry v. Brown*, No. CV 18-9542-JFW(SSx), 2019 WL 6888048 at *1 (C.D. Cal. June 11, 2019) (denying late-filed motion in limine as untimely); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (trial court properly denied motion as untimely based on failure to seek modification of pre-trial order); see also *Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1988) (affirming denial of motion as untimely under pretrial order).

Here, the Court's pretrial order and published procedures require all motions in limine to be heard at the pretrial conference[3].  Dkt. 78.  The Court reaffirmed this requirement prior to trial, when it advised Defendants' newly-retained counsel that "All pretrial motions are done."  Conlan Decl. Exh 2. [Aug. 17, 2022 Tr.] at 17:6-7.

Despite the Court's rulings and published procedures, Defendants sandbagged Plaintiff with a surprise last-minute oral motion in limine to exclude any testimony by Almanzar in the Atlanta Trial.  Cappello Decl. ¶ 15; Conlan Decl. ¶ 2; see also Conlan Decl. Exh. 4 [Oct. 19 2022 Tr.] at 140:23-147:23; 267:24-270:24.  Defendants made no effort to meet and confer prior to bringing their motion, no notice was provided to Plaintiffs prior to Defendants bringing their motion, and no explanation was provided by Defendants for their delay.  Cappello Decl. ¶ 14; Conlan Decl. ¶ 2; see also Conlan Decl. Exh. 4 [Oct. 19 2022 Tr.] at

---

[3] https://www.cacd.uscourts.gov/honorable-cormac-j-carney at ¶ 12 ("All Motions in Limine will be heard at the Pre-Trial Conference. All Motions in Limine must be filed and served in compliance with Local Rule 6-1 ("Unless otherwise provided by rule or order of the Court, no oral motions will be recognized and every motion shall be presented by written notice of motion").

143:8-14.  Notably, Almanzar's trial counsel in the Atlanta Trial, Lisa Moore, was also Almanzar's trial counsel in this action, and Defendants well-knew exactly how Almanzar had testified in that action.

As a result, Plaintiff had limited ability to respond to Defendants' contentions seeking exclusion.  See Conlan Decl. Exh. 4 [Oct. 19, 2022 Tr.] at 140:23-147:23; 267:24-270:24 [identifying prejudice].  Granting Defendants' motion created a glaring void in Plaintiff's trial strategy, and diminished his credibility in the eyes of the jury (having referred to evidence in his opening statement that could not be used).  See Conlan Decl. Exh. 3 [Oct. 18, 2022 Tr.] at 168:20-169:3 [previewing in opening statement Almanzar sworn testimony].   The prejudice caused by Defendants' litigation tactic is clear, and Defendants' motion should have been denied on the ground of untimeliness, alone.

### 2. The exclusion of all Atlanta Trial testimony was overly broad, failed to balance the relevant factors and substantially prejudiced Plaintiff.

There is no dispute that Almanzar's Atlanta Trial testimony is admissible as an opposing party statement.  See FRE 801(d)(2).  The Court also conceded that the proffered testimony was relevant, both to the credibility of Almanzar and to issues in this case, such as the harm suffered by Plaintiff.  Conlan Decl. Exh. 4 [Oct 19, 2022 Tr.] at 147:12-23.  However, the Court excluded the testimony on 403 grounds, without explicitly engaging in a balancing of the FRE 403 factors as the law requires.  *Id.* at 147:12-23; see also *U.S. v. Moran*, 493 F.3d 1002, 1014 (9th Cir. 2007) (de novo standard of review applicable where court did not engage in explicit balancing of Rule 403 factors).

In fact, Plaintiff offered to preview the testimony at issue, but the Court excluded the Atlanta Trial testimony without reviewing that evidence at all.  *Id.* at 147:18-23.  This was error.  The Ninth Circuit has held that the exclusion of evidence on FRE 403 grounds without reviewing the evidence is error, and violates a party's right to due process and fair trial.  *United States v. Curtin*, 489 F.3d 935,

958 (9th Cir. 2007) ("We hold *as a matter of law* that a court does not properly

exercise its balancing discretion under Rule 403 when it fails to place on the scales

and *personally examine* and evaluate all that it must weigh.") (emphasis added).

Put simply, "one cannot evaluate in a Rule 403 context what one has not seen

or read." *Id.*; see also *United States v. McElmurry*, 776 F.3d 1061, 1069 (9th Cir.

2015) (holding district court must "read every word" of what will be presented to

the jury and reversing and remanding for new trial with order for district court to

analyze evidence under FRE 403 "with knowledge of what the evidence is").

Finally, the broad exclusion of the Atlanta Trial testimony failed to

appropriately balance the relevant factors, and was in error for that reason alone.

The "default" rule is *all* relevant evidence is admissible.  FRE 402.   The balancing

test of Federal Rule of Evidence 403 strongly favors admissibility, and exclusion is

a disfavored remedy.  FRE 403 (evidence may be excluded only where probative

value *substantially outweighed* by other factors); see also *United States v. Fleming*,

215 F.3d 930, 939 (9th Cir. 2000) ("Rule 403 favors admissibility); *United States v.

Monzon-Silva*, 791 Fed.Appx. 671, 672 (9th Cir. 2020) (exclusion of relevant

evidence is "an extraordinary remedy to be used sparingly").  "In performing the

403 balancing, the court should give the evidence its maximum reasonable

probative force and its minimum reasonable prejudicial value." *Deters v. Equifax

Credit Information Services, Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000).

Here, the Court excluded evidence that was not just relevant, but critical to

Plaintiff's case.  "The more essential evidence is to a party's case, the more

probative it is." *Sowers v. R.J. Reynolds Tobacco Company*, 9745 F.3d 1112, 1122

(11th Cir. 2020).  In excluding the Atlanta Trial testimony, the Court improperly

minimized the probative value of the evidence, and unduly relied on Defendants'

counsel's characterization of the evidence (it would consume too much time to

explain, because it was testimony from a trial in a different state).

//

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO
FRCP RULE 59

1      The Court also erred in failing to consider whether the factors favoring

2   exclusion could be mitigated given Plaintiff's need for the evidence, such as

3   whether a limited portion could be utilized, or a limiting instruction provided.   See

4   Advisory Note to FRE 403 ("In reaching a decision whether to exclude on grounds

5   of unfair prejudice, consideration should be given to the probable effectiveness or

6   lack of effectiveness of a limiting instruction"); *United States v. Boulware*, 384

7   F.3d 794, 808 (9th Cir. 2004) (concerns about undue weight "could have been dealt

8   with by a cautionary instruction", and court "should easily have been able to

9   control" waste of time or confusion of issues).

10      Here, the Court declined to review the testimony excerpts that Plaintiff

11   intended to use, accepted Defendants' characterization of the evidence, and then

12   disallowed all use of Almanzar's testimony from the Atlanta Trial.   The testimony

13   was directly probative of Almanzar's understanding of the harm caused when one is

14   falsely portrayed on the internet, and contradicted her dismissive view of Plaintiff's

15   rights in this action.  The Atlanta Trial testimony went directly to Almanzar's

16   credibility and to a central issue in dispute—the harm suffered by Plaintiff.  *Obrey*,

17   400 F.3d at 702.   The erroneous exclusion was prejudicial, requiring a new trial.

18
19      **D. The jury's verdict was against the weight of evidence at trial,
          requiring a new trial.**

20      A new trial should be ordered where, after giving full respect to the jury's

21   findings, the judge "is left with the definite and firm conviction that a mistake has

22   been committed." *Landes Constr. Co., Inc. v. Royal Bank of Canada*., 833 F.2d

23   1365, 1371–72 (9th Cir.1987).  On a motion for new trial, "the district court has

24   'the duty ... to weigh the evidence as the court saw it, and to set aside the verdict of

25   the jury, even though supported by substantial evidence, where, in [the court's]

26   conscientious opinion, the verdict is contrary to the clear weight of the evidence.'"

27   *Molski* at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.

28   1990).

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO
FRCP RULE 59

In determining whether a new trial should be granted, the court is permitted to weigh the evidence and assess the credibility of witnesses; the evidence need not be viewed from a perspective most favorable to the prevailing party, and the Court does not presume that the verdict was correct. *Landes* at 1371.

### 1. The evidence at trial proved that Defendants knowingly used Plaintiff's likeness to advertise their mixtape without Plaintiff's consent.

Through witness testimony and trial exhibits, Plaintiff established that Defendants knew they were using Plaintiff's likeness to advertise and promote their mixtape, through actual knowledge and/or constructive knowledge of their agents.

The jury heard testimony from Plaintiff, his wife Lindsay, and a disinterested witness—tattoo artist, Tim Hendricks—that the tattoo on the mixtape was readily recognizable as Plaintiff, and that many others saw it, and recognized it as Plaintiff. Conlan Decl. Exh. 4 [TT Day 2] at 27:12-13 and 23:16-18; see also *id.* at 131:4-7 ("I knew it was him. It was definitely him to me. That was his back. That was the shape of his back, his arm. Those were all of his tattoos on his back and his arm."); Conlan Decl. Exh. 5 [TT Day 3] at 218:19-21 ("Q. When you see a picture of this tattoo, you know that's the tattoo you put on Mike Brophy's back; right? A. Yeah, without a doubt.").

The jury also heard uncontradicted testimony from Gooden, who, at Defendants' request, took Plaintiff's likeness directly from a picture he found on the internet, and placed it onto the album cover with virtually no changes. Conlan Decl. Exh. 4 [TT Day 2] at 176:14:19 ("Q. And those all came from the original photograph of the tattoo that you copied; right? A. Yes. Q Okay. And you didn't change any of those tattoos, right, when you put it on to the model's back? A. Just in the way I described."); Conlan Decl. Exh. 6 [Trial Exh. 125] ("I copied and pasted directly from google."); see also Conlan Decl. Exhs. 7, 8, 9, 10 [Trial Exhs. Ex. 2, 70, 71, 128 ("I did another search and this is more than likely (sic) were I got it from.")].

1    There was also uncontradicted evidence that Defendants' attorney, Alan

2   Dowling, immediately identified the tattoo as Plaintiff from a simple Google search

3   within months after the lawsuit was filed, but Defendants continued to use

4   Plaintiff's likeness.  Conlan Decl., Exh. 7 [Trial Ex. 128] ("The picture(s) of

5   Brophy are present on numerous tattoo websites. . . all the pics I'm seeing of

6   Brophy, including what you sent me, have him standing vertically, with both arms

7   at his sides.  In the cover art photo your did, however, the tattoo is transposed onto

8   the back of the original model. . .")

9    Tellingly, there was no attempt by Defendants to argue that Gooden or

10   Dowling were acting outside the scope of their authority as Defendants' agents.

11   (Dkt. 229 at pID #7451-2 [Jury Instruction No. 14, 15].)   Even if Defendants could

12   make that argument, the evidence admitted at trial showed Defendants' ratification

13   of Gooden's acts, and Dowling's ongoing knowledge.  See, e.g., *Acton v. Merle*

14   *Norman Cosmetics, Inc.*, 163 F.3d 605 (9th Cir. 1998) (ratification may occur by

15   acceptance of benefits of agent's act, including by acquiescence or silence).

16    Despite knowingly using Plaintiff's likeness on the mixtape cover, and

17   without his consent, Defendants continued to maintain the mixtape cover art on

18   multiple online services, and received hundreds of thousands of dollars in revenue

19   generated by streams of the mixtape.  See Conlan Decl. Exhs. 11-14, 15, 16-20

20   [Trial Exhs. 209-212, 272, 275-279; Conlan Decl. Exh. 21 [Trial Exh. 290].)

21    Defendants testified—and admitted documents corroborated—that

22   Defendants knew the value and importance of privacy and publicity rights.  This

23   included testimony from Shaft that Defendants had obtained a release from the

24   model they used for the mixtape.  Conlan Decl. Exh. 5 [TT Day 3] at 152:4-11 ("Q.

25   Okay. And do you have similar provisions where you get the consent to use their

26   name and likeness? A. They're different, but yes. Q. Similar Concept? A. Correct.

27   Q. Okay. And so at least as of May of 2015, you understood the importance of that

28   concept; right? A. Yeah."); see also Conlan Decl. Exhs. 22, 23 (Trial Exhs. 13,

218.)  Yet Defendants never bothered to investigate whose tattoo and likeness they were adopting to enhance the commercial appeal of their mixtape cover.  As Almanzar's deposition testimony introduced at trial amply demonstrated, Defendants "did not give a fuck" about Plaintiff or the harm Defendants were causing.  Conlan Decl., Exh. 24 [Almanzar Dep.] 58:1-62:7; 90:24-91:18; see also Conlan Decl., Exh. 4 [TT Day 2] at 177:2-3, 178:19-22.

To the extent the jury's verdict could have been based on a failure to show Defendant's knowing use of Plaintiff's likeness, the verdict was clearly against the weight of the evidence presented at trial, and a new trial should be granted.

### 2.  Plaintiff provided ample evidence of harm and is entitled to nominal and/or statutory damages of at least $750.

At trial, Plaintiff and his wife testified at length regarding the harm caused by Defendants' misappropriate of Plaintiff's likeness.   Conlan Decl. Exh. 4 [TT Day 2] at 137:10-13 ("A. Yeah. I feel like he doesn't sleep as well. He's – you know, he's got to take Prilosec every day, grinds his teeth. We just had to get a mouth guard. And I'm like, you, it's from your stress and constantly always thinking about this."); see also id. at 135:15-23, 136:5-11.  Plaintiff's testimony strongly supports a damages award (be it significant or nominal) in Plaintiff's favor.

Civil Code, section 3344 states that in any action brought under the statute, the person who violated the section *"shall be liable* to the injured party … in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use….". *Id.,* emphasis added.  The evidence at trial demonstrated that Plaintiff suffered harm. Plaintiff is therefore entitled to nominal and/or statutory damages of at least $750.

To the extent the jury's verdict was based on a failure to find harm, that verdict is clearly against the weight of evidence presented at trial, and a new trial should be granted.

//

### 3. Defendants failed to support their defense of "transformative use" with any admissible evidence.

In determining whether a work is transformative, courts consider whether the defendant changes the work, or uses the work in a different context that "transforms" it into a new creation.  See *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1164 (9th Cir. 2007).

The evidence at trial was that Gooden lifted Plaintiff's likeness directly from an image he found on the Internet, and pasted it onto the mixtape with minimal adjustment.   Conlan Decl. Exh. 5 [TT Day 3] at 171:16-19 ("A. No problem. First, I copied the image straight from Google, the Internet, wherever – the gallery I found it from. I pasted it into the actual document onto its own separate layer."); 175:6-9 ("Q. And that mixtape cover reflects that the back tattoo that you found on the Internet and pasted onto the document you were working with? A. Yes.").

Defendants' trial testimony and deposition testimony similarly showed that Defendants had no interest in the artistic merit of the tattoo or "transforming" Plaintiff's likeness into a new creation, and their sole concern was superficial factors unrelated to Plaintiff's likeness, such as the appearance of Ms. Almanzar's face.  *Id.* at 169:22-23 ("A. Well, my primary objective was to put something on there that wasn't so – like this and to distract from Cardi's face."); 38:19 ("A. Yeah. It's Cardi. That's the Focus. Focus is Cardi B."); see also Conlan Decl. Exh. 4 [TT Day 2] at 200:4-5 ("All I was – when I was taking these pictures, all I care about, how my face look.").

To the extent the jury's verdict could have been based on Defendant establishing an affirmative transformative use defense, it is clearly against the weight of the evidence presented at trial, and a new trial should be granted.

//

//

//

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO FRCP RULE 59

**E. Defendants' misconduct at trial was a deliberate strategy to frustrate Plaintiff's presentation of his case and improperly influence the jury**

Misconduct by counsel or a party that prejudices the adverse party is justification for a new trial. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1940). Ultimately, the Court considers whether or not "the trial was … fair to the party moving." *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

Where a motion for a new trial is based on misconduct, a new trial must be ordered if "'the flavor of misconduct ... sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 516–17 (9th Cir. 2004) (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1984)).

Here, Almanzar repeatedly engaged in theatrics, refused to answer basic questions, impermissibly disclosed privileged and confidential settlement communications, and generally acted with total disregard and disrespect for the jury's time and formal nature of court proceedings. See generally Conlan Decl. ¶ 4 [Oct. 19, 2022 Tr.] at 206:11-207:22; 210:20-212:24. As the conduct of proceedings deteriorated, the Court interceded and brought proceedings to a halt. *Id.* at 213:11-214:9.

The deliberate nature of Defendants' strategy to undermine Plaintiff's ability to present his case was exposed by a switch in demeanor that puts Dr. Jekyll and Mr. Hyde to shame. On direct from her own counsel, Almanzar provided lucid, direct and fully responsive answers to questions—answers which, as noted in Section III.B, *supra*, were allowed to remain unchallenged by virtue of the Court's erroneous and summary denial of cross-examination.

As a result of Almanzar's antics, Plaintiff was forced to spend extraordinary amounts of time conducting his case-in-chief, and was prevented from obtaining

simple answers from a key party witness.   Even those few answers given were invariably delivered in a cloud of obfuscation, including repeated attempts to sidetrack and distract the jury by asserting facts and theories wholly unrelated to the question posed.

As previously noted, the question for the Court is whether the trial was fair to Plaintiff.  *Wiedemann*, 722 F.2d at 337. Taking a clear-eyed view with the benefit of hindsight, the trial was plainly unfair to Plaintiff, and a new trial should be ordered.

### F. Taken as a whole, the cumulative effect of the above legal errors and witness misconduct deprived Plaintiff of a fair trial and a new trial should be ordered.

An accumulation of errors, even if not individually prejudicial, can amount to prejudicial error requiring a new trial.  See *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) ("[E]ven if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.") (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996); *Jerden v. Amstutz*, 430 F.3d 1231, 1241 (9th Cir. 2005) (applying cumulative error doctrine to evidentiary errors in civil context and reversing and remanding for new trial).

Here, even if the Court concludes its erroneous exclusion of the Atlanta Trial evidence and summary denial of Plaintiff's right to cross-examine Defendant Almanzar were insufficiently prejudicial by themselves, the cumulative impact of those errors, along with Almanzar's recalcitrant trial tactics, were sufficient to affect Plaintiff's substantive right to a fair trial and a new trial should be ordered.

## IV.   <u>CONCLUSION</u>

Based on the above legal authorities and evidence admitted at trial, Plaintiff respectfully requests an order vacating the judgment and setting the matter for a new trial.

1

2

Dated:  January 25, 2023          **CAPPELLO & NOËL LLP**

3

4                                          By: */s/  Lawrence J. Conlan*

A Barry Cappello

5                                          Lawrence J. Conlan

Richard Lloyd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM ISO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO
FRCP RULE 59

1

2                    <u>**CERTIFICATE OF COMPLIANCE**</u>

3          "The undersigned, counsel of record for Plaintiff, certifies that this brief

4    contains 6,943 words, which complies with the word limit of L.R. 11-6.1.

5

6     Dated:  January 25, 2023           **CAPPELLO & NOËL LLP**

7

8                                        By: *<u>/s/  Lawrence J. Conlan</u>*

9                                        A Barry Cappello
                                         Lawrence J. Conlan
10                                       Richard Lloyd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28